# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

MARY ANN SIVOLELLA, for the use and benefit of the EQ/Common Stock Index Portfolio, the EQ/Equity Growth PLUS Portfolio, the EQ/Equity 500 Index Portfolio, the EQ/Large Cap Value PLUS Portfolio, the EQ/Global Multi-Sector Equity Portfolio, the EQ/Mid Cap Value PLUS Portfolio, the EQ/GAMCO Small Company Value, and the EQ/Intermediate Government Bond Index Portfolio; MARY ANN SIVOLELLA for the use and benefit of the EQ Advisors Trust; MARY ANN SIVOLELLA, individually and on behalf of any person or entity that is a party to a variable annuity contract issued by/sold by AXA Equitable Life Insurance Company, which offered the ability to invest in, and resulted in an investment in, the EQ/Common Stock Index Portfolio, the EQ/Equity Growth PLUS Portfolio, the EQ/Equity 500 Index Portfolio, the EQ/Large Cap Value PLUS Portfolio, the EQ/Global Multi-Sector Equity Portfolio, the EQ/Mid Cap Value PLUS Portfolio, the EQ/GAMCO Small Company Value, or the EQ/Intermediate Government Bond Index Portfolio; and MARY ANN SIVOLELLA, individually and on behalf of any person or that paid investment management fees to either AXA Equitable Life Insurance Company or AXA Equitable Funds Management Group, LLC, on account of investments in, the EQ/Common Stock Index Portfolio, the EQ/Equity Growth PLUS Portfolio, the EQ/Equity 500 Index Portfolio, the EQ/Large Cap Value PLUS Portfolio, the EQ/Global Multi-Sector Equity Portfolio, the EQ/Mid Cap Value PLUS Portfolio, the EQ/GAMCO Small Company Value, or the EQ/Intermediate Government Bond Index Portfolio,

        Plaintiffs,

vs.

AXA Equitable Life Insurance Company and AXA Equitable Funds Management Group, LLC,

        Defendants.

Civil Action No. 11-4194

Oral Argument Requested

Document Filed Electronically

# DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT PURSUANT TO RULES 12(b)(1) AND 12(b)(6)

Blank Rome LLP
  Jonathan M. Korn
301 Carnegie Center, 3rd Floor
Princeton, NJ 08540
(609) 750-7700 (Phone)
(609) 750-7701 (Fax)

Milbank, Tweed, Hadley & McCloy LLP
  James N. Benedict (*pro hac vice*)
  Sean M. Murphy (*pro hac vice*)
  Andrea G. Hood
  Will P. Gross
1 Chase Manhattan Plaza
New York, NY 10005-1413
(212) 530-5000 (Phone)
(212) 530-5219 (Fax)

*Attorneys for Defendants*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................... iii

PRELIMINARY STATEMENT ................................................................................. 1

RELEVANT BACKGROUND .................................................................................. 3

    I.       PLAINTIFF'S VARIABLE ANNUITY INVESTMENT ..................................... 3

    II.      SEPARATE ACCOUNT A ............................................................................. 5

    III.    SEPARATE ACCOUNT A'S INVESTMENT IN THE FUNDS ........................ 6

    IV.    PLAINTIFF'S CLAIMS ................................................................................. 9

ARGUMENT ........................................................................................................... 10

    I.       PLAINTIFF LACKS STANDING TO BRING A SECTION 36(b) CLAIM ........................................................................................................ 10

          A.    Plaintiff Has The Burden of Establishing Standing As A Threshold Matter. ................................................................................. 11

          B.    Plaintiff Must Be A "Security Holder" To Have Standing. ..................... 12

          C.    Plaintiff Has Failed To Adequately Allege Standing. ............................ 13

          D.    Plaintiff Is Not A "Security Holder" ....................................................... 14

              1.    The Funds Are Owned By Separate Account A And Not By Plaintiff. ............................................................................... 14

              2.    A Variable Annuity Is Like A "Fund of Funds" And Shareholders Of Funds Of Funds Are Not "Security Holders" Under Section 36(b). ................................................... 18

    II.      PLAINTIFF FAILS TO STATE A CLAIM UNDER SECTION 26(f) AND IS NOT ENTITLED TO RELIEF UNDER SECTION 47(b) ................... 20

          A.    There is No Private Right of Action Under Section 26(f). ..................... 20

          B.    Plaintiff Is Not Entitled To Relief Under Section 47(b) Because Plaintiff's Section 26(f) Claim Must Be Dismissed. ............................... 23

III.    THE COURT SHOULD DECLINE TO EXERCISE JURISDICTION
OVER PLAINTIFF'S UNJUST ENRICHMENT CLAIM OR, IN THE
ALTERNATIVE, DISMISS THE CLAIM FOR FAILURE TO STATE A
CAUSE OF ACTION. ...................................................................................... 25

CONCLUSION ....................................................................................................................... 29

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Am. Corp. Soc'y v. Valley Forge Ins. Co.*,
No. 10-3560, 2011 U.S. App. LEXIS 8261 (3d Cir. 2011) ......................................4

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009)..........................................................................................13

*Benak v. Alliance Capital Mgmt. L.P.*,
No. Civ. 01-5734, 2004 WL 1459249 (D.N.J. Feb. 9, 2004) ..................................20

*Boyce v. AIM Mgmt. Group, Inc., et al.*,
No. H-04-2587, 2006 WL 4671324 (S.D. Tex. Sept. 29, 2006)...............................22

*Chamberlain v. Aberdeen Asset Mgmt. Ltd.*,
No. 02-CV-5870, 2005 WL 195520 (E.D.N.Y. Jan. 21, 2005), *vacated solely for
purposes of settlement*, 2005 WL 1378757 (E.D.N.Y. Apr. 12, 2005)...................22

*Common Cause of Penn. v. Commonwealth of Penn.*,
558 F.3d 249 (3d Cir. 2009)..................................................................................12

*Cunningham v. RRB*,
392 F.3d 567 (3d Cir. 2004)..................................................................................11

*Curran v. Principal Mgmt. Corp.*,
No. 09-433, 2010 U.S. Dist. LEXIS 83730 (S.D. Iowa June 8, 2010) ..............17, 19

*Curran v. Principal Mgmt. Corp.*,
No. 09-433, 2011 WL 223872 (S.D. Iowa Jan. 24, 2011) ............................. passim

*Davis v. Bailey*,
No. 05-cv-00042, 2005 U.S. Dist. LEXIS 38204 (D. Colo. Dec. 22, 2005) ...................22, 24

*Dull v. Arch*,
No. 05 C 140, 2005 U.S. Dist. LEXIS 14988 (N.D. Ill. July 27, 2005) ...................22, 24, 25

*Erie R.R. v. Tompkins*,
304 U.S. 64 (1938)................................................................................................26

*Forsythe v. Sun Life Fin., Inc.*,
417 F. Supp. 2d 100 (D. Mass. 2006) ........................................................13, 22, 27

*Franks v. Food Ingredients Int'l, Inc.*,
No. 09-3449, 2010 U.S. Dist. LEXIS 77280 (E.D. Pa. July 30, 2010)...................20

*Gabelli Global Multimedia Trust v. W. Inv. LLC*,
   700 F. Supp. 2d 748 (D. Md. 2010) .......................................................................22

*Garland v. Enter. Leasing Co. of Phila.*,
   No. 99-4013, 1999 WL 1077075 (E.D. Pa. Nov. 24, 1999) ....................................13

*Gilliam v. Fidelity Mgmt. & Research Co., et al.*,
   No 04-11600, slip op. (D. Mass. Sept. 18, 2006) ...................................................22

*Glaziers & Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Sec.*,
   93 F.3d 1171 (3d Cir. 1996)....................................................................................26

*Green v. Nuveen Advisory Corp.*,
   186 F.R.D. 486 (N.D. Ill. 1999), *aff'd*, 295 F.3d 738 (7th Cir. 2002), *cert. denied*, 537
   U.S. 1088 (U.S. 2002)............................................................................................13

*Green v. Potter*,
   687 F. Supp. 2d 502 (D.N.J. 2009) ......................................................................4, 9

*Gregorio v. Aviles*,
   No. 11-2771 (WJM), 2011 U.S. Dist. LEXIS 127155 (D.N.J. Nov. 3, 2011)........................26

*Halebian v. Berv, et al.*,
   631 F. Supp. 2d 284 (S.D.N.Y. 2007)....................................................................22

*Hamilton v. Allen*,
   396 F. Supp. 2d 545 (E.D. Pa. 2005) .........................................................22, 24, 25

*Hughes v. Panasonic Consumer Elecs. Co.*,
   No. 10-846 (SDW), 2011 U.S. Dist. LEXIS 79504 (D.N.J. July 21, 2011)...........................27

*In re AllianceBernstein Mut. Fund Excessive Fee Litig.*,
   No. 04-4885 (SWK), 2005 U.S. Dist. LEXIS 24263 (S.D.N.Y. Oct. 19, 2005) ....................12

*In re Am. Mut. Funds Fees Litigs.*,
   No. CV 04-5593 (GAF), 2005 U.S. Dist. LEXIS 41884 (C.D. Cal. Dec. 16, 2005)........13, 22

*In re Bayside Prison Litig.*,
   190 F. Supp. 2d 755 (D.N.J. 2002) ...........................................................................4

*In re BlackRock Mut. Funds Fee Litig.*,
   No. 04 Civ. 164, 2006 WL 4683167 (W.D. Pa. Mar. 29, 2006)............................................22

*In re Davis Selected Mut. Funds Litig.*,
   No. 04 Civ. 4186 (MGC), 2005 U.S. Dist. LEXIS 23203 (S.D.N.Y. Oct. 11, 2005)..............27

*In re Eaton Vance Mut. Funds Fee Litig.*,
   380 F. Supp. 2d 222 (S.D.N.Y. 2005); *aff'd Bellikoff v. Eaton Vance Corp.,* 481 F.3d
   110 (2d Cir. 2007)........................................................................................................22

*In re Evergreen Mut. Funds Fee Litig.*,
   423 F. Supp. 2d 249 (S.D.N.Y. 2006)...............................................................................22, 27

*In re Franklin Mut. Funds Fee Litig.*,
   388 F. Supp. 2d 451 (D.N.J. 2005) ....................................................................22, 23, 26, 27

*In re Goldman Sachs Mut. Funds Fee Litig.*,
   No. 04 Civ. 2567 (NRB), 2006 U.S. Dist. LEXIS 1542 (S.D.N.Y. Jan. 13, 2006)...........22, 27

*In re Lord Abbett Mut. Funds Fee Litig.*,
   407 F. Supp. 2d 616 (D.N.J. 2005) ....................................................................................22

*In re Merck Co*.,
   No. 05-1151 (SRC), 2006 U.S. Dist. LEXIS 2345 (D.N.J. Jan. 20, 2006)................................4

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
   272 F. Supp. 2d 243 (S.D.N.Y. 2003)................................................................................23

*In re Morgan Stanley and Van Kampen Mut. Funds Sec. Litig.*,
   No. 03 Civ. 8208, 2006 WL 1008138 (S.D.N.Y. Apr. 14, 2006)...........................................22

*In re Mut. Funds Inv. Litig. (In re Janus Subtrack Investor Class Op.)*,
   384 F. Supp. 2d 845 (D. Md. 2005) ....................................................................................22

*In re Mut. Funds Inv. Litig.*,
   384 F. Supp. 2d 873 (D. Md. 2005) ....................................................................................27

*In re Oppenheimer Funds Fee Litig.*,
   419 F. Supp. 2d 593 (S.D.N.Y. 2006).................................................................................22

*In re Regions Morgan Keegan Sec., Derivative & ERISA Litig.*,
   743 F. Supp. 2d 744 (W.D. Tenn. 2010)..............................................................................22

*In re Salomon Smith Barney Mut. Fund Fees Litig.*,
   441 F. Supp. 2d 579 (S.D.N.Y. 2006)..............................................................................13, 22

*In re Scudder Mut. Funds Fee Litig.*,
   No. 04 Civ. 1921, 2007 WL 2325862 (S.D.N.Y. Aug. 14, 2007) ..........................................22

*In re Smith Barney Transfer Agent Litig.*,
   No. 05 Civ. 7583, Mem. & Order (S.D.N.Y. Sept. 22, 2011) ...........................................11, 12

*In re Triarc Cos. Class & Derivative Litig.*,
   791 A.2d 872 (Del. Ch. 2001)..........................................................................................26

*In re Van Wagoner Funds, Inc.*,
   382 F. Supp. 2d 1173 (N.D. Cal. 2004) ...............................................................23

*In re Wellbutrin XL Antitrust Litig.*,
   260 F.R.D. 143 (E.D. Pa. 2009) ..........................................................................26

*Jacobs v. Bremner*,
   378 F. Supp. 2d 861 (N.D. Ill. 2005) ..............................................................22, 25

*Kauffman v. Dreyfus Fund, Inc.*,
   434 F.2d 727 (3d Cir. 1970)..................................................................................12

*Krantz v. Prudential Inv. Fund Mgmt. LLC*,
   305 F.3d 140 (3d Cir. 2002)..................................................................................20

*Luminent Mortg. Capital, Inc. v. Merrill Lynch & Co.*,
   652 F. Supp. 2d 576 (E.D. Pa. 2009) .....................................................................5

*meVC Draper Fisher Jurvetson Fund I, Inc. v. Millennium Partners, L.P.*,
   260 F. Supp. 2d 616 (S.D.N.Y. 2003)....................................................................23

*Music Sales Ltd. v. Charles Dumont & Son, Inc.*,
   No. 09-1443 (RMB/JS), 2009 U.S. Dist. LEXIS 97534 (D.N.J. Oct. 19, 2009) ....................11

*Mutchka v. Harris*,
   373 F. Supp. 2d 1021 (C.D. Cal. 2005) ............................................................22, 25

*Northstar Fin. Advisers, Inc., v. Schwab Inv.*,
   609 F. Supp. 2d 938 (N.D. Cal. 2009), *rev'd*, 615 F.3d 1106 (9th Cir. 2010)........................23

*Northstar Fin. Advisers, Inc., v. Schwab Inv.*,
   615 F.3d 1106 (9th Cir. 2010) ..............................................................................22

*Olmsted v. Pruco Life Ins. Co.*,
   283 F.3d 429 (2d Cir. 2002)................................................................. passim

*Pension Benefit Guar. Corp. v. White Consol. Indus.*,
   998 F.2d 1192 (3d Cir. 1993).................................................................................4

*Phila. Marine Trade Ass'n-Int'l Longshoremen's Ass'n Pension Fund v. Comm'r*,
   523 F.3d 140 (3d Cir. 2008)..................................................................................12

*Phillips v. Cnty. of Allegheny*,
   515 F.3d 224 (3d Cir. 2008)..................................................................................13

*Pope v. East Brunswick Bd. of Educ.*,
   12 F.3d 1244 (3d Cir. 1993)..................................................................................18

*Pryor v. NCAA*,
  288 F.3d 548 (3d Cir. 2002)...................................................................5, 9

*Santomenno ex rel. John Hancock v. John Hancock Life Ins. Co. (U.S.A.)*,
  No. 2:10-cv-01655, 2011 U.S. Dist. LEXIS 55317 (D.N.J. May 23, 2011)...............12, 24, 25

*Smith v. Franklin/Templeton Distribs.*,
  No. 09-4775, 2010 U.S. Dist. LEXIS 112934 (N.D. Cal. Oct. 22, 2010) .............................24

*Smith v. Oppenheimer Funds Distrib.*,
  No. 10 Civ. 7387, 2011 U.S. Dist. LEXIS 60877 (S.D.N.Y. June 6, 2011)..........20, 22, 24, 25

*Stanton v. Greenstar Recycled Holdings, LLC*,
  No. 10-5658 (GEB), 2011 U.S. Dist. LEXIS 35659 (D.N.J. Mar. 31, 2011)........................28

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998)...........................................................................................11

*Stegall v. Ladner*,
  394 F. Supp. 2d 358 (D. Mass. 2005) ...........................................................22, 25

*Steinberg v. Janus Capital Mgmt.*,
  No. 10-1207, 2011 U.S. App. LEXIS 24053 (4th Cir. Dec. 2, 2011)....................................23

*United States v. Cheeseman*,
  600 F.3d 270 (3d Cir. 2010)..............................................................................18

*V Tech Servs. v. Street*,
  215 Fed. Appx. 93 (3d Cir. 2007).......................................................................26

*Van Orman v. Am. Ins. Co.*,
  680 F.2d 301 (3d Cir. 1982)..............................................................................28

*Waldock v. M.J. Select Global, Ltd.*,
  No. 03 C 5293, 2005 WL 3542527 (N.D. Ill. Dec. 27, 2005) ................................22

*Western Inv. LLC v. DWS Global Commodities Stock Fund, Inc.*,
  705 F. Supp. 2d 281 (S.D.N.Y. 2010)...................................................................22

*White v. Heartland High-Yield Muni. Bond Fund*,
  237 F. Supp. 2d 982 (E.D. Wis. 2002)...................................................................23

*Wiener v. Eaton Vance Distribs., Inc.*,
  No. 10-10515, 2011 WL 1233131 (D. Mass. Mar. 30, 2011) ...............................22

*Woodward Governor Co. v. Curtiss-Wright Flight Sys.*,
  164 F.3d 123 (2d Cir. 1999)..............................................................................26

*Young v. Nationwide Life Ins. Co.*,
   2 F. Supp. 2d 914 (S.D. Tex. 1998) ...................................................................17

## STATUTES

15 U.S.C. § 26(f) .........................................................................................2, 20, 21

15 U.S.C. § 80a-2(a)(9) ................................................................................18

15 U.S.C. § 80a-3(c)(1) ................................................................................18

15 U.S.C. § 80a-26(f) ...............................................................................21, 23

15 U.S.C. § 80a-35(b) ........................................................................... passim

15 U.S.C. § 80a-35(b)(3) ..............................................................................25

15 U.S.C. § 80a-46(b) .........................................................................2, 20, 23, 25

26 U.S.C. § 817 ......................................................................................15, 16

26 U.S.C. § 817(d)(1) ..................................................................................16

N.Y. Ins. Law § 4240(a)(12) .....................................................................3, 6, 17

## OTHER AUTHORITIES

C. Christopher Sprague, Variable Annuities & Variable Life Insurance Regulation § 7:1
   ("The Funding Vehicle") (Nov. 2010) ............................................................8

Fed. R. Civ. P. 12(b)(1) ..................................................................................1

Fed. R. Civ. P. 12(b)(6) ..................................................................................1

Fed. R. Civ. P. 23.1 ......................................................................................27

IRS Rev. Rul. 2003-91, 2003-3 I.R.B. 347 (Aug. 18, 2003) ........................................15

Joint SEC/NASD Report on Examination Findings Regarding Broker-Dealer Sales of
   Variable Insurance Products (June 2004) ........................................................3

Merriam-Webster's Collegiate Dictionary (1998) ...................................................10

NASD Rule 2830(b)(11) ...............................................................................18

P.L. 98-369, Deficit Reduction Act of 1984, Conf. Comm. Rep., 98 H. Rpt. 861 ...................15

Defendants AXA Equitable Life Insurance Company ("<u>AXA Equitable</u>") and AXA

Equitable Funds Management Group, LLC (together, "<u>Defendants</u>" or, in their capacity as

investment managers, "<u>AXA</u>") submit this memorandum of law in support of their motion to

dismiss Plaintiffs' amended complaint, filed November 4, 2011 (the "<u>Amended Complaint</u>"),

pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## <u>PRELIMINARY STATEMENT</u>

In the Amended Complaint, Plaintiff purports to assert—as she did in her original

complaint—a claim under Section 36(b) of the Investment Company Act of 1940, 15 U.S.C.

§ 80a-35(b) ("<u>Investment Company Act</u>"), on behalf of eight mutual funds (the "<u>Funds</u>")[1] to

which Defendants allegedly charged excessive management fees.  However, in order to have

standing to bring a private right of action under Section 36(b), a plaintiff must be a "security

holder" of the mutual funds at issue.  15 U.S.C. § 80a-35(b).  Plaintiff alleges (in a conclusory

fashion) that she is a "security holder" of the Funds or, alternatively, of the EQ Trust (the entity

that contains the Funds).[2]  Am. Compl. ¶¶ 6-7.  Plaintiff, however, is a security holder of neither.

Accordingly, Plaintiff's Section 36(b) claim must be dismissed for lack of statutory standing.

---

[1]  The Funds are the EQ/Common Stock Index Portfolio, EQ/Equity Growth PLUS Portfolio, EQ/Equity 500 Index Portfolio, EQ/Large Cap Value PLUS Portfolio, EQ/Global Multi-Sector Equity Portfolio, EQ/Mid Cap Value PLUS Portfolio, EQ/GAMCO Small Company Value Portfolio, and EQ/Intermediate Government Bond Index Portfolio.  The Funds are "series funds" that are issued through the "EQ Advisors Trust," a registered investment company (commonly known as a mutual fund) under the Investment Company Act (the "<u>EQ Trust</u>").  *See* Am. Compl. ¶¶ 3-4.

[2]  In Plaintiff's original Complaint, Plaintiff alleged (in a conclusory fashion) that she was a "security holder" of each of *the Funds*, and purported to assert a Section 36(b) claim derivatively on the Funds' behalf.  *See* Complaint, dated July 21, 2011, ¶¶ 4, 17, 174 (Dkt. No. 1).  In the Amended Complaint, Plaintiff adds the alternative (but equally conclusory) allegation that "if the [EQ Trust] . . . issues shares of the [EQ Trust] that correspond to each [Fund], then Plaintiff Sivolella . . . is a security holder *in the [EQ Trust]*."  Am. Compl. ¶ 7 (emphasis added).  Plaintiff also adds in the Amended Complaint a second Section 36(b) claim, which she purports to assert derivatively on behalf of the EQ Trust.  Am. Compl. ¶¶ 1-30; 264-71.  Plaintiff's new allegation and new Section 36(b) claim do nothing to cure Plaintiff's lack of standing under

In a Section 36(b) case, a plaintiff purchases shares in a mutual fund, and as a shareholder has standing to pursue an excessive fee action derivatively on behalf of that fund.  *See* Section 36(b), 15 U.S.C. § 80a-35(b) (authorizing a "security holder" of an investment company to bring an action "on behalf of such company").  In contrast, Plaintiff in this case owns no shares and has no title in the Funds or in the EQ Trust.  Rather, Plaintiff owns a *certificate* under an insurance contract (specifically, a *variable annuity*) sold to her employer by AXA Equitable. She paid premiums to AXA Equitable pursuant to the terms of the group variable annuity contract, which were then placed in a separate account owned by AXA Equitable.  AXA Equitable's separate account then invested in the Funds by purchasing corresponding shares of the EQ Trust (which contains the Funds), but Plaintiff did not.  Because Plaintiff is not a security holder of any of the eight Funds or of the EQ Trust, she lacks statutory standing to bring a Section 36(b) claim.

In addition to her Section 36(b) claim, Plaintiff asserts two new claims in the Amended Complaint: (1) a purported class action claim alleging that the variable annuity contracts sold by AXA charged unreasonable management fees in violation of Section 26(f) of the Investment Company Act, and seeking restitution and rescission of those contracts under Section 47(b) of the Act; and (2) a purported class action claim for unjust enrichment.  Each of these claims fails.

First, there is no private right of action under Section 26(f) of the Investment Company Act—only the Securities and Exchange Commission ("<u>SEC</u>") has standing to enforce Section 26(f).  *Olmsted v. Pruco Life Ins. Co.*, 283 F.3d 429 (2d Cir. 2002).  In turn, because Plaintiff's Section 26(f) claim fails, Section 47(b) does not apply.  Section 47(b) provides, at most, a

---

Section 36(b) because Plaintiff is a security holder of *neither* the Funds nor the EQ Trust.  *See infra* at 14-20.

*remedy* for a violation of a separate provision of the Investment Company Act for which there is a private right of action—it does not, however, provide any independent private right of action.

Second, because each of Plaintiff's claims asserted under federal law must be dismissed, the Court should decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claim for unjust enrichment.  Alternatively, the unjust enrichment claim should be dismissed because Plaintiff asserts it directly, rather than derivatively on behalf of the Funds, and because the management fees were paid pursuant to a valid contract, which precludes any claim for unjust enrichment.

## RELEVANT BACKGROUND

## I.     PLAINTIFF'S VARIABLE ANNUITY INVESTMENT

Plaintiff in this case purchased a certificate under a group variable annuity contract issued by AXA Equitable.  *See* Am. Compl. ¶ 49.  As explained by the SEC, a variable annuity is "a contract between an investor and an insurance company," pursuant to which the insurance company "promises to make periodic payments to the contract owner or beneficiary, starting immediately or at some future time."  *See* Joint SEC/NASD Report on Examination Findings Regarding Broker-Dealer Sales of Variable Insurance Products, at 5 (June 2004), *available at* http://www.sec.gov ("SEC/NASD Report").  The insurance company typically places premiums paid by a variable annuity investor in a segregated account (referred to as a "separate account") owned by the insurance company.  *See id.*  The separate account, in turn, invests in the securities markets or in underlying mutual funds.  *Id.*  The insurance company, not the variable annuity investor, is the legal owner of the mutual fund shares and other securities in the separate account. *See* N.Y. Ins. Law § 4240(a)(12); *infra* at 5-6.  Under the terms of the variable annuity contract, the value of the benefits under the contract in some, but not all, circumstances will reflect the performance of the investments in the separate account.  *See generally* SEC/NASD Report at 5.

- 3 -

Here, in or around March 1999, Plaintiff enrolled in the EQUI-VEST Deferred Variable Annuity Program (the "EQUI-VEST Program"), a variable annuity program offered by her employer, Newark School System ("Newark"). *See* Ex. A[3] (Plaintiff's Certificate, dated March 26, 1999 (together with the applicable policy, the "Certificate"); Ex. B (EQUI-VEST Annuity Enrollment Application, dated March 22, 1999 ("Enrollment Form")).[4] Newark offered the EQUI-VEST Program to its employees in connection with a group annuity contract that it had entered into with AXA Equitable. Ex. A (Certificate at 3); Ex. B (Enrollment Form at 1). In connection with her participation in the EQUI-VEST Program, Plaintiff received a "Certificate" that set forth in substance the benefits to which she, as a participant under Newark's group contract, was entitled. *See* Ex. A (Certificate). The Certificate provides that in exchange for Plaintiff's contributions to the EQUI-VEST Program, Plaintiff was entitled to receive a "variable annuity benefit." Ex. A (Certificate at 12-15).

---

[3] Citations in the form of "Ex. __" are to the exhibits annexed to the Declaration of Jonathan M. Korn in Support of Defendants' Motion to Dismiss the Amended Complaint.

[4] The Court may consider the Certificate and Enrollment Form on this motion to dismiss because these documents, which memorialize Plaintiff's variable annuity benefit with AXA Equitable, are integral to Plaintiff's claims. *See* Am. Compl. ¶¶ 31-33, 35-36, 38-42, 49, 71-72, 211, 213-14, 218, 220-25, 233, 272-79 (allegations regarding Plaintiff's variable annuity); *Green v. Potter*, 687 F. Supp. 2d 502, 509 n.5 (D.N.J. 2009) (a court may look to documents which are "essential to a plaintiff's claim"); *In re Bayside Prison Litig.*, 190 F. Supp. 2d 755, 760 (D.N.J. 2002) (a court may consider "matters integral to or upon which plaintiff's claim is based") (citing *In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d 357 (3d Cir. 1993)); *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (court may consider a document "if the plaintiff's claims are based on the document"); *Am. Corp. Soc'y v. Valley Forge Ins. Co.*, No. 10-3560, 2011 U.S. App. LEXIS 8261, at *4 (3d Cir. 2011) (court may consider a document "if the plaintiff's claims are based on the document, *such as [the plaintiff]'s insurance policy*") (emphasis added); *In re Merck Co.*, No. 05-1151 (SRC), 2006 U.S. Dist. LEXIS 2345, at *8 (D.N.J. Jan. 20, 2006) ("[A court is allowed] to consider documents that can be considered 'integral' to the referencing complaint [on a 12(b)(6) motion to dismiss]. Integral documents are defined as documents which create the rights or duties that are the basis for the

## II.    SEPARATE ACCOUNT A

Consistent with the typical structure of a variable annuity, AXA Equitable placed

Plaintiff's contributions to the EQUI-VEST Program (along with contributions from certain

other permitted investors) in an account called "Separate Account A."  *See* Am. Compl. ¶¶ 8, 31-

33, 218, 277; Ex. A (Certificate at 5).  Separate Account A, which is registered as a "unit

investment trust" under the Investment Company Act, is an account that AXA Equitable

established in order to maintain the structure required under the federal tax law to ensure

treatment of variable contracts as "annuities" for tax purposes, including the favorable deferred

tax treatment afforded to holders of such contracts.[5]  Ex. C (Prospectus for EQUI-VEST

Employer-Sponsored Retirement Plans, dated May 1, 2011 ("EQUI-VEST Product Prospectus"),

at 65).[6]

As disclosed in the relevant public filings, and as required under New York insurance

law, AXA Equitable is the ***legal owner*** of all assets held in Separate Account A.  Ex. C (EQUI-

VEST Product Prospectus at 65) ("We [*i.e.*, AXA Equitable] are the *legal owner* of all of the

assets in Separate Account A and may withdraw any amounts that exceed our reserves and other

---

Complaint.") (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

[5]  *See infra* at 15 & note 11 (discussing Section 817 of the Internal Revenue Code, 26 U.S.C. § 817).

[6]  Plaintiff relies extensively throughout the Amended Complaint on SEC filings relating to the Funds.  *See, e.g.*, Am. Compl. n.2 (relying on "AXA Funds' public filings"); ¶ 28 (allegations are based on unspecified SEC filings for the EQ Trust and the Funds);  ¶ 29 (specifically citing the EQ Trust's Form N-1A, which includes the EQ Trust's Prospectus and Statement of Additional Information); ¶ 134 (quoting from the EQ Trust's Annual Report, dated December 31, 2010).  Thus, these documents are properly considered on a motion to dismiss.  *Luminent Mortg. Capital, Inc. v. Merrill Lynch & Co.*, 652 F. Supp. 2d 576, 578 (E.D. Pa. 2009) ("[I]t is well-established that a court may consider public documents filed with the SEC when deciding a motion to dismiss . . . .") (citing *Oran v. Stafford*, 226 F.3d 275, 289 (3d Cir. 2000)); *Pryor v. NCAA*, 288 F.3d 548, 560 (3d Cir. 2002) ("[D]ocuments whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered [on a 12(b)(6) motion to dismiss].").

liabilities with respect to variable investment options under our contracts.") (emphasis added); N.Y. Ins. Law. § 4240(a)(12) ("Amounts allocated by the insurer to separate accounts *shall be owned by the insurer*, [and] the assets therein *shall be the property of the insurer*.") (emphasis added).

## III.    SEPARATE ACCOUNT A'S INVESTMENT IN THE FUNDS

As a participant in the EQUI-VEST Program, Plaintiff is permitted to allocate the contributions to her variable annuity certificate among a number of investment options offered in the EQUI-VEST Program.  *See* Am. Compl. ¶¶ 31-33; Ex. C (EQUI-VEST Product Prospectus at 1).  These investment options are "portfolios," the majority of which are offered through certain trusts created by AXA Equitable, including the EQ Trust.  *See* Am. Compl. ¶¶ 3-4; Ex. D (Form N-1A, EQ Trust Prospectus, dated May 1, 2011 ("Trust's Prospectus"), at 1).  The EQ Trust is a registered investment company (commonly known as a mutual fund) under the Investment Company Act and issues shares of beneficial interests that are divided among its various portfolios.  *See* Am. Compl. ¶¶ 3-4; Ex. D (Trust's Prospectus at 176).  Each portfolio has its own broad investment objective and is designed to meet different investment goals.  *See* Am. Compl. ¶ 3; Ex. D (Trust's Prospectus at 1).  The eight Funds at issue in this case are offered through the EQ Trust and are among the portfolios that are available to Plaintiff as investment options in the EQUI-VEST Program.  *See* Am. Compl. ¶¶ 3-4; Ex. C (EQUI-VEST Product Prospectus at 1); Ex. D (Trust's Prospectus at 1).

Plaintiff, however, did not "purchase" or otherwise become the owner of any shares of the Funds or of the EQ Trust by virtue of having selected the Funds as variable investment options.  As explained in the Trust's Prospectus, the Funds' "shares are currently ***sold only to insurance company separate accounts*** in connection with Contracts issued by [AXA Equitable], AXA Life and Annuity Company, other affiliated or unaffiliated insurance companies and The

- 6 -

AXA Equitable 401(k) Plan" and are "***not sold directly to the general public***."  Ex. D (Trust's Prospectus at 30, 36, 40, 49-50, 54, 86, 102, 144 (emphasis added)).  Accordingly, Plaintiff did not purchase shares of the Funds, nor does she have any title or legal ownership in them. Instead, AXA Equitable caused *Separate Account A* to purchase shares of the EQ Trust corresponding to the Funds that Plaintiff selected as investment options.  Am. Compl. ¶ 33 ("All of the AXA Variable Annuity Contracts, through which investments in the AXA Funds were made, were funded by Separate Account A . . . .").  Plaintiff was only credited with "units" of Separate Account A that corresponded to her selected investments, including the Funds.[7]  Am. Compl. ¶ 8; Ex. C (EQUI-VEST Product Prospectus at 30).

Therefore, while the overall value of Plaintiff's units of Separate Account A "increase[d] or decrease[d] *as though [Plaintiff] had invested in the corresponding portfolio's shares directly*," Plaintiff at no point in time *owned* any shares of the Funds or of the EQ Trust.  *See* Am. Compl. ¶ 8; Ex. C (EQUI-VEST Product Prospectus at 30) (emphasis added).  Additionally, the value of Plaintiff's units did not correspond directly to the Funds' investment performance. Unlike shares of a mutual fund, the value of Plaintiff's units of Separate Account A is reduced by certain "product level" fees that AXA Equitable charges, including, for example, charges for mortality and expense risks associated with the annuity.  Ex. C (EQUI-VEST Product Prospectus at 30).

The following chart sets forth the relationship between Plaintiff, Newark, and the relevant AXA-related entities.

---

[7] Specifically, as explained in the EQUI-VEST Product Prospectus, "[e]ach variable investment option invests in shares of a corresponding portfolio" and the "value in each variable investment option is measured by 'units.'"  Ex. C (EQUI-VEST Product Prospectus at 30).



The organizational structure depicted above is consistent with industry practice and, as noted, is required by law in order for life insurance companies to maintain the tax-deferred status of most variable annuities they offer.[8]

---

[8]  *See* C. Christopher Sprague, Variable Annuities & Variable Life Insurance Regulation § 7:1 ("The Funding Vehicle") (Nov. 2010) ("The vast majority of variable products are offered through a two-tier structure comparable to that used by master-feeder funds.  Specifically, an open-end management investment company sells its shares to one or more insurance company separate accounts that are registered under the Investment Company Act as unit investment trusts.").

IV.    PLAINTIFF'S CLAIMS

Defendants have served or currently serve as the investment manager for the Funds.  Am. Compl. ¶¶ 50, 51.  AXA and the EQ Trust enter into management agreements that set forth the services that AXA is required to provide to the Funds and the fees that the Funds pay to AXA in exchange for those services ("Management Agreements").  Am. Compl. ¶¶ 13, 17; Ex. E (Form N-1A, EQ Trust Statement of Additional Information, dated May 1, 2011 ("Trust SAI"), at 64-66); *see also* Ex. F (Management Agreement, dated May 1, 2011, §§ 2.B, 4).[9]  The Funds' management fees are paid by the Funds, from the Funds' assets—they are not paid by Plaintiff.  Am. Compl. ¶ 13 ("These [management] fees are paid from the [Funds']/[EQ Trust's] assets . . . ."); Ex. E (Trust SAI at 66) ("Each *[Fund]* pays a fee to [AXA] for its services.") (emphasis added).

On July 21, 2011, Plaintiff filed a complaint against Defendants alleging that AXA charges excessive management fees to the Funds in violation of Section 36(b) of the Investment Company Act.  *See* Complaint (Dkt. No. 1).  In response, Defendants filed a motion to dismiss the complaint for lack of statutory standing.  *See* Motion, dated Oct. 17, 2011 (Dkt. No. 11).  Defendants explained in that motion (as they explain in the instant motion) that Plaintiff is not a "security holder" of the Funds and therefore lacks statutory standing to assert a Section 36(b) claim on their behalf.  *Id.* at 9-18.

On November 4, 2011, Plaintiff filed the Amended Complaint.  In the Amended Complaint, Plaintiff re-asserts her claim for excessive fees under Section 36(b) of the Investment

---

[9]  The Management Agreement is properly before the Court because it is cited and relied on in the Amended Complaint.  *See* Am. Compl. ¶ 17; *Pryor*, 288 F.3d at 560 ("[D]ocuments whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered [on a 12(b)(6) motion to dismiss].");  *Green*, 687 F. Supp. 2d at 509 n.5 ("[A] court may . . . 'properly look beyond the complaint to . . . documents referenced and incorporated in the complaint . . . .'") (citation omitted).

Company Act (Am. Compl. ¶¶ 1-30; 256-71) and asserts two new claims: (1) a claim under Sections 26(f) and 47(b) of the Investment Company Act, which alleges that because AXA allegedly charges excessive management fees, the fees charged under Plaintiff's variable annuity "contract" are, in the aggregate, unreasonable (Am. Compl. ¶¶ 31-43, 272-79); and (2) a claim for unjust enrichment (Am. Compl. ¶¶ 44-48, 280-86).

## ARGUMENT

## I.   PLAINTIFF LACKS STANDING TO BRING A SECTION 36(b) CLAIM.

Section 36(b) expressly provides that in order to bring a claim under the statute, the plaintiff must be a "security holder" of the funds at issue.  15 U.S.C. § 80a-35(b).  Although the term "security holder" is not defined in the Investment Company Act, a "holder" is typically defined as an "owner" of a security or as a person enjoying the "incidents of ownership or possession" of a security, such as the privilege of voting or receiving dividends.  *See Curran v. Principal Mgmt. Corp.*, No. 09-433 (CFB), 2011 WL 223872, at *4 (S.D. Iowa Jan. 24, 2011); *see also* Merriam-Webster's Collegiate Dictionary 871-72 (1998) (defining "holder" as "a person that holds [as] owner").  Here, Plaintiff is neither an "owner" of the Funds (or of the EQ Trust) nor does she enjoy any incidents of ownership.

Plaintiff fails to adequately allege any facts to support her claim that she is a "security holder" of the Funds.  Although Plaintiff now alleges in the Amended Complaint, in a conclusory fashion, that she is a security holder of the Funds or, *in the alternative*, a security holder of the EQ Trust, these revised allegations miss the point.  The very documents relied on in the Amended Complaint, as well as relevant legal authority, make clear that Plaintiff is not and cannot be an "owner" or "security holder" of *either* the Funds or the EQ Trust.  Accordingly, Plaintiff lacks standing to bring her Section 36(b) claims, and the Court therefore lacks subject matter jurisdiction over those claims.

**A.      Plaintiff Has The Burden of Establishing Standing As A Threshold Matter.**

Whether Plaintiff has statutory standing under Section 36(b) is a threshold question that implicates the Court's subject matter jurisdiction to hear this action.  *See Music Sales Ltd. v. Charles Dumont & Son, Inc.*, No. 09-1443 (RMB/JS), 2009 U.S. Dist. LEXIS 97534, at *6-7 (D.N.J. Oct. 19, 2009) ("A federal court lacks subject-matter jurisdiction over an action when the plaintiff cannot establish statutory standing.") (citing *United States v. $ 487,825.00 in U.S. Currency*, 484 F.3d 662, 664 (3d Cir. 2007)).  This issue must be resolved at the outset of this case.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) ("The requirement that jurisdiction be established as a threshold matter 'springs from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'") (citation omitted); *Cunningham v. RRB*, 392 F.3d 567, 570 (3d Cir. 2004) ("We must resolve the threshold jurisdictional issue before reaching the merits of [plaintiff]'s petition") (citing *Steel Co.*).

The importance of establishing standing at the outset of a case was made abundantly clear in a recent decision in *In re Smith Barney Transfer Agent Litigation*.  There, in what the court described as "a cautionary lesson for securities litigators," after six years of litigation it was revealed that the lead plaintiff had never purchased any of the securities at issue in the litigation, and therefore never had standing to assert Section 36(b) and securities fraud claims.  *In re Smith Barney Transfer Agent Litig.*, No. 05. Civ. 7583, Mem. & Order (S.D.N.Y. Sept. 22, 2011) (Dkt. No. 176).  The court admonished that this "startling revelation" after "six years of hard-fought and costly litigation" was of "seismic" importance, had resulted in "a six-year detour and frolic," and had caused "[s]ubstantial judicial and client resources [to be] diverted to adjudicate a claim that the Lead Plaintiff never had." *Id*. at 4-6.  To avoid what could otherwise be a "considerable

waste of time and resources," standing is always "a threshold question" that must be resolved as early as possible in every case.  *Id*. at 4, 5.

Plaintiff, as the party invoking the federal jurisdiction of this Court, bears the burden of establishing that she has standing.  *Common Cause of Penn. v. Commonwealth of Penn.*, 558 F.3d 249, 257 (3d Cir. 2009).  Congress specifically mandated that only "security holders" have a private right of action under Section 36(b).  *See, e.g.*, *Phila. Marine Trade Ass'n-Int'l Longshoremen's Ass'n Pension Fund v. Comm'r*, 523 F.3d 140, 143-44 (3d Cir. 2008) ("Statutory standing asks whether Congress has accorded *this injured plaintiff* the right to sue the defendant to redress *his injury*.") (emphasis added) (internal quotations omitted).  Plaintiff has not and cannot meet her burden of establishing that she is a "security holder."

### B.     Plaintiff Must Be A "Security Holder" To Have Standing.

Section 36(b) of the Investment Company Act provides that investment advisers have a "fiduciary duty with respect to the receipt of compensation for services" that they provide to mutual funds.  15 U.S.C. § 80a-35(b).  However, Section 36(b) includes express limits on who may pursue a claim, stating that an action may be brought only "by the [SEC], or by a *security holder* on behalf of" a mutual fund that is allegedly charged excessive fees.  *Id*. (emphasis added).

As the Third Circuit has held, "one who does not own shares" in the mutual funds at issue is "not qualified to bring a derivative action" on behalf of those funds.  *Kauffman v. Dreyfus Fund, Inc.*, 434 F.2d 727, 735 (3d Cir. 1970).  Accordingly, courts have not hesitated to dismiss Section 36(b) claims where the plaintiff does not own shares in the funds at issue.  *See Santomenno ex rel. John Hancock v. John Hancock Life Ins. Co. (U.S.A.)*, No. 2:10-cv-01655, 2011 U.S. Dist. LEXIS 55317, at *15 (D.N.J. May 23, 2011); *Curran v. Principal Mgmt. Corp.*, No. 09-433 (CFB), 2011 WL 223872 (S.D. Iowa Jan. 24, 2011); *In re AllianceBernstein Mut.*

- 12 -

*Fund Excessive Fee Litig.*, No. 04-4885 (SWK), 2005 U.S. Dist. LEXIS 24263, at *33 (S.D.N.Y.

Oct. 19, 2005); *In re Salomon Smith Barney Mut. Fund Fees Litig.*, 441 F. Supp. 2d 579, 607-

608 (S.D.N.Y. 2006); *Forsythe v. Sun Life Fin., Inc.*, 417 F. Supp. 2d 100, 117 (D. Mass. 2006);

*In re Am. Mut. Funds Fees Litigs.*, No. CV 04-5593 (GAF), 2005 U.S. Dist. LEXIS 41884, at *9

(C.D. Cal. Dec. 16, 2005); *Green v. Nuveen Advisory Corp.*, 186 F.R.D. 486, 493 (N.D. Ill.

1999), *aff'd*, 295 F.3d 738 (7th Cir. 2002), *cert. denied*, 537 U.S. 1088 (U.S. 2002).

### C. Plaintiff Has Failed To Adequately Allege Standing.

In the Complaint, Plaintiff makes the bare-bones and conclusory allegation that she is a

"security holder" of the Funds (or, in the alternative, the EQ Trust).[10]  But Plaintiff's attempt to

label herself a "security holder," without further "factual enhancement," is unavailing.  *Ashcroft*

*v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("naked assertion[s]" devoid of "further factual

enhancement" are not sufficient, and "[a] pleading that offers 'labels and conclusions' . . . will

not do").  The Court "is only required to accept [Plaintiff's] pleaded facts, not her conclusions of

law."  *Garland v. Enter. Leasing Co. of Phila.*, No. 99-4013, 1999 WL 1077075, at *1 (E.D. Pa.

Nov. 24, 1999) (allegation that defendant was a "debt collector" was a legal conclusion and

insufficient to state a claim); *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)

(plaintiff must "provide the grounds of his entitle[ment] to relief," which "requires more than

labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

do") (internal quotations omitted).

---

[10]  *See, e.g.*, Am. Compl. ¶ 6 ("Plaintiff Sivolella, from at least April 1, 2010, through to the present (i.e., continues to be) is a security holder in the [Funds]."), ¶ 7 ("Alternatively, . . . Plaintiff Sivolella, from April 1, 2010, through to the present (*i.e.*, continues to be) is a security holder in the [EQ Trust]"), ¶ 49 ("Plaintiff Sivolella . . . is . . . a security holder of each of the [Funds], or in the alternative, the [EQ Trust].").

Here, the Amended Complaint contains **_no_** facts to support Plaintiff's conclusory allegation that she is a "security holder" of the Funds (or, in the alternative, the EQ Trust). Plaintiff appears to allege that she is a "security holder" because she was credited with "units" of Separate Account A and those units "increase[d] or decrease[d] [in value] *as though* [Plaintiff] had invested in the corresponding portfolio's shares directly."  Am. Compl. ¶¶ 8-9 (emphasis added).  This argument is illogical: The fact that Plaintiff was only credited with "units" of Separate Account A shows that Plaintiff is *not* a security holder of the Funds.  Likewise, the allegation that the value of Plaintiff's units of Separate Account A may increase or decrease "*as though*" Plaintiff invested in the Funds directly only underscores that she did not invest directly in the Funds.  Beyond that, any increase or decrease "as though" she invested in the Funds has no legal significance with respect to whether Plaintiff is a "security holder" under Section 36(b).  *See infra* at 19.  Moreover, as set forth below, the very documents Plaintiff relies on in the Amended Complaint flatly contradict her allegation that she is a "security holder."

### D.    Plaintiff Is Not A "Security Holder".

#### 1.    The Funds Are Owned By Separate Account A And Not By Plaintiff.

The EQ Trust's publicly filed documents make clear that Plaintiff cannot be a security holder of the Funds (or the EQ Trust).  The Trust's Prospectus expressly states that, unlike ordinary retail mutual funds, the Funds' "shares are currently **_sold only to insurance company separate accounts_** in connection with Contracts issued by [AXA Equitable], AXA Life and Annuity Company, other affiliated or unaffiliated insurance companies and The AXA Equitable 401(k) Plan," and are "**_not sold directly to the general public_**."  *See supra* at 6-7.  Likewise, the summary prospectuses for the Funds explain that the Funds are not available to the general public and are, instead, "intended for use in connection with a variable contract as defined in

- 14 -

Section 817(d) of the Internal Revenue Code . . . ."  Ex. G (Summary Prospectuses, dated May 1, 2011, at 1).

Section 817 of the Internal Revenue Code (the "Code") generally governs the favorable tax treatment afforded to variable annuities.  *See* 26 U.S.C. § 817.  As expressed in the legislative history of Section 817, Congress specifically intended that a variable annuity would only qualify for favorable tax treatment if the mutual funds offered through the variable annuity were *not* publicly available for purchase by investors:

> [T]he conference agreement allows any diversified fund to be used as the basis of variable contracts so long as all shares of the funds are owned by one or more segregated asset accounts of insurance companies, but *only if access to the fund is available exclusively through the purchase of a variable contract from an insurance company*. . . .  [T]he conferees intend that the standards be designed to deny annuity or life insurance treatment for investments that are publicly available to investors and investments which are made, in effect, at the direction of the investor.

*See* P.L. 98-369, Deficit Reduction Act of 1984, Conf. Comm. Rep., 98 H. Rpt. 861 (emphasis added).

Consistent with this, the IRS has ruled that, for federal income tax purposes, variable annuity holders are not owners of the underlying funds in which their variable annuities are invested.  *See, e.g.*, IRS Rev. Rul. 2003-91, 2003-3 I.R.B. 347 (Aug. 18, 2003) ("[T]he ability to allocate premiums and transfer funds among Sub-accounts alone does not indicate that [the variable annuity holder] has control over either Separate Account or Sub-account assets sufficient to be treated as the owner of those assets," and therefore the variable annuity holder "*will not be considered to be the owner, for federal income tax purposes, of the assets that fund the variable contract*") (emphasis added).

Here, Plaintiff never purchased any shares of the Funds or of the EQ Trust. Rather, as explained above, (i) the Funds are among a number of investment options available to Plaintiff as a participant in the EQUI-VEST Program, which was offered to Plaintiff pursuant to a group annuity contract between Newark and AXA Equitable, (ii) AXA Equitable placed Plaintiff's contributions to that Program in Separate Account A, consistent with requirements under federal tax law, (iii) Separate Account A purchased pro rata shares of the EQ Trust corresponding to the Funds selected by Plaintiff, (iv) Plaintiff's Certificate, in turn, was credited with "units" of Separate Account A (and not shares of any Fund), and (v) "the value of [Plaintiff's] units increase[d] or decrease[d] ***as though*** [Plaintiff] had invested in the corresponding portfolio's shares directly," but Plaintiff *did not* invest in the Funds directly, the value of Plaintiff's Separate Account A units did not directly correspond to the Funds' investment performance, and the value of the benefits provided under Plaintiff's Certificate were not determined solely by reference to the value of the units with which she was credited. *See supra* at 3-8.

Accordingly, while Plaintiff was credited with certain "units" of Separate Account A, the value of which was derivative, in part, of the performance of the Funds, Plaintiff did not actually own shares of the Funds or of the EQ Trust. This distinction is critical, and deprives Plaintiff of standing. The assets in Separate Account A, including shares of the Funds, were and are owned by AXA Equitable: As disclosed in the EQUI-VEST Product Prospectus, AXA Equitable is "the *legal owner* of all of the assets in Separate Account A."[11]  *See supra* at 5-6. Consistent with

---

[11]  As noted above, AXA Equitable is required by law to structure its variable annuities business in this way in order for most of its variable annuities to qualify for favorable tax treatment. Pursuant to Section 817 of the Code, in order for a "variable contract" to qualify as a tax-deferred investment, the contract must require that the amounts received under the contract (*e.g.*, Plaintiff's contributions) be allocated to an account, such as Separate Account A, that "pursuant to State law or regulation, is segregated from the general asset accounts of the company."  26 U.S.C. § 817(d)(1).  In turn, under New York insurance law, AXA Equitable is required to own all assets held by the separate account: "Amounts allocated by the insurer to separate accounts

AXA Equitable's ownership rights, any dividends issued by the Funds are reinvested by Separate Account A, and are not distributed to Plaintiff. *See* Ex. C (EQUI-VEST Product Prospectus at 65). In addition, when a shareholder vote is required on certain matters affecting the Funds, AXA Equitable votes the shares. *See* Ex. C (EQUI-VEST Product Prospectus at 67) ("As the owner of the shares of the [EQ Trust] we have the right to vote on certain matters involving the [Funds]," such as "the election of trustees," "the formal approval of independent auditors selected for [the Trust]," and "any other matters . . . requiring a shareholders' vote under the [Investment Company Act].").

Thus, Plaintiff is not a "security holder" of the Funds (or the EQ Trust). *See Young v. Nationwide Life Ins. Co.*, 2 F. Supp. 2d 914 (S.D. Tex. 1998) (variable insurance policy owners "do not invest directly" in the mutual funds at issue and "technically Plaintiffs do not have a legal interest" in the funds).[12] The fact that the value of Plaintiff's variable annuity units may increase or decrease based in part on the performance of the underlying Funds is of no legal significance for purposes of the standing analysis. *Curran*, 2011 WL 223872, at *3 (the fact that the "fortunes" of plaintiffs "are interwoven with and completely dependent upon the efforts and success of the investments in the funds" is not enough to confer statutory standing under Section 36(b)). Congress used the term "security holder" in Section 36(b) and chose not to use the term "beneficial owner" or any more expansive concept of ownership. Significantly, Congress expressly used the term "beneficial ownership" in other sections of the Investment Company

---

shall be owned by the insurer, the assets therein shall be the property of the insurer, and no insurer by reason of such accounts shall be or hold itself out to be a trustee." N.Y. Ins. Law § 4240(a)(12).

[12] In *Young*, plaintiffs were found to have Article III standing, but the issue of whether the plaintiffs had statutory standing as "security holders" was not addressed as there was no Section 36(b) claim at issue. *See Curran v. Principal Mgmt. Corp.*, No. 09-433, 2010 U.S. Dist. LEXIS

Act.  *See, e.g.*, 15 U.S.C. § 80a-3(c)(1)(A) and (B) (using "beneficial ownership" for purposes of identifying entities that do not qualify as an "investment company" under the Act); *id.* § 80a-2(a)(9) (using "beneficially own" for purposes of defining "control" under the Act).  "Congress must be presumed to know the meanings of the words and phrases it uses in drafting statutes," and "[w]hen it refers to [one term] in one section of the Act but omits in another, the statute should normally be construed to give effect to the distinction Congress makes thereby."  *See Pope v. East Brunswick Bd. of Educ.*, 12 F.3d 1244, 1249 (3d Cir. 1993).[13]

2.   A Variable Annuity Is Like A "Fund of Funds" And Shareholders Of Funds Of Funds Are Not "Security Holders" Under Section 36(b).

No court has ever specifically addressed whether, for purposes of Section 36(b), an owner of a variable annuity is a "security holder" of the underlying funds which impact the value of the annuity.  The most analogous case is *Curran v. Principal Mgmt. Corp.*, No. 09-433 (CFB), 2011 WL 223872 (S.D. Iowa Jan. 24, 2011).

In *Curran*, plaintiffs were shareholders of a so-called "fund of funds."[14]  These shareholders brought an action under Section 36(b) challenging the fees charged to the underlying funds in which the fund of funds invested.  *Curran*, 2011 WL 22382, at *1.  The defendants moved to dismiss, arguing that the shareholders lacked statutory standing because

---

83730, at *n.2 (S.D. Iowa June 8, 2010) (distinguishing between Article III standing and statutory standing under Section 36(b)).

[13]  *See also United States v. Cheeseman*, 600 F.3d 270, 281 (3d Cir. 2010) (citing *Pope*) ("In essence, [Defendant] invites the Court to read into § 924(d)(1) a willfulness requirement . . . . We reject this argument.  'Congress [is] presumed to know the meanings of the words and phrases it uses in drafting statutes.' . . . Congress included a willful mens rea in another clause of 924(d)(1).  Therefore, if Congress intended the first clause of § 924(d)(1) to also contain a heightened scienter, it would have used the term willful instead of knowing.").

[14]  A "fund of funds" is a registered investment company (*i.e.*, a mutual fund) that invests in other registered investment companies (*i.e.*, other mutual funds).  *See* NASD Rule 2830(b)(11), *available at* http://finra.complinet.com.

they only owned shares of the fund of funds and were not "security holders" of the underlying funds.  *Id.*  The court initially rejected the defendants' argument and held that Section 36(b) creates a private right of action even for persons "who possess an interest in a mutual fund that is acquired through a fund of funds."  *Curran*, 2010 U.S. Dist. LEXIS 83730, at *24-25.  However, on defendants' motion for reconsideration, the court reversed itself and found that this holding was "clearly erroneous."  *Curran*, 2011 WL 223872, at *1.  Specifically, the court held that the shareholders of the fund of funds were not "security holders" of the underlying funds and that it was of no significance that "the 'fortunes' of the [fund of funds] shareholders [were] interwoven with and completely dependent upon the efforts and success of the investments in the underlying funds."  *Id.* at *4.  Accordingly, the court dismissed the plaintiffs' Section 36(b) claims as to the underlying funds.  *Id.*

The same result is required here.  The structure of a fund of funds is analogous to the structure of a variable annuity whose value is derivative of underlying mutual funds: A registered unit investment trust (here, Separate Account A, which is analogous to the fund of funds in *Curran*) invests in other registered investment companies (here, the EQ Trust/the Funds, which are analogous to the underlying funds in *Curran*).  *See supra* note 8.  Likewise, the shareholder in a fund of funds is in a position analogous to Plaintiff's: In a fund of funds, the shareholders only own shares of the fund of funds and do not own shares of the underlying funds directly.  In fact, the lack of standing is even more pronounced in this case than in *Curran* because Plaintiff here does not hold legal title to the Separate Account which made the investment in the Funds (unlike *Curran*, where the plaintiffs were security holders of the fund of funds).  Plaintiff is also further removed from any direct ownership in the underlying Funds than the plaintiffs in *Curran* because Plaintiff did not even directly purchase a variable annuity from AXA Equitable.  Instead,

Plaintiff was only a "certificate holder" under a group annuity contract between AXA Equitable

and Newark.  *See supra* at 3-4.

   As such, like the plaintiffs in *Curran*, Plaintiff is not a "security holder" of the Funds (or

the EQ Trust) and therefore lacks statutory standing to assert a Section 36(b) claim.[15]

## II.   PLAINTIFF FAILS TO STATE A CLAIM UNDER SECTION 26(f) AND IS NOT ENTITLED TO RELIEF UNDER SECTION 47(b).

   Plaintiff's claim for alleged violations of Section 26(f) of the Investment Company Act

fails because there is no private right of action under Section 26(f).  *Olmsted v. Pruco Life Ins.

Co.*, 283 F.3d 429, 436 (2d Cir. 2002).  In turn, because Plaintiff's Section 26(f) claim must be

dismissed, Plaintiff is not entitled to relief under Section 47(b) of the Act.  *Smith v. Oppenheimer

Funds Distrib.*, No. 10 Civ. 7387, 2011 U.S. Dist. LEXIS 60877 (S.D.N.Y. June 6, 2011).

### A.   There is No Private Right of Action Under Section 26(f).

   Section 26(f) provides that "[i]t shall be unlawful for any registered separate account

funding variable insurance contracts, or for the sponsoring insurance company of such account,

---

[15]  Plaintiff's Section 36(b) claim should be dismissed *with prejudice*.  A court has discretion to dismiss a claim with prejudice where the plaintiff was put on notice of the deficiencies in the claim and yet failed to cure those defects in an amended complaint.  *See Krantz v. Prudential Inv. Fund Mgmt. LLC*, 305 F.3d 140, 144-45 (3d Cir. 2002) (affirming district court's denial of leave to replead where plaintiff was on notice of the deficiencies in complaint but did not resolve them in amended pleading); *Franks v. Food Ingredients Int'l, Inc.*, No. 09-3449, 2010 U.S. Dist. LEXIS 77280, at *26-27 (E.D. Pa. July 30, 2010) (dismissing claims with prejudice where "Plaintiffs were . . . already put on notice as to the deficiencies in their [claims] by [Defendant]'s original Motion to Dismiss, yet failed to correct the errors with their Amended Complaint") (citing *Ca. Public Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 163 (3d Cir. 2004)); *Benak v. Alliance Capital Mgmt. L.P.*, No. Civ. 01-5734, 2004 WL 1459249, at *10 (D.N.J. Feb. 9, 2004) (dismissing action with prejudice where plaintiff was on notice of deficiencies but nevertheless failed to cure them).  Granting a plaintiff leave to replead a second time after she fails to cure a known deficiency "would unduly prejudice [defendants] by requiring them to respond yet a third time to a new complaint."  *Franks*, 2010 U.S. Dist. LEXIS 77280, at *26-27. Here, Plaintiff was put on notice of the standing defect in her Section 36(b) claim by Defendants' original motion to dismiss, but Plaintiff has failed to cure that defect in the Amended Complaint. *See supra* at 10-20.  Accordingly, Plaintiff should not be permitted to (again) replead her Section 36(b) claim, and the claim should be dismissed with prejudice.

to sell any such contract . . . unless the fees and charges deducted under the contract, in the aggregate, are reasonable in relation to the services rendered, the expenses expected to be incurred, and the risks assumed by the insurance company . . . ."  15 U.S.C. § 80a-26(f)(2)(A).  However, as the Second Circuit Court of Appeals held in its seminal decision in *Olmsted v. Pruco Life Ins. Co.*, there is no private right of action under Section 26(f).  *Olmsted*, 283 F.3d at 436.

In *Olmsted*, the Second Circuit Court of Appeals found that Section 26(f) does not expressly provide for a private right of action and that, consistent with United States Supreme Court precedent, the court was not permitted to create one.  *Id.* at 432 ("'[P]rivate rights of action to enforce federal law must be created by Congress.' . . . Without congressional intent, 'a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute.") (citing *Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001)).  Specifically, the Second Circuit explained that there was no implied private right of action under Section 26(f) because:

> (1) "[n]o provision of the [Investment Company Act] explicitly provides for a private right of action for violations of . . . § 26(f) . . . , and so we must presume that Congress did not intend one";
>
> (2) Section 26(f) "do[es] not contain rights-creating language" and "does not mention investors such as the plaintiffs";
>
> (3) "§ 42 of the [Investment Company Act] explicitly provides for enforcement of all [Investment Company Act] provisions, including § 26(f) . . . , by the [SEC]"; and
>
> (4) "Congress explicitly provided in § 36(b) of the [Investment Company Act] for a private right of action for investors" and "Congress's explicit provision of a private right of action to enforce one section of a statute suggests that omission of an explicit private right to enforce other sections was intentional."

*Id.* at 432-33.

*Olmsted* has been consistently cited with approval: It has been followed at least 35 times

by sixteen courts (across nine circuit courts of appeal, including the Third Circuit) in decisions

refusing to imply private rights of action under the Investment Company Act.[16]  Indeed, one

---

[16]  *See In re BlackRock Mut. Funds Fee Litig.*, No. 04 Civ. 164, 2006 WL 4683167 (W.D. Pa. Mar. 29, 2006) (finding no implied rights of action under Sections 34(b), 36(a), and 48(a)); *In re Lord Abbett Mut. Funds Fee Litig.*, 407 F. Supp. 2d 616 (D.N.J. 2005) (finding no implied rights of action under Sections 34(b) and 36(a)); *Hamilton v. Allen*, 396 F. Supp. 2d 545 (E.D. Pa. 2005) (finding no implied right of action under Section 36(a)); *In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d 451 (D.N.J. 2005) (finding no implied rights of action under Sections 34(b) and 36(a)); *Northstar Fin. Advisers, Inc., v. Schwab Inv.*, 615 F.3d 1106, 1122 (9th Cir. 2010) (finding no implied right of action under Section 13(a)); *Smith v. Oppenheimer Funds Distrib.*, No. 10 Civ. 7387, 2011 U.S. Dist. LEXIS 60877, at *24, 27 (S.D.N.Y. June 6, 2011) (Sections 47(b) and 36(a)); *Wiener v. Eaton Vance Distribs., Inc.*, No. 10-10515, 2011 WL 1233131, at *11-13 (D. Mass. Mar. 30, 2011) (Section 36(a)); *In re Regions Morgan Keegan Sec., Derivative & ERISA Litig.*, 743 F. Supp. 2d 744, 761-62 (W.D. Tenn. 2010) (Sections 13, 22, 30, and 34(b)); *Gabelli Global Multimedia Trust v. W. Inv. LLC*, 700 F. Supp. 2d 748 (D. Md. 2010) (Section 12(d)(1)(A)(i) and 48(a)); *Western Inv. LLC v. DWS Global Commodities Stock Fund, Inc.*, 705 F. Supp. 2d 281 (S.D.N.Y. 2010) (Section 13); *In re Scudder Mut. Funds Fee Litig.*, No. 04 Civ. 1921, 2007 WL 2325862 (S.D.N.Y. Aug. 14, 2007) (Section 48(a)); *Halebian v. Berv, et al.*, 631 F. Supp. 2d 284 (S.D.N.Y. 2007) (Section 20(a)); *Boyce v. AIM Mgmt. Group, Inc., et al.*, No. H-04-2587, 2006 WL 4671324 (S.D. Tex. Sept. 29, 2006) (Sections 34(b), 36(a), and 48(a)); *Gilliam v. Fidelity Mgmt. & Research Co., et al.*, No 04-11600, slip op. (D. Mass. Sept. 18, 2006) (Sections 34(b), 36(a), and 48(a)); *In re Salomon Smith Barney Mut. Fund Fees Litig.*, 441 F. Supp. 2d 579 (S.D.N.Y. 2006) (Sections 34(b) and 48(a)); *In re Morgan Stanley and Van Kampen Mut. Funds Sec. Litig.*, No. 03 Civ. 8208, 2006 WL 1008138 (S.D.N.Y. Apr. 14, 2006) (Sections 34(b) and 48(a)); *In re Evergreen Mut. Funds Fee Litig.*, 423 F. Supp. 2d 249 (S.D.N.Y. 2006) (Sections 34(b) or 36(a)); *In re Oppenheimer Funds Fee Litig.*, 419 F. Supp. 2d 593 (S.D.N.Y. 2006) (Sections 34(b), 36(a) or 48(a)); *Forsythe v. Sun Life Fin. Inc.*, 417 F. Supp. 2d 100 (D. Mass. 2006) (Sections 34(b), 36(a), and 48(a)); *In re Goldman Sachs Mut. Funds Fee Litig.*, No. 04 Civ. 2567 (NRB), 2006 U.S. Dist. LEXIS 1542 (S.D.N.Y. Jan. 13, 2006) (Sections 34(b) and 36(a)); *Davis v. Bailey*, No. 05-cv-00042, 2005 U.S. Dist. LEXIS 38204 (D. Colo. Dec. 22, 2005) (Section 36(a)); *Waldock v. M.J. Select Global, Ltd.*, No. 03 C 5293, 2005 WL 3542527 (N.D. Ill. Dec. 27, 2005) (Section 48(a)); *In re Am. Mut. Funds Fees Litigs.*, No. CV 04-5593 (GAF), 2005 U.S. Dist. LEXIS 41884 (C.D. Cal. Dec. 16, 2005) (Sections 34(b) and 36(a)); *Stegall v. Ladner*, 394 F. Supp. 2d 358 (D. Mass. 2005) (Section 36(a)); *In re Mut. Funds Inv. Litig. (In re Janus Subtrack Investor Class Op.)*, 384 F. Supp. 2d 845 (D. Md. 2005) (Sections 34(b) and 36(a)); *Dull v. Arch*, No. 05 C 140, 2005 U.S. Dist. LEXIS 14988 (N.D. Ill. July 27, 2005) (Section 36(a)); *Jacobs v. Bremner*, 378 F. Supp. 2d 861 (N.D. Ill. 2005) (Section 36(a)); *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222 (S.D.N.Y. 2005), *aff'd Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110 (2d Cir. 2007) (Sections 34(b), 36(a), and 48(a)); *Mutchka v. Harris*, 373 F. Supp. 2d 1021 (C.D. Cal. 2005) (Section 36(a)); *Chamberlain v. Aberdeen Asset Mgmt. Ltd.*, No. 02-CV-5870, 2005 WL 195520 (E.D.N.Y. Jan. 21, 2005), *vacated solely for purposes of settlement*, 2005 WL 1378757 (E.D.N.Y. Apr. 12, 2005) (Section 36(a)); *In re Van Wagoner Funds, Inc.*, 382 F. Supp. 2d 1173

judge in the District of New Jersey, Judge William J. Martini, has described *Olmsted* as

"persuasive" and as containing a "cogent analysis" of why private rights of action may not be

implied under the Investment Company Act.  *In re Franklin*, 388 F. Supp. 2d at 466 (no implied

right of action under Sections 34(b) and 36(a)).   Furthermore, with the exception of one district

court (which was reversed on appeal by the Ninth Circuit),[17] _no court_ has ever found an implied

right of action under _any_ section of the Investment Company Act since *Olmsted* was decided.

Thus, because there is no express private right of action under Section 26(f) and none can

be implied, Plaintiff's Section 26(f) claim must be dismissed.[18]

### B.    Plaintiff Is Not Entitled To Relief Under Section 47(b) Because Plaintiff's Section 26(f) Claim Must Be Dismissed.

Section 47(b) provides that "[a] contract that is made, or whose performance involves, a

violation of [the Investment Company Act] . . . is unenforceable by either party . . . ."  15 U.S.C.

§ 80a-46(b).  However, there is no private right of action under Section 47(b).  *See Steinberg v.*

---

(N.D. Cal. 2004) (Section 34(b)); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 272 F. Supp. 2d 243 (S.D.N.Y. 2003) (Section 34(b)); *meVC Draper Fisher Jurvetson Fund I, Inc. v. Millennium Partners, L.P.*, 260 F. Supp. 2d 616 (S.D.N.Y. 2003) (Section 12(d)(1)); *White v. Heartland High-Yield Muni. Bond Fund*, 237 F. Supp. 2d 982 (E.D. Wis. 2002) (Sections 22 and 34(b)).

[17]  *Northstar Fin. Advisers, Inc., v. Schwab Inv.*, 609 F. Supp. 2d 938 (N.D. Cal. 2009) (finding an implied right of action under Section 13(a)), *rev'd*, 615 F.3d 1106, 1122 (9th Cir. 2010) (citing *Olmsted* and finding no implied right of action).

[18]  Even if there were a private right of action under Section 26(f) (which there is not), Plaintiff's Section 26(f) claim would fail because Plaintiff has failed to adequately allege that the fees "deducted" under her variable annuity "contract" were unreasonable *in the aggregate*.  *See* 15 U.S.C. § 80a-26(f)(2)(A) (providing that "the fees and charges deducted under the contract, *in the aggregate*, [must be] reasonable in relation to the services rendered, the expenses expected to be incurred, and the risks assumed by the insurance company . . . .") (emphasis added).  Instead, Plaintiff's Section 26(f) claim relates exclusively to the *management* fees that were purportedly "deducted" under Plaintiff's variable annuity, and Plaintiff merely alleges in a conclusory fashion that the fees charged under the variable annuity contracts were "in the aggregate" unreasonable.  Am. Compl. ¶¶ 36, 220-23, 278.  The Amended Complaint contains no allegations, as required to state a claim under Section 26(f), regarding the amount of the aggregate fees, the total package of services AXA provided in exchange for those aggregate fees, or the expenses AXA incurred and the risks AXA assumed in providing the variable annuities.

*Janus Capital Mgmt.*, No. 10-1207, 2011 U.S. App. LEXIS 24053, at *14 (4th Cir. Dec. 2, 2011) ("[T]here is no private cause of action to enforce Section 47(b)."). At most, Section 47(b) provides a rescission *remedy* for a violation of a separate provision of the Investment Company Act for which there is a private of action—but it does not, in and of itself, provide any independent private right of action. *Smith v. Oppenheimer Funds Distrib.*, 2011 U.S. Dist. LEXIS 60877, at *17-18 ("[S]ection 47(b) contains a remedy, but not a substantive right.").[19]

Accordingly, as Judge Martini has recognized, when claims for predicate violations of the Investment Company Act are dismissed, any claim for relief under Section 47(b) must also be dismissed. *Santomenno v. John Hancock Life Ins. Co. (USA)*, No. 2:10-cv-01655, 2011 U.S. Dist. LEXIS 55317, at *15-16 (D.N.J. May 23, 2011) ("Because this Court has already dismissed Plaintiffs' Section 36(b) claim, the only other cause of action under the ICA, the Section 47(b) claim would seem to fail also."); *see also Hamilton v. Allen*, 396 F. Supp. 2d 545, 558-59 (E.D. Pa. 2005) ("[T]o the extent Plaintiffs' other Investment Company Act claims fail, their Section 47(b) claim must necessarily fail because a violation of the Act is a predicate to the remedy provided therein.").

Courts consistently dismiss claims for Section 47(b) relief where, such as here, there is no *private* right of action for the alleged predicate violation of the Investment Company Act.[20] As

---

[19] *See also Dull v. Arch*, No. 05 C 140, 2005 U.S. Dist. LEXIS 14988, at *8 (N.D. Ill. July 27, 2005) ("[Section 47(b)] does not provide for an independent cause of action.").

[20] *See Smith*, 2011 U.S. Dist. LEXIS 60877, at *25-26 ("Because Section 36(a) lacks a private right of action, claims under that statute raised by parties other than the SEC must be dismissed, and are therefore unavailable as a predicate for a section 47(b) claim."); *Smith v. Franklin/Templeton Distribs.*, No. 09-4775, 2010 U.S. Dist. LEXIS 112934, at *5-10 (N.D. Cal. Oct. 22, 2010) (no Section 47(b) claim because no private right of action under Section 36(a) or Rule 38a-1); *Davis v. Bailey*, No. 05-cv-00042, 2005 U.S. Dist. LEXIS 38204, at *18-19 (D. Col. Dec. 22, 2005) (no Section 47(b) claim where no private right of action under Section 36(a)); *Mutchka v. Harris*, 373 F. Supp. 2d 1021, 1027 (C.D. Cal. 2005) (same); *Hamilton*, 396 F. Supp. 2d at 558-59 (same); *Jacobs v. Bremner*, 378 F. Supp. 2d 861, 869 (N.D. Ill. 2005) (same); *Dull*, 2005 U.S. Dist. LEXIS 14988, at *8 (same); *Stegall v. Ladner*, 394 F. Supp. 2d

one court explained, "to establish [a] section 47(b) claim, [a] [p]laintiff must assert a predicate

violation of a substantive provision of the [Investment Company Act] *which itself has a private

right of action*." *Smith*, 2011 U.S. Dist. LEXIS 60877, at *24 (emphasis added). Here, because

there is no private right of action under Section 26(f), Plaintiff is not entitled to relief under

Section 47(b).[21]

## III.   THE COURT SHOULD DECLINE TO EXERCISE JURISDICTION OVER PLAINTIFF'S UNJUST ENRICHMENT CLAIM OR, IN THE ALTERNATIVE, DISMISS THE CLAIM FOR FAILURE TO STATE A CAUSE OF ACTION.

As a threshold matter, because each of Plaintiff's claims asserted under federal law must

be dismissed, the Court should decline to exercise supplemental jurisdiction over Plaintiff's

remaining state law claim for unjust enrichment.[22] *See, e.g.*, *V Tech Servs. v. Street*, 215 Fed.

---

358, 378 (D. Mass. 2005) (same); *see also Santomenno*, 2011 U.S. Dist. LEXIS 55317, at *12-15 (no Section 47(b) claim where no standing under Section 36(b)).

[21]  Plaintiff also cannot rely on her Section 36(b) claim as a basis for seeking relief under Section 47(b), because Plaintiff's Section 36(b) claim must be dismissed for lack of standing. *See supra* at 10-20; *Santomenno*, 2011 U.S. Dist. LEXIS 55317, at *15-16 (dismissing claim for relief under Section 47(b) because Section 36(b) claim dismissed for lack of standing); *Hamilton v. Allen*, 396 F. Supp. 2d 545, 558-59 (E.D. Pa. 2005) (dismissing claim for relief under Section 47(b) where Section 36(b) claim dismissed). Additionally, Section 47(b) does not provide a remedy for alleged Section 36(b) violations because Section 36(b), which was enacted 30 years after Section 47(b), is expressly limited to the recovery of "actual damages." 15 U.S.C. § 80a-35(b)(3) ("Any award of damages . . . shall be limited to the actual damages resulting from the breach of fiduciary duty . . . ."). There is nothing in the legislative history of Section 36(b) to suggest that the rescission remedy under Section 47(b) was intended to be available. Furthermore, Plaintiff cannot rely on her Section 36(b) claim as entitling her to Section 47(b) relief because she is not *a party* to the Management Agreements and does not assert the Section 47(b) claim derivatively on behalf of the Funds. Plaintiff, therefore, lacks standing to seek Section 47(b) relief based on this theory. *See* Section 47(b), 15 U.S.C. § 80a-46(b) ("A contract that is made, or whose performance involves, a violation of [the Investment Company Act] . . . is unenforceable *by either party* . . . .") (emphasis added); *Hamilton*, 396 F. Supp. 2d at 558 ("Because Plaintiffs are not, as individuals, a party to the advisory contracts and because they did not bring the [Section 47(b)] claim as a derivative action, they do not have standing to pursue this claim.").

[22]  Citing no authority, Plaintiff purports to bring the unjust enrichment claim under "federal common law." Am. Compl. ¶¶ 47, 232. However, a claim for unjust enrichment is plainly a *state* common law claim. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938) ("There is no federal

Appx. 93, 96 (3d Cir. 2007) ("When a District Court dismisses before trial the claims over which

it had original jurisdiction, it 'must decline to decide the pendent state claims unless

considerations of judicial economy, convenience, and fairness to the parties provide an

affirmative justification for doing so.'") (internal citation omitted); *Gregorio v. Aviles*, No. 11-

2771 (WJM), 2011 U.S. Dist. LEXIS 127155, at *24 (D.N.J. Nov. 3, 2011) ("[S]ince this Court

is dismissing every claim over which it had original subject matter jurisdiction, this Court

declines at this juncture to exercise supplemental jurisdiction over Plaintiff's state law claims . . .

.") (internal citation omitted).

Furthermore, even if the Court were to exercise jurisdiction over the unjust enrichment

claim, the claim must be dismissed because Plaintiff has pled it directly, rather than derivatively

on behalf of the Funds.  *See* Am. Compl. ¶¶ 44-48, 226-53, 280-86.  A claim is derivative where

"the substantive nature of the alleged injury is such that it falls directly on the corporation as a

whole and collectively, but only secondarily, upon its stockholders as a function of and in

proportion to their pro rata investment in the corporation."  *In re Triarc Cos. Class & Derivative

Litig.*, 791 A.2d 872, 878 (Del. Ch. 2001) (footnote omitted).[23]  Here, *the Funds* paid the

allegedly excessive management fees.  As such, any harm resulting from Defendants' alleged

---

general common law."); *Glaziers & Glassworkers Union Local No. 252 Annuity Fund v.
Newbridge Sec.*, 93 F.3d 1171, 1184 (3d Cir. 1996) (while "Congress has authorized federal
courts to create common law in certain instances," courts "do so only to further Congress' intent
by filling gaps *in specific legislation*.") (emphasis added) (internal citations omitted); *In re
Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 167 (E.D. Pa. 2009) ("Unjust enrichment is not a
catch-all claim existing within the narrow scope of federal common law.") (internal citation
omitted); *see also Woodward Governor Co. v. Curtiss-Wright Flight Sys.*, 164 F.3d 123, 130 (2d
Cir. 1999) ("A plaintiff cannot establish federal question jurisdiction simply by asserting
equitable rights under the federal common law.").

[23]   Whether a claim is direct or derivative is governed by the law of the state of incorporation.  *In
re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d 451, 462 (D.N.J. 2005) (citing *Kamen v.
Kemper Fin. Servs., Inc.*, 500 U.S. 90, 108 (1991)).  Here, the EQ Advisors Trust is incorporated
in Delaware (Ex. D (Trust's Prospectus at 176)), and therefore Delaware law governs whether
Plaintiff's unjust enrichment claim may be asserted directly.

unjust enrichment would fall directly on the Funds—persons or entities invested in the Funds would suffer, if any, only secondary harm.  Plaintiff's claim for unjust enrichment, therefore, must be asserted derivatively on behalf of the Funds.  Because Plaintiff has pled the unjust enrichment claim directly, the claim must be dismissed.[24]  *In re Goldman Sachs Mut. Funds Fee Litig.*, No. 04 Civ. 2567 (NRB), 2006 U.S. Dist. LEXIS 1542, at *22-23 (S.D.N.Y. Jan. 13, 2006) (dismissing unjust enrichment claim brought by mutual fund shareholders against investment advisers because asserted directly rather than derivatively); *In re Evergreen Mut. Funds Fee Litig.*, 423 F. Supp. 2d 249, 261 (S.D.N.Y. 2006) (same); *In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d at 471 (same); *Forsythe*, 417 F. Supp. 2d at 112 (same).

Furthermore, Defendants were not (and could not have been) "unjustly enriched" by their receipt of the management fees because they were paid *pursuant to* the Funds' Management Agreements.  Am. Compl. ¶ 13; *supra* at 9.  Where parties to a contract receive what was bargained for pursuant to the contract, there can be no claim for unjust enrichment.  *See Hughes v. Panasonic Consumer Elecs. Co.*, No. 10-846 (SDW), 2011 U.S. Dist. LEXIS 79504, at *77 (D.N.J. July 21, 2011) ("Unjust enrichment 'requires that [a] plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant *beyond its contractual rights*.'") (internal quotation omitted) (emphasis added); *see also Van Orman v. Am. Ins. Co.*, 680 F.2d 301, 310 (3d

---

[24]  Plaintiff's unjust enrichment claim also fails to comply with the "demand" requirements for derivative claims set forth in Rule 23.1 of the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 23.1; *In re Mut. Funds Inv. Litig.*, 384 F. Supp. 2d 873, 874-875 (D. Md. 2005) (dismissing shareholders' unjust enrichment claim "[b]ecause none of plaintiffs' state law claims can be pursued unless demand is excused, and because . . . plaintiffs have not alleged sufficient facts to excuse demand"); *Forsythe,* 417 F. Supp. 2d at 112 (shareholders' unjust enrichment claim dismissed because "should have been brought as derivative claim[s], with appropriate compliance with Rule 23.1"); *In re Davis Selected Mut. Funds Litig.*, No. 04 Civ. 4186 (MGC), 2005 U.S. Dist. LEXIS 23203, at *16 (S.D.N.Y. Oct. 11, 2005) (dismissing shareholders' unjust enrichment claim "[b]ecause the complaint fails to comply with Rule 23.1").

Cir. 1982) ("[R]ecovery under unjust enrichment may not be had when a valid, unrescinded contract governs the rights of the parties."); *Stanton v. Greenstar Recycled Holdings, LLC*, No. 10-5658 (GEB), 2011 U.S. Dist. LEXIS 35659, at *14-15 (D.N.J. Mar. 31, 2011) (same).

Here, the Funds' management fees were paid by the Funds pursuant to the Management Agreements between the EQ Trust and AXA.  Am. Compl. ¶ 13; *supra* at 9.  There is no allegation that, in exchange for the fees, the Funds did not receive the services AXA was required to perform under those Agreements.  Therefore, the Amended Complaint fails to state a claim for unjust enrichment.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the

Amended Complaint with prejudice.


Dated:  December 19, 2011

BLANK ROME LLP

By:  /s/ Jonathan M. Korn
      Jonathan M. Korn
      301 Carnegie Center, 3rd Floor
      Princeton, NJ 08540

MILBANK, TWEED, HADLEY & McCLOY LLP
      James N. Benedict (*pro hac vice*)
      Sean M. Murphy (*pro hac vice*)
      Andrea G. Hood
      Will P. Gross
      1 Chase Manhattan Plaza
      New York, NY  10005-1413
      (212) 530-5000

      *Attorneys for Defendants*