## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

| | |
|---|---|
| MARY ANN SIVOLELLA, for the use and benefit of the EQ/Common Stock Index Portfolio, the EQ/Equity Growth PLUS Portfolio, the EQ/Equity 500 Index Portfolio, the EQ/Large Cap Value PLUS Portfolio, the EQ/Global Multi-Sector Equity Portfolio, the EQ/Mid Cap Value PLUS Portfolio, the EQ/GAMCO Small Company Value, and the EQ/Intermediate Government Bond Index Portfolio; MARY ANN SIVOLELLA for the use and benefit of the EQ Advisors Trust; MARY ANN SIVOLELLA, individually and on behalf of any person or entity that is a party to a variable annuity contract issued by/sold by AXA Equitable Life Insurance Company, which offered the ability to invest in, and resulted in an investment in, the EQ/Common Stock Index Portfolio, the EQ/Equity Growth PLUS Portfolio, the EQ/Equity 500 Index Portfolio, the EQ/Large Cap Value PLUS Portfolio, the EQ/Global Multi-Sector Equity Portfolio, the EQ/Mid Cap Value PLUS Portfolio, the EQ/GAMCO Small Company Value, or the EQ/Intermediate Government Bond Index Portfolio; and MARY ANN SIVOLELLA, individually and on behalf of any person or that paid investment management fees to either AXA Equitable Life Insurance Company or AXA Equitable Funds Management Group, LLC, on account of investments in, the EQ/Common Stock Index Portfolio, the EQ/Equity Growth PLUS Portfolio, the EQ/Equity 500 Index Portfolio, the EQ/Large Cap Value PLUS Portfolio, the EQ/Global Multi-Sector Equity Portfolio, the EQ/Mid Cap Value PLUS Portfolio, the EQ/GAMCO Small Company Value, or the EQ/Intermediate Government Bond Index Portfolio, | Civil Action No. 11-4194<br><br><br>Oral Argument Requested<br><br>Document Filed Electronically |
| Plaintiffs, | |
| vs. | |
| AXA Equitable Life Insurance Company and AXA Equitable Funds Management Group, LLC, | |
| Defendants. | |

---

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT PURSUANT TO RULES 12(b)(1) AND 12(b)(6)

Blank Rome LLP
   Jonathan M. Korn
301 Carnegie Center, 3rd Floor
Princeton, NJ 08540
(609) 750-7700 (Phone)
(609) 750-7701 (Fax)

Milbank, Tweed, Hadley & McCloy LLP
   James N. Benedict (*pro hac vice*)
   Sean M. Murphy (*pro hac vice*)
   Andrea G. Hood
   Will P. Gross
1 Chase Manhattan Plaza
New York, NY 10005-1413
(212) 530-5000 (Phone)
(212) 530-5219 (Fax)

*Attorneys for Defendants*

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ................................................................... ii

PRELIMINARY STATEMENT ......................................................1

ARGUMENT ...............................................................................3

I.     PLAINTIFF'S "EQUITABLE" INTEREST IN THE FUNDS DOES NOT CONFER STATUTORY STANDING UNDER SECTION 36(b)...............3

     A.     Section 36(b) Requires That Plaintiff Be a "Security Holder," Which Requires Legal Ownership of the Funds. .................................3

     B.     The Term "Security Holder" Does Not Include Persons With Mere "Equitable" Interests In a Mutual Fund. .....................................5

          1.     The Text Of Section 36(b) Is Controlling.................................5

          2.     Plaintiff's Cases Are Irrelevant.................................................6

          3.     Plaintiff's Argument That The Funds Will Be "Immune" From Protection Is Immaterial and Incorrect............................9

          4.     Plaintiff Fails To Distinguish *Curran*.....................................10

II.     PLAINTIFF IS NOT ENTITLED TO A REMEDY UNDER SECTION 47(b) FOR ALLEGED VIOLATIONS OF SECTION 26(f)......................11

III.     PLAINTIFF'S UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED. .............................................................................14

CONCLUSION ...........................................................................16

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

## <u>CASES</u>

*Alexander v. Sandoval*,
532 U.S. 275 (2001)............................................................................2, 13

*Ali v. Fed. Bureau of Prisons*,
552 U.S. 214 (2008)...................................................................................5

*AMP Inc. v. United States*,
820 F.2d 612 (3d Cir. 1987) .....................................................................4

*Angelastro v. Prudential-Bache Sec., Inc.*,
764 F.2d 939 (3d Cir. 1985) .....................................................................7

*Bache & Co. v. Gen. Instrument Corp.*,
74 N.J. Super. 92 (App. Div. 1962) ..........................................................7

*Barnhart v. Sigmon Coal Co.*,
534 U.S. 438 (2002)...............................................................................2, 5

*C.H. Sanders Co., Inc. v. BHAP Housing Dev. Fund Co.*,
903 F.2d 114 (2d Cir. 1990) ...................................................................14

*Certainteed Corp. & Bay Mills, Ltd. v. Fed. Ins. Co.*,
913 F. Supp. 351 (E.D. Pa. 1995)............................................................7

*Curran v. Principal Management Corporation*,
No. 09-cv-00433 (RP-CFB), 2011 U.S. Dist. LEXIS 6577 (S.D. Iowa
Jan. 24, 2011)..........................................................................................10

*Drachman v. Harvey*,
453 F.2d 722 (2d Cir. 1972) .................................................................7, 8

*Foremost-McKesson, Inc. v. Provident Sec. Co.*,
423 U.S. 232 (U.S. 1976).......................................................................14

*Gelman v. State Farm Mut. Auto. Ins. Co.*,
583 F.3d 187 (3d Cir. 2009) .....................................................................5

*Green v. Fund Asset Mgmt.*,
  286 F.3d 682 (3d Cir. 2002) .............................................................7, 9

*HFG Co. v. Pioneer Pub. Co.*,
  162 F.2d 536 (7th Cir. 1947) ...............................................................8

*In re Am. Home Mort. Holdings, Inc.*,
  637 F.3d 246 (3d Cir. 2011) ................................................................5

*In re Eaton Vance Mutual Funds Fee Litig.*,
  380 F. Supp. 2d 222 (S.D.N.Y. 2005) ...............................................13

*In re Franklin Nat'l Bank Sec. Litig.*,
  574 F.2d 662 (2d Cir. 1978) ................................................................8

*In re The Pittsburgh & Lake Erie Railroad Co. Sec. & Antitrust Litig.*,
  543 F.2d 1058 (3d Cir. 1976) ..............................................................8

*Jones v. Taylor*,
  348 A.2d 188 (Del. 1975) ...................................................................15

*Mills v. The Electric Auto-Lite Co.*,
  396 U.S. 375 (1970)............................................................................12

*Olmsted v. Pruco Life Ins. Co.*,
  283 F.3d 429 (2d Cir. 2002) .......................................................passim

*Piper v. Chris-Craft Indus., Inc.*,
  430 U.S. 1 (1977)................................................................................14

*Pope v. East Brunswick Bd. of Educ.*,
  12 F.3d 1244 (3d Cir. 1993) ................................................................4

*Prudential Insurance Company of America. v. S.E.C.*,
  326 F.2d 383 (3d Cir. 1964) .........................................................6, 10

*Reves v. Ernst & Young*,
  494 U.S. 56 (1990)................................................................................6

*Sery v. Fed. Bus. Ctrs., Inc.*,
  No. 06-1026 (SRC), 2008 U.S. Dist. LEXIS 31647 (D.N.J. Apr. 15,
  2008) ...............................................................................................7, 11

*Silber v. Mabon*,
    957 F.2d 697 (9th Cir. 1992) ...............................................................8

*Smith v. Oppenheimer Funds Distrib.*,
    No. 10 Civ. 7387 (LBS), 2011 U.S. Dist. LEXIS 60877 (S.D.N.Y. June
    6, 2011) .................................................................................................8, 12

*Steinberg v. Janus Capital Mgmt.*,
    No. 10-1207, 2011 U.S. App. LEXIS 24053 (4th Cir. Dec. 2, 2011) ...............11

*Texas Indus., Inc. v. Radcliff Materials, Inc.*,
    451 U.S. 630 (1981)................................................................................14

*Transamerica Mortgage Advisors, Inc. v. Lewis*,
    444 U.S. 11 (1979)..................................................................................12

*United Housing Found., Inc. v. Forman*,
    421 U.S. 837 (1975)..................................................................................6

*United States v. Cheeseman*,
    600 F.3d 270 (3d Cir. 2010) ...................................................................4

*United States v. SmithKline Beecham Clinical Labs.*,
    149 F.3d 227 (3d Cir. 1998) ...................................................................5

*Wilson v. Daily News of the Virgin Islands*,
    881 F.2d 82 (3d Cir. 1989) ..................................................................4, 5

*Woodward Governor Co. v. Curtiss-Wright Flight Sys.*,
    164 F.3d 129-30 (2d Cir. 1999) ............................................................14

*Young v. Nationwide Life Ins. Co.*,
    2 F. Supp. 2d 914 (S.D. Tex. 1998)......................................................8, 11

## STATUTES

15 U.S.C. § 46(b) ...............................................................................passim

15 U.S.C. § 78j(b) ...................................................................................7

15 U.S.C. § 80a-2(a)(9).............................................................................4

15 U.S.C. § 80a-3(c)(1).............................................................................4

15 U.S.C. § 80a-26(f) ........................................................................passim

15 U.S.C. § 80a-35(b) .......................................................................passim

15 U.S.C. § 80a-41 ...............................................................................13

15 U.S.C. § 80a-43 ...............................................................................15

15 U.S.C. § 80a-46(b) ...........................................................................15

N.Y. Ins. Law. § 4240(a)(12) ...............................................................11

## **<u>OTHER AUTHORITIES</u>**

17 C.F.R. § 270.30e-1 ...........................................................................11

17 C.F.R. § 270.30e-2 ...........................................................................11

Merriam-Webster's Collegiate Dictionary 871-72 (1998) ........................................4

## PRELIMINARY STATEMENT

Plaintiff concedes that she is not the legal owner of any shares of the Funds.[1]
Nevertheless, Plaintiff contends that she has statutory standing under Section 36(b)
based on the "equitable" and "beneficial" interests she claims to have in the Funds.
Section 36(b), however, does not confer statutory standing on persons with an
"equitable" or "beneficial" interest in mutual funds.  Although Congress has used
such terms and equivalent concepts in other sections of the Investment Company
Act ("ICA"), Congress specifically provided in Section 36(b) that only a "security
holder" of mutual funds has standing to bring a private action under Section
36(b)—*i.e.*, a person or entity with *legal* ownership of shares of the funds.
Because, as Plaintiff concedes, AXA (and not Plaintiff) is the legal owner of shares
of the Funds, Plaintiff lacks statutory standing to assert a Section 36(b) claim.

Plaintiff's argument that this Court should expand the meaning of the term
"security holder" in Section 36(b) to include persons with mere "equitable" or
"beneficial" interests in a mutual fund is unavailing.  The crux of Plaintiff's
argument is that the "substance" and "economic reality" of her interest in the
Funds should prevail over its "form"—*i.e.*, that because performance of the Funds

---

[1] Plaintiffs' Opposition Brief ("Pl. Br.") at 15 ("The Mutual Fund Shares Are Titled
in AXA's Name And Held in AXA's Account."), 16 ("Plaintiff lacks . . . nominal
title to the [Funds].").

has a financial impact on her, it should not matter that she is not the legal owner of any shares of the Funds.

Plaintiff's argument is contrary to a well-established body of Supreme Court and other federal cases that unequivocally hold that courts must defer to the *text* of a statute, even if doing so may seem at odds with "economic reality," the purpose of a statute, or policy considerations. *E.g.*, *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438 (2002). Furthermore, the cases Plaintiff cites are irrelevant, as they interpret federal statutes other than the ICA and/or arise out of factual contexts that are entirely different from those at issue here.

Plaintiff's argument that she must have statutory standing because otherwise the Funds will be "immune" from protection under Section 36(b) also fails. It is neither remarkable nor inconsistent with the purpose or objectives of Section 36(b) that the statute bars private suits by Plaintiff. Section 36(b) was intended to provide only a very narrow private right of action, and the SEC has standing to enforce Section 36(b) with respect to mutual funds used in a variable annuity.

Plaintiff also incorrectly claims that Section 47(b) has an implied private right of action or can be used to imply one under Section 26(f). In making this argument, Plaintiff relies on cases from the discredited "*ancien regime*" that existed before the Supreme Court's seminal decision in *Alexander v. Sandoval*, 532 U.S. 275 (2001) (holding that courts must defer to statutory text when determining

whether there is an implied private right of action) and the Second Circuit's seminal decision in *Olmsted v. Pruco Life Ins. Co.*, 283 F.3d 429 (2d Cir. 2002) (rejecting implied private rights of action under the ICA).  Plaintiff also disregards the sea of post-*Olmsted* cases in which courts have consistently refused to imply private rights of action under the ICA.

Because Plaintiff's federal claims must be dismissed, the Court should exercise its discretion to dismiss Plaintiff's unjust enrichment claim.  Plaintiff's argument that this claim is actually a "federal" claim is unavailing, and in any event, the claim must be dismissed because Plaintiff failed to plead it derivatively.

## ARGUMENT

## I.   PLAINTIFF'S "EQUITABLE" INTEREST IN THE FUNDS DOES NOT CONFER STATUTORY STANDING UNDER SECTION 36(b).

Plaintiff does not dispute that Separate Account A is the legal owner of shares of the Funds.[2]  Instead, Plaintiff argues that this Court should expand the meaning of the term "security holder" under Section 36(b) so that she is afforded statutory standing based on her "equitable" interest in the Funds and the "economic reality" of her variable annuity investment.  Plaintiff's argument fails.

### A.   Section 36(b) Requires That Plaintiff Be a "Security Holder," Which Requires Legal Ownership of the Funds.

The ICA does not expressly define "security holder."  However, this term, as used in Section 36(b), plainly refers to the *legal* or *record* owner of a security.  As

---

[2] Pl. Br. at 15.

Defendants explained in their opening brief ("Def. Br."),[3] Congress expressly uses the term "beneficial ownership" in certain sections of the ICA, but omits it in Section 36(b), and instead uses only the term "security holder."  15 U.S.C. § 80a-3(c)(1)(A) and (B) (using "beneficial ownership" for purposes of identifying entities that do not qualify as an "investment company"); *id*. § 80a-2(a)(9) (using "beneficially own" for purposes of defining "control").  When Congress "refers to [one term] in one section of the Act but omits it in another, the statute should normally be construed to give effect to the distinction Congress makes thereby."[4] *Pope v. East Brunswick Bd. of Educ.*, 12 F.3d 1244, 1249 (3d Cir. 1993).[5] Plaintiff's reading of "security holder" to be synonymous with "beneficial owner" would violate this basic canon of statutory construction.  Tellingly, Plaintiff does not respond to these points in her opposition brief.

---

[3] Def. Br. at 17-18.

[4] *See also* Merriam-Webster's Collegiate Dictionary 871-72 (1998) (defining "holder" as "a person that holds [as] owner").

[5] *See also AMP Inc. v. United States*, 820 F.2d 612, 616 (3d Cir. 1987) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (internal quotation omitted); *Wilson v. Daily News of the Virgin Islands*, 881 F.2d 82, 85-86 (3d Cir. 1989) (refusing to expand "audit data" to include "audit report" because statute expressly referred to "audit report" in separate sections); *United States v. Cheeseman*, 600 F.3d 270, 281 (3d Cir. 2010).

**B.     The Term "Security Holder" Does Not Include Persons
With Mere "Equitable" Interests In a Mutual Fund.**

1.     <u>The Text Of Section 36(b) Is Controlling.</u>

It is black-letter law that courts may not construe a statutory term more
broadly than its plain meaning.  *Barnhart*, 534 U.S. at 461-62 ("We have stated
time and again that courts must presume that a legislature says in a statute what it
means and means in a statute what is says there.").[6]  When a statutory term has a
plain meaning within the context of the statute (and here, it does), the judicial
inquiry must end there—legislative history, policy considerations, and "economic
reality" are irrelevant.  *Id.* at 462 ("When the words of a statute are unambiguous
. . . 'judicial inquiry is complete.'"); *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214,
228 (2008) ("We are not at liberty to rewrite the statute to reflect a meaning we
deem more desirable.  Instead, we must give effect to the text Congress enacted.");
*United States v. SmithKline Beecham Clinical Labs.*, 149 F.3d 227, 232 (3d Cir.
1998) ("[I]f Congress unambiguously addressed the issue in question, we may not
inquire further . . . .").[7]

Accordingly, Plaintiff's arguments that she should be granted statutory
standing in light of the "substance" and "economic reality" of her variable annuity

---

[6] *See also Wilson*, 881 F.2d at 86 ("We are remitted to the plain language and
meaning of the statute."); *Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187,
194 (3d Cir. 2009) ("[O]ur inquiry must focus on the text of the statute itself.").
[7] The mere fact that two parties "proffer different interpretations of the statutory
language does not make the language ambiguous."  *In re Am. Home Mort.
Holdings, Inc.*, 637 F.3d 246, 256 (3d Cir. 2011).

investment must be rejected.  Instead, the Court's analysis must begin and end with the text of Section 36(b), which plainly provides (in light of other sections of the ICA) that only *legal* owners of mutual fund shares have statutory standing.

2.    Plaintiff's Cases Are Irrelevant.

The cases Plaintiff relies on for her argument that the "substance" of her investment should be elevated over its "form" are irrelevant.  For example, Plaintiff relies on *Prudential Insurance Company of America. v. S.E.C.* for this argument.  326 F.2d 383 (3d Cir. 1964).  (Pl. Br. at 16-18, 26-27.)  *Prudential*, however, has nothing to do with statutory standing under Section 36(b) (which was not even enacted until six years after the case was decided).  In *Prudential*, the Third Circuit merely held that the ICA applied to the segregated account Prudential had established to fund variable annuity investments.  *Prudential*, 326 F.3d at 385, 387.  The case offers no support for Plaintiff's claim that she is a "security holder" under Section 36(b).[8]  In fact, the Third Circuit explained in *Prudential* that it is the *segregated account* (here, Separate Account A) "***and no other entity***, in which [the variable annuitant] has an interest."[9]  *Id.* at 387 (emphasis added).

---

[8] The other cases Plaintiff cites in support of her "substance over form" argument are equally irrelevant.  *United Housing Found., Inc. v. Forman*, 421 U.S. 837 (1975) (holding that co-op stock is a "security" under the Securities Act and Exchange Act); *Reves v. Ernst & Young*, 494 U.S. 56 (1990) (holding that certain demand notes were "securities" under the Securities Act and Exchange Act).

[9] Notably, in her brief, Plaintiff specifically omits just this sentence when quoting *Prudential*.  (Pl. Br. at 17.)

Plaintiff cites equally irrelevant cases in support of her claim that courts "have found that the equitable owner of a security, not the title owner, is the shareholder."[10]  (Pl. Br. at 19-22.)  For example, in *Drachman v. Harvey*, the Second Circuit held that a beneficial owner of stock held in "street name" has standing to assert a derivative claim as a "shareholder" for violations of Section 10(b) of the Exchange Act of 1934.  453 F.2d 722, 724 (2d Cir. 1972).  But the question of "shareholder" derivative standing for purposes of Section 10(b) of the Exchange Act has no bearing on whether Plaintiff is a "security holder" under Section 36(b) of the ICA.  The two statutes use different language and have different objectives,[11] and "the mere assertion of similarity between different statutes is no substitute for a careful analysis . . . [of] the text and structure of the

---

[10] Plaintiff also ignores that some courts (including this District Court) have found that the word "shareholder" is generally understood to refer only to "record" owners. *Sery v. Fed. Bus. Ctrs., Inc.*, No. 06-1026 (SRC), 2008 U.S. Dist. LEXIS 31647, at *16 (D.N.J. Apr. 15, 2008) (the definition of "'shareholder' as 'one who is a **holder of record** of shares in a corporation' . . . comports with the general understanding of the term 'shareholder' as used in corporation law") (emphasis added); *Certainteed Corp. & Bay Mills, Ltd. v. Fed. Ins. Co.*, 913 F. Supp. 351, 357 (E.D. Pa. 1995) (the term "stockholder" is not ambiguous because "it means owner of stock. . . . [and] [s]hareholders of record are generally considered the 'stockholders'"); *Bache & Co. v. Gen. Instrument Corp.*, 74 N.J. Super. 92, 98 (App. Div. 1962) ("[T]he legal owner, rather than the beneficial owner, is considered the 'stockholder' or shareholder.").

[11] *Compare Drachman*, 453 F.2d at 729-30 (Section 10(b) provides a broad remedy "to protect completely and effectively the rights of the investing public"); *Angelastro v. Prudential-Bache Sec., Inc.*, 764 F.2d 939, 949 (3d Cir. 1985) (Section 10(b) is the "'catch-all' anti-fraud provision"); *with Green v. Fund Asset Mgmt.*, 286 F.3d 682, 685 (3d Cir. 2002) (Section 36(b) provides "a **very specific, narrow** federal remedy") (emphasis added).

entire statute at issue."[12]  *Smith v. Oppenheimer Funds Distrib.*, No. 10 Civ. 7387

(LBS), 2011 U.S. Dist. LEXIS 60877, at *21 (S.D.N.Y. June 6, 2011).  None of

the cases cited by Plaintiff involved the interpretation of the term "security holder"

to mean "beneficial owner" in the context of a statute that uses both terms

separately, as in the ICA.

Furthermore, Plaintiff's analogy to stocks held in "street name" is an inapt

one.  The "beneficial" owner of stocks held in street name holds "*all* the equitable

and beneficial interest in the stock," and the "record" owner "owns nothing," "is a

mere dummy," and holds "naked legal title."  *Drachman*, 453 F.2d at 730; *HFG*

*Co.*, 162 F.2d at 537, 540.  Here, Plaintiff does not hold *all* the equitable and

beneficial interest in the Funds, and AXA and Separate Account A are not "mere

dummies."  Plaintiff, for example, does not receive the dividends issued by the

---

[12] Like *Drachman*, the other cases Plaintiff cites have nothing to do with the meaning of "security holder" under Section 36(b).  *In re Franklin Nat'l Bank Sec. Litig.*, 574 F.2d 662 (2d Cir. 1978) (beneficial owners are required to receive notice of class action settlements under F.R.C.P.); *Silber v. Mabon*, 957 F.2d 697 (9th Cir. 1992) (same); *HFG Co. v. Pioneer Pub. Co.*, 162 F.2d 536 (7th Cir. 1947) (beneficial owner has standing to assert a derivative claim under F.R.C.P.); *In re The Pittsburgh & Lake Erie Railroad Co. Sec. & Anti-Trust Litig.*, 543 F.2d 1058 (3d Cir. 1976) ("pledgee" of stock has standing to assert a derivative claim under F.R.C.P.); *see also* Pl. Br. at 15 (citing SEC Releases and Rules that expressly define "security holder" as record and beneficial holders for purposes of tender offers and proxy solicitations under the Exchange Act).  Plaintiff's reliance on *Young v. Nationwide Life Ins. Co.*, 2 F. Supp. 2d 914 (S.D. Tex. 1998), is also misplaced because *Young* did not involve Section 36(b) (it involved Section 36(a), which does not have a "security holder" requirement) and only addressed whether variable insurance owners have *constitutional* standing.  (Def. Br. at 17 n.12.) Notably, *Young* is also one of the cases specifically rejected by the Second Circuit in *Olmsted* as having implied a private right of action under the discredited "*ancien regime*."  *Olmsted*, 283 F.3d at 434 n.4; *supra* at 2; *infra* at 12.

Funds—instead, Separate Account A receives and reinvests them.[13]  Likewise, while the record owner of a stock has no authority to alter the beneficial owner's interest in the underlying stock, AXA is permitted to close, add, or modify the mutual funds in which Plaintiff's variable annuity is invested.  Similarly, while Plaintiff merely holds "units" of Separate Account A (the value of which is determined only *in part* by the performance of the underlying Funds),[14] the beneficial owner of stock held in street name does not merely hold "units" and, instead, holds and owns the actual stock (just without the certificate).

3.    Plaintiff's Argument That The Funds Will Be "Immune"
From Protection Is Immaterial and Incorrect.

Plaintiff argues that she should be granted statutory standing because otherwise the Funds will be "immune" from protection under Section 36(b).  However, as explained above, the Court is bound by the relevant statutory text, and such "policy considerations" are for Congress, and not courts, to decide.  In any event, Plaintiff ignores that Section 36(b) was not intended to afford a broad private right of action to *all* investors in *all* types of investment products and, instead, affords only a very limited private right of action to, specifically, "security holders" of mutual funds.  *Green*, 286 F.3d at 685 (Section 36(b) provides "a very specific, narrow federal remedy").

---

[13] *See* Def. Br. at 16-17.
[14] Def. Br. at 16-17.

Plaintiff also ignores that the SEC has standing to assert a claim against an investment adviser for violations of Section 36(b).  15 U.S.C. § 80a-35(b).  Thus, the fact that Plaintiff lacks statutory standing does not mean that the Funds' "fees are, as a practical matter, immune from review." (Pl. Br. at 2.)  It is telling that when Congress enacted Section 26(f) of the ICA, which specifically provides that fees charged to variable insurance contracts must be reasonable, it did not provide a private right of action.  *Olmsted*, 283 F.3d at 432-33.  If Congress intended for anyone other than the SEC to enforce this provision, it could have easily done so.

### 4.   Plaintiff Fails To Distinguish *Curran*.

The most analogous case is *Curran v. Principal Management Corporation*, where the court held that an investor in a "fund of funds" is not a "security holder" of the underlying funds under Section 36(b).  No. 09-cv-00433 (RP-CFB), 2011 U.S. Dist. LEXIS 6577 (S.D. Iowa Jan. 24, 2011).  Plaintiff argues *Curran* is inconsistent with the purported holding in *Prudential* that "the form of a transaction must yield to its substance to accomplish the salutary goals of the ICA."  (Pl. Br. at 25-26.)  However, as discussed above, *Prudential* has no bearing on the issue presented here.

Plaintiff also argues that she is different from the investor in *Curran* because she purportedly possesses "*all* of the indicia of ownership" of the Funds.  (Pl. Br. at 9.)  Citing no authority whatsoever, Plaintiff contends that "as a matter of

property and creditor law" she is "the holder of" the assets held by Separate

Account A because they "are vulnerable to claims" by Plaintiff's creditors.  (Pl. Br.

at 11.)  Plaintiff's uncorroborated interpretation of common law principles runs

directly counter to New York statutes and relevant federal law.[15]  Plaintiff's

argument that she must be the "security holder" of the Funds because AXA sends

her certain reports relating to the Funds also fails.  *Sery*, 2008 U.S. Dist. LEXIS

31647, at *12-13 ("[P]arties cannot alter statutory provisions by their conduct").[16]

## II.   PLAINTIFF IS NOT ENTITLED TO A REMEDY UNDER SECTION 47(b) FOR ALLEGED VIOLATIONS OF SECTION 26(f).

As Plaintiff concedes, there is no private right of action under Section 26(f)

of the ICA.  (Pl. Br. at 28.)  Nevertheless, Plaintiff contends that she can end-run

this limitation by asserting a private right of action under Section 47(b) for alleged

violations of Section 26(f).  Plaintiff's argument fails.

As a threshold matter, there is no private right of action under Section 47(b).

*Steinberg v. Janus Capital Mgmt.*, No. 10-1207, 2011 U.S. App. LEXIS 24053, at

---

[15] N.Y. Ins. Law § 4240(a)(12) (requiring that AXA be the legal owner of the assets in Separate Account A); *Young*, 2 F. Supp. 2d at 926 (variable insurance investors "do not have a legal interest" in underlying funds).  Defendants' argument that Plaintiff lacks statutory standing is not, as Plaintiff contends, "premised" on this insurance statute or any other "state law."  *See* Def. Br. at 10-20 (explaining that Plaintiff lacks standing based on federal law, including the text of Section 36(b) and the ICA, Section 817(d) of the I.R.C., and *Curran*).

[16] Furthermore, AXA sends Plaintiff reports relevant to the Funds not because AXA views her as a "stockholder of record" of the Funds under 17 C.F.R. § 270.30e-1 (as Plaintiff contends), but rather because AXA is required to send those reports to each "shareholder of record" of *Separate Account A* under 17 C.F.R. § 270.30e-2.

*14 (4th Cir. Dec. 2, 2011) ("[T]here is no private cause of action to enforce Section 47(b)."); *Olmsted*, 283 F.3d at 432-33 (the ICA does not afford a private right of action unless Congress "explicitly provides" for one).

Furthermore, even if there was a private right of action under Section 47(b), in order to obtain the remedy afforded under that Section, Plaintiff "must assert a predicate violation of a substantive provision of the ICA ***which itself has a private right of action***." *Smith*, 2011 U.S. Dist.  LEXIS 60877, at *24 (emphasis added). Plaintiff contends that this requirement is inconsistent with the Supreme Court's decisions in *Mills* and *Transamerica*.  (Pl. Br. at 30-32, 35.)  But *Mills* and *Transamerica* are irrelevant—they each implied a private right of action under statutes other than the ICA, and did so under the discredited "*ancien regime*." *Olmsted*, 283 F.3d at 434 ("Past decisions reflecting judicial willingness to 'make effective [statutory] purpose' in the context of implied rights of action belong to an '***ancien regime***'" and are neither binding nor persuasive) (internal quotation omitted) (emphasis added); *Smith*, 2011 U.S. Dist. LEXIS 60877, at *21 ("[*Transamerica's*] interpretation of the IAA is distinguishable from the ICA.").

Plaintiff also contends that any such requirement would render Section 47(b) "superfluous, since a victimized investor could sue under the predicate statute." (Pl. Br. at 35.)  But Section 47(b) provides, at most, a specific *remedy* (not a right), and that remedy may be broader than the remedy otherwise available for the

underlying predicate violation.  *Smith*, 2011 U.S. Dist. LEXIS 60877, at *17-18 (Section 47(b) "provides a remedy rather than a distinct cause of action").

Remarkably, Plaintiff contends that whenever a provision of the ICA is silent as to whether the SEC may enforce it, a plaintiff may assert a private right of action for violations of that provision merely by "boot-strapping" it to a request for rescission under Section 47(b).  (Pl. Br. at 28-29, 34.)  Plaintiff ignores that the ICA expressly provides that the SEC has authority to enforce *all* sections of the ICA, including Section 26(f).  15 U.S.C. § 80a-41; *In re Eaton Vance Mutual Funds Fee Litig.*, 380 F. Supp. 2d 222, 232 (S.D.N.Y. 2005) (Section 42 "authorizes the SEC to enforce all provisions of the ICA" and the "'express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others'") (internal quotation omitted).

Plaintiff's proposed back-door method of implying private rights of action under the ICA also must be rejected under *Olmsted* and its progeny.  *Olmsted*, 283 F.3d at 432 ("'[P]rivate rights of action to enforce federal law must be created by Congress.'"); *see also Sandoval*, 532 U.S. at 286-288 (courts may not imply a private right of action in contravention of statutory text, "no matter how desirable that might be as a policy matter").  Since *Olmsted*, only one court has ever implied a private right of action under any provision of the ICA (and that court was reversed), and at least 35 cases have cited *Olmsted* with approval in decisions

refusing to imply a private right of action under the ICA.  (Def. Br. at 22-23.)

Plaintiff cites no authority for finding—against this sea of precedent—that Section

47(b) provides a basis for implying a private right of action under Section 26(f).[17]

## III.   PLAINTIFF'S UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED.

This Court should decline to exercise supplemental jurisdiction over

Plaintiff's unjust enrichment claim because each of Plaintiff's federal claims must

be dismissed.  (Def. Br. at 25-26.)  Plaintiff contends that her unjust enrichment

claim is not a pendent state law claim, but rather is asserted under the "federal

common law."  However, regardless of how Plaintiff labels it, Plaintiff's unjust

enrichment claim is not part of the federal common law.[18]  *Texas Indus., Inc. v.*

*Radcliff Materials, Inc.*, 451 U.S. 630, 641 (1981) ("[F]ederal common law exists

---

[17] The cases Plaintiff cites as recognizing a private right of action under Section 47(b) were decided under the *ancien regime*.  (Pl. Br. at 32.)  In fact, one of those cases (*Blatt*) is specifically cited and rejected in *Olmsted* as a case decided under that discredited *regime*.  *Olmsted,* 283 F.3d at 434 n.4.  Likewise, any opinion expressed by the SEC in the amicus brief Plaintiff cites is irrelevant.  *Piper v. Chris-Craft Indus., Inc.*, 430 U.S. 1, 42 n.27 (1977) (the SEC's "presumed 'expertise' in the securities-law field is of limited value when the narrow legal issue is one peculiarly reserved for judicial resolution, namely *whether a cause of action should be implied* by judicial interpretation") (emphasis added); *Foremost-McKesson, Inc. v. Provident Sec. Co.*, 423 U.S. 232, 259-60 (U.S. 1976) (rejecting SEC's views in amicus brief from separate case because SEC had "not appeared as an *amicus* in [*Foremost*]" and its "theory did not reflect the intent of Congress").

[18] The only case Plaintiff cites in support of this argument is wholly irrelevant. *C.H. Sanders Co., Inc. v. BHAP Housing Dev. Fund Co.*, 903 F.2d 114 (2d Cir. 1990) (court had jurisdiction over equitable claim to enforce a judgment against *federal agency* because claim "arose under" federal common law *and a federal statute*); *see also Woodward Governor Co. v. Curtiss-Wright Flight Sys.*, 164 F.3d 129-30 (2d Cir. 1999) (rejecting unjust enrichment claim as basis for jurisdiction and distinguishing *C.H. Sanders* because there the defendant was "an instrumentality of the federal government").

only in such narrow areas as those concerned with the rights and obligations of the United States, interstate and international disputes implicating the conflicting rights of States or our relations with foreign nations, and admiralty cases."); *Woodward*, 164 F.3d at 130 ("A Plaintiff cannot establish federal question jurisdiction simply by asserting equitable rights under the federal common law."). And contrary to what Plaintiff contends, there is nothing in Sections 44 or 47(b) of the ICA that requires this Court to exercise jurisdiction over an unjust enrichment claim.  15 U.S.C. §§ 80a-43, 80a-46(b).

Additionally, notwithstanding that Plaintiff is not a "security holder" for purposes of Section 36(b), Plaintiff's unjust enrichment claim still must be asserted derivatively on behalf of the Funds.  Whether Plaintiff is required to assert this claim derivatively is determined by the law of the state of incorporation (here, Delaware)—not by Section 36(b).  (Def. Br. at 26-27.)  Under Delaware law, "shareholder" includes both record *and* beneficial holders for purposes of derivative actions.  *Jones v. Taylor*, 348 A.2d 188, 190 (Del. 1975) ("[U]nder Delaware law . . . for purposes of a derivative action, the term 'stockholder' . . . includes an equitable owner.").  Plaintiff alleges that she is a beneficial owner of the Funds.  Therefore, she must assert the unjust enrichment claim derivatively, and she has not done so.  For this reason as well, the claim should be dismissed.

## <u>CONCLUSION</u>

Defendants' Motion to Dismiss the Amended Complaint with prejudice should be granted.

Dated:  March 5, 2012

BLANK ROME LLP

By: /s/ Jonathan M. Korn
    Jonathan M. Korn
    301 Carnegie Center, 3rd Floor
    Princeton, NJ 08540

MILBANK, TWEED, HADLEY &
M$^{c}$CLOY LLP
    James N. Benedict (*pro hac vice*)
    Sean M. Murphy (*pro hac vice*)
    Andrea G. Hood
    Will P. Gross
    1 Chase Manhattan Plaza
    New York, NY  10005-1413
    (212) 530-5000

    *Attorneys for Defendants*