

**BLANK ROME** LLP
COUNSELORS AT LAW

| | |
|---|---|
| *Phone:* | *(609) 750-7707* |
| *Fax:* | *(609) 897-7395* |
| *Email:* | *Korn@BlankRome.com* |

April 17, 2012

***VIA ECF AND FEDERAL EXPRESS***
Honorable Peter G. Sheridan
United States District Court, District of New Jersey
Clarkson S. Fisher Federal Building and U.S. Courthouse
402 E. State Street, Room 7000
Trenton, NJ 08608

      Re:    *Mary Ann Sivolella v. AXA Equitable Life Insurance Company, et al,*
               *Civil Action No. 11-cv-4194*

Dear Judge Sheridan:

      We represent Defendants, AXA Equitable Life Insurance Company and AXA Equitable Funds Management Group, LLC ("AXA Equitable") in this matter. We write to notify the Court of recent authority that further supports AXA Equitable's argument that this Court should grant Defendants' Motion to Dismiss Plaintiff's Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

      On April 16, 2012, the Third Circuit Court of Appeals issued a decision unanimously affirming the United States District Court of New Jersey's dismissal of Investment Company Act of 1940 ("ICA") claims in *Santomenno v. John Hancock Life Insurance Company (U.S.A.), et al.*, No. 11-2520 (3d Cir. Apr. 16, 2012). A copy of the decision is enclosed for Your Honor's convenience.

      In *Santomenno*, three plaintiffs, participants in group annuity contracts with John Hancock through an employer-sponsored 401(k) plan, brought excessive fee claims against John Hancock. One claim was brought under Section 36(b) of the ICA, 15 U.S.C. § 80a-35(b), and another claim was brought under Section 47(b) of the ICA, 15 U.S.C. § 80a-46(b). *Id.* at 3-4. The District Court had dismissed the 36(b) claim for lack of continuous ownership by the plaintiffs, and dismissed the 47(b) claim because "Section 47(b) of the ICA could only provide relief to [the plaintiffs] if they could 'show[] a violation of some other section of the Act.'" *Id.* at 5 (citing *Santomenno ex. rel. John Hancock Trust v. John Hancock Life Ins. Co. (U.S.A.)*, No. 2-10-cv-01622, 2011 WL 2038769, at *5 (D.N.J. May 23, 2011)).

      The plaintiffs appealed, arguing that the Section 47(b) claim was "not based upon a violation of Section 36(b), but [was] instead premised upon an alleged violation of 26(f) of the ICA . . . ." *Id.* at 12. The plaintiffs conceded that "Section 26(f) does not establish a private cause of action," but contended that the standards of Section 26(f) were "enforceable in an action

301 Carnegie Center 3rd Floor Princeton, NJ 08540
*A Pennsylvania LLP Stephen M. Orlofsky, New Jersey Administrative Partner*
www.BlankRome.com

137574.00601/50428224v.1

Boca Raton • Cincinnati • Hong Kong • Houston • Los Angeles • New York • Philadelphia • Princeton • Shanghai • Washington • Wilmington



Honorable Peter G. Sheridan.
April 17, 2012
Page 2

brought under ICA § 47(b)[,]" and that Section 47(b) "creates a private right of action . . . to seek rescission and restitution" in the same manner as does Section 215 of the Investment Advisors Act of 1940. *Id.* at 13.

The Third Circuit Court of Appeals rejected the plaintiffs' argument and affirmed the District Court's dismissal of plaintiffs' Section 47(b) claim, holding that there is no private right of action under Section 47(b). *Id.* at 16. The Court explained that "neither the language nor the structure of the ICA supports [the plaintiffs'] effort to insinuate their excessive fees claim into Section 47(b)." *Id.* Moreover, the Court noted that Section 42 of the ICA empowers the SEC to enforce all provisions of the ICA, and that the Supreme Court has observed that "[t]he express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others . . . ." *Id.* at 13-14 (quoting *Alexander v. Sandoval*, 532 U.S. 275, 290 (2001)).

The *Santomenno* decision is directly on point in this case, and fully supports AXA Equitable's arguments for dismissal of Plaintiff's Amended Complaint. There, as here, the plaintiffs attempted to bring a Section 47(b) claim premised upon a violation of Section 26(f), and asserted many of the same arguments as Plaintiff does here. The Third Circuit explicitly rejected those arguments and affirmed the dismissal of plaintiffs' Section 47(b) claim, holding that there is no private right of action under that section. In light of this controlling precedent, and for the reasons set forth in AXA Equitable's Motion to Dismiss, Plaintiff's Amended Complaint should be dismissed in its entirety.

Respectfully submitted,

JONATHAN M. KORN

JMK/smh
Enclosure

cc:   Robert Lakind, Esq. (via email w/ enclosure)
      Moshe Maimon, Esq. (via email w/ enclosure)
      James N. Benedict, Esq. (via email w/ enclosure)
      Sean M. Murphy, Esq. (via email w/ enclosure)

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 11-2520

———————

DANIELLE SANTOMENNO,
for the use and benefit of the John Hancock Trust and the John Hancock Funds II;
KAREN POLEY and BARBARA POLEY, for the use and benefit of the John Hancock
Funds II; DANIELLE SANTOMENNO, KAREN POLEY and BARBARA POLEY
individually and on behalf of Employee Retirement Income Security Act of 1974, as
amended ("ERISA"), employee benefit plans that held, or continue to hold, group
variable annuity contracts issued/sold by John Hancock Life Insurance Life Insurance
Company (U.S.A.), and Participants and beneficiaries of all such ERISA covered
employee benefit plans; and DANIELLE SANTOMENNO individually and on behalf of
any person or entity that is a party to, or has acquired rights under, an individual or group
variable annuity contract that was issued/sold by John Hancock Life Insurance Company
(U.S.A.) where the underlying investment was a John Hancock proprietary fund
contained in the John Hancock Trust,

v.

JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.); JOHN HANCOCK
INVESTMENT MANAGEMENT SERVICES; JOHN HANCOCK FUNDS, LLC;
JOHN HANCOCK DISTRIBUTORS, LLC,

Danielle Santomenno, Karen Poley, Barbara Poley,
Appellants

———————

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 2-10-cv-01655)
District Judge: Honorable William J. Martini

———————

Argued February 9, 2012

Before: SLOVITER and VANASKIE, *Circuit Judges*, and POLLAK,[*] *District Judge*

(Opinion Filed: April 16, 2012)

Arnold C. Lakind, Esq. *(ARGUED)*
Robert L. Lakind, Esq.
Szaferman, Lakind, Blumstein & Blader, P.C.
101 Grovers Mill Road, Suite 200
Lawrenceville, NJ 08648

    *Counsel for Appellant*

M. Patricia Smith, Solicitor of Labor *(Did not enter an appearance)*
Timothy D. Hauser, Associate Solicitor, Plan Benefits Security Division
    *(Did not enter an appearance)*
Elizabeth Hopkins, Counsel for Appellate and Special Litigation
    *(Did not enter an appearance)*
Robin S. Parry, Esq.
National I. Spiller, Esq. *(ARGUED)*
U.S. Department of Labor
Office of the Solicitor, Plan Benefits Security Division
200 Constitution Ave., NW, Room N-4611
Washington, DC 20210

    *Counsel for Amicus Appellant*

James O. Fleckner, Esq. *(ARGUED)*
Alison V. Douglass, Esq.
Daniel P. Condon, Esq.
Goodwin Procter LLP
Exchange Place
Boston, MA 02109

Brian J. McMahon, Esq.
Gibbons P.C.
One Gateway Center
Newark, NJ 07102

    *Counsel for Appellees*

_____

[*] Honorable Louis H. Pollak, Senior Judge of the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

2

OPINION OF THE COURT
———————

VANASKIE, *Circuit Judge.*

Danielle Santomenno, Karen Poley, and Barbara Poley (collectively,
"Participants") brought suit against John Hancock Life Insurance Company (U.S.A.) and
its affiliates (collectively, "John Hancock") under the Employment Retirement Income
Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq., and the Investment Company
Act of 1940 (ICA), 15 U.S.C. § 80a-1 et seq., for allegedly charging their retirement
plans excessive fees on annuity insurance contracts offered to plan participants. The
District Court granted John Hancock's motion to dismiss. It dismissed the ICA excessive
fee claims because only those maintaining an ownership interest in the funds in question
could sue under the derivative suit provision enacted by Congress and the Participants are
no longer investors in the funds in question. As to the ERISA claims, the District Court
found that dismissal was warranted because Participants failed to make a pre-suit demand
upon the plan trustees to take appropriate action and failed to join the trustees as parties.
We affirm the District Court's judgment with regards to the ICA claims, but vacate and
remand on the ERISA counts.

I.

This action arises out of the administration of employer-sponsored 401(k) benefit
plans. The trustees of these plans entered into group annuity contracts with John
Hancock. Participants brought this action on March 31, 2010. The basis of Participants'
complaint is that John Hancock charged a variety of excessive fees in providing

3

investment services to these plans. Santomenno was a security holder in the relevant

funds from July 2008 through sometime in June 2010, K. Poley from July 2004 to

sometime in January 2010, and B. Poley from January 2009 to sometime in January

2010. Counts I through VII were brought under Section 502(a) of ERISA, 29 U.S.C. §

1132(a). Count VIII was brought under Section 36(b) of the ICA, 15 U.S.C. § 80a-35(b),

and Count IX was brought under Section 47(b) of the ICA, 15 U.S.C. § 80a-46(b).

John Hancock moved to dismiss under FED. R. CIV. P. 12(b)(6). Drawing upon

the common law of trusts, the District Court found that all of Participants' theories of

liability under ERISA were derivative and dismissed all seven ERISA counts because

Participants did not first make demand upon the trustees of the plan and did not join the

trustees in the lawsuit. As the District Court explained:

> In short, absent demand, or allegations going to demand
> futility, or some allegations, which if proven, would establish
> that the trustees improperly refused to bring suit, it would
> appear that the beneficiaries of an ERISA plan cannot bring a
> claim under Section 502. Likewise, any such suit must join
> the plan's trustees. Here, because there are no such factual
> allegations and because the trustees have not been joined,
> dismissal of the ERISA counts, counts I through VII, would
> seem to be proper.

*Santomenno ex rel. John Hancock Trust v. John Hancock Life Ins. Co. (U.S.A.)*, No. 2-

10-cv-01655, 2011 WL 2038769, at *4 (D.N.J. May 23, 2011) (citing *McMahon v.*

*McDowell*, 794 F.2d 100, 110 (3d Cir. 1986)).

The District Court dismissed Count VIII, brought under section 36(b) of the ICA,

because Participants no longer owned any interest in John Hancock funds. The District

Court observed that "continuous ownership throughout the pendency of the litigation [is]

4

an element of statutory standing." *Id.* at \*5 (citing *Siemers v. Wells Fargo & Co.*, No. C

05-04518 WHA, 2007 WL 760750, \*20 (N.D. Cal. Mar. 9, 2007)).  The District Court

proceeded to dismiss Count IX because, in its view, Section 47(b) of the ICA could only

provide relief to Participants if they could "show[] a violation of some other section of

the Act." *Id.* (quoting *Tarlov v. Paine Webber Cashfund, Inc.,* 559 F. Supp. 429, 438 (D.

Conn. 1983)).  Because Participants' Section 36(b) claim had been dismissed in Count

VIII, the District Court reasoned that "the Section 47(b) claim would seem to fail also."

*Id.*

## II.

The District Court had subject-matter jurisdiction pursuant to Section 502(e) of

ERISA, 29 U.S.C. § 1132(e), and Section 44 of the ICA, 15 U.S.C. §80a-43.  We have

appellate jurisdiction under 28 U.S.C. § 1291.  Our review of an order granting a motion

to dismiss is plenary.  *Anspach ex rel. Anspach v. City of Phila., Dep't of Pub. Health*,

503 F.3d 256, 260 (3d Cir. 2007).  When reviewing a Rule 12(b)(6) dismissal, we accept

as true all well-pled factual allegations in the complaint, and view them in the light most

favorable to the plaintiffs.  *Id.*

## A.

We begin by addressing the ICA issues.  The first question is whether continuous

ownership of securities in the fund in question during the pendency of litigation is

required for actions brought under Section 36(b) of the ICA.  Section 36(b), in pertinent

part, provides:

5

> For the purposes of this subsection, the investment adviser of
> a registered investment company shall be deemed to have a
> fiduciary duty with respect to the receipt of compensation for
> services, or of payments of a material nature, paid by such
> registered investment company, or by the security holders
> thereof, to such investment adviser or any affiliated person of
> such investment adviser.  An action may be brought under
> this subsection by the Commission, or by a security holder of
> such registered investment company on behalf of such
> company, against such investment adviser, or any affiliated
> person of such investment adviser, or any other person
> enumerated in subsection (a) of this section who has a
> fiduciary duty concerning such compensation or payments,
> for breach of fiduciary duty in respect of such compensation
> or payments paid by such registered investment company or
> by the security holders thereof to such investment adviser or
> person.

15 U.S.C. § 80a-35(b).  A suit brought under Section 36(b) is similar to a derivative

action in that it is brought on behalf of the investment company.  Because the action is

brought on behalf of the company, "any recovery obtained in a § 36(b) action will go to

the company rather than the plaintiff." *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523,

535 n.11 (1984) (citations omitted).  Accordingly, "[i]n this respect, a § 36(b) action is

undeniably 'derivative' in the broad sense of that word." *Id.* (citations omitted).

    In the context of derivative suits governed by FED. R. CIV. P. 23.1, courts have

imposed a requirement of continuous ownership.[1]  This requirement:

---

[1] FED. R. CIV. P. 23.1(a) provides:

> This rule applies when one or more shareholders or members
> of a corporation or an unincorporated association bring a
> derivative action to enforce a right that the corporation or
> association may properly assert but has failed to enforce. The
> derivative action may not be maintained if it appears that the
> plaintiff does not fairly and adequately represent the interests

6

> [D]erives from the first sentence of Rule 23.1, which refers to
> actions 'brought by one or more shareholders to enforce a
> right of a corporation. . . .'  The rule's provision that a
> 'derivative action may not be maintained if it appears that the
> plaintiff does not fairly and adequately represent the interests
> of the shareholders . . . similarly situated in enforcing the
> right of the corporation . . . ,' has served as an anchor for the
> concept that ownership must extend throughout the life of the
> litigation.

*Lewis v. Chiles*, 719 F.2d 1044, 1047 n.1 (9th Cir. 1983) (citations omitted).

Section 36(b) plainly requires that a party claiming a breach of the fiduciary duty imposed by that legislative provision be a security holder of the investment company at the time the action is initiated.  *See, e.g., Dandorph v. Fahnestock & Co.*, 462 F. Supp. 961, 965 (D. Conn. 1979).  Imposing a *continuous* ownership requirement throughout the pendency of the litigation assures that the plaintiff will adequately represent the interests of the security holders in obtaining a recovery for the benefit of the company.

Participants assert that "there is no basis upon which to impose a continuing ownership requirement on an ICA § 36(b) claim."  (Appellant's Br. at 33.) (citations omitted).  Several arguments are advanced in support of Participants' position.  First, citing two District Court decisions – *In re American Mutual Funds Fee Litigation*, cv-04-05593, 2009 WL 8099820, at *1 (C.D. Cal. Jul. 14, 2009), and *In re Mutual Funds Investment Litigation*, 519 F. Supp. 2d 580, 590 (D. Md. 2007) – Participants contend that FED. R. CIV. P. 23.1 does not apply to suits brought under Section 36(b).  Participants also attempt to distinguish *Siemers*, 2007 WL 760750, at *20, the primary case relied

---

of shareholders or members who are similarly situated in
enforcing the right of the corporation or association.

7

upon by the District Court in dismissing the ICA section 36(b) claim.  Participants assert

that "[*Siemers*] is distinguishable because [that] plaintiff did not have an interest in the

investment fund when he filed his complaint.  Here, Plaintiff Danielle Santomenno did,

but the Poleys did not." (Appellant's Br. at 35.)  Participants further offer a policy

argument: "the imposition of a continuous-ownership requirement would effectively

deter a plaintiff, who wishes to mitigate damages by selling his or her investment, from

suing – a result at odds with the salutary goals of the ICA." (Appellant's Br. at 35.)

   We disagree with Participants' contentions.  First, we note that *In re Mutual Funds*

*Investment Litigation*, one of two cases relied upon by Participants, did not concern the

continuous ownership question.  Instead, the District Court in that case addressed the

*contemporaneous* ownership requirement rather than the *continuous* ownership

requirement – the idea "that, *at the time of the alleged harm*, plaintiffs must have owned

shares in the fund." 519 F. Supp. 2d at 590 (emphasis added).  There was no question in

that case that the plaintiffs continued to hold shares in one of the mutual funds in

question.[2]

---

[2] Notably, the District Court ruled that the plaintiffs did not have standing to assert claims under Section 36(b) on behalf of mutual funds in the same family of funds, *i.e.*, funds sharing a common investment advisor, because Section 36(b) mandates that the plaintiff "be a 'security holder of' the entity on whose behalf he seeks to bring suit."  519 F. Supp. 2d at 589.  Thus, to this extent, the District Court acknowledged the derivative nature of a Section 36(b) claim.  *See also Kauffman v. Dreyfus Fund, Inc.*, 434 F.2d 727, 735-36 (3d Cir. 1970)  (a shareholder of mutual funds who sues on behalf of those funds cannot sue derivatively on behalf of other similarly situated mutual funds because "[s]tanding is justified only by this proprietary interest created by the stockholder relationship and the possible indirect benefits the nominal plaintiff may acquire *qua* stockholder of the corporation which is the real party in interest").

This leaves Participants with *In re American Mutual Funds Fee Litigation*, an opinion that goes against the weight of authority on this topic,[3] and is premised upon an overly expansive reading of the Supreme Court's decision in *Daily Income Fund*. The District Court in *In re American Mutual Funds Fee Litigation* viewed *Daily Income Fund* as dispensing with a continuous ownership standing requirement  because such a requirement was recognized in the context of cases arising under FED. R. CIV. P. 23.1, and that rule does not apply to Section 36(b) claims. *Id.* at *1. *Daily Income Fund*, however, addressed only the pre-suit demand requirement of a common derivative action to which Rule 23.1 applies, *i.e.*, that before bringing suit a shareholder must make demand upon the corporation's directors to take appropriate action with respect to a right "the corporation could itself have enforced in court."  464 U.S. at 529 (citations omitted). Because the right created by Section 36(b) could not be read as one belonging to the company itself, the Court held that there was no basis for imposing a pre-suit demand requirement. *Id.* at 542. *Daily Income Fund* did not address the question of whether a securities holder must maintain that status throughout the pendency of the litigation.

---

[3] *See, e.g.*, *Siemers*, 2007 WL 760750, at *20 ("For Section 36(b) standing purposes, it is important that the fund be continuously owned during the pendency of the action."); *In re Lord Abbett Mut. Funds Litig.*, 407 F. Supp. 2d 616, 633 (D.N.J. 2005) (plaintiffs cannot bring a Section 36(b) claim "on behalf of Funds in which they have no ownership interest" because such a claim is derivative, *i.e.*, brought on behalf of the Funds), *partially vacated on other grounds*, 463 F. Supp. 2d 505 (D.N.J. 2006); *Brever v. Federated Equity Mgmt. Co. of Pa.*, 233 F.R.D. 429, 431 (W.D. Pa. 2005) (plaintiff who sold his shares after filing suit "divested himself of standing" to bring suit under Section 36(b)); *In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d 451,468 n.13 (D.N.J. 2005) (plaintiffs may only bring a Section 36(b) claim "against the . . . funds they owned").

9

Participants mistakenly assume that the root of the continuous ownership requirement is Rule 23.1. Instead, the prerequisite arises from the fact that Congress directed that only the Securities and Exchange Commission and securities holders, *acting on behalf of the investment company,* could bring an action to enforce the rights created by Section 36(b). As the Court recognized in *Daily Income Fund,* any recovery in an action brought under Section 36(b) belongs to the investment company. 464 U.S. at 535 n.11. When a plaintiff disposes of his or her holdings in the company, that plaintiff no longer has a stake in the outcome of the litigation because any recovery would inure to the benefit of existing securities holders, not former ones. A continuous ownership requirement gives effect to this "undeniably 'derivative'" nature of a Section 36(b) claim. *Id.* Stated otherwise, a continuous ownership requirement "reflects a shareholder's real interest in obtaining a recovery for the corporation which increases the value of his holdings." *Chiles,* 719 F.2d at 1047 (citing *Lewis v. Knutson,* 669 F.2d 230, 238 (5th Cir. 1983); *Schilling v. Belcher*, 582 F.2d 995, 1002 (5th Cir. 1978)). As Participants no longer own John Hancock funds, they lack any real interest in securing a recovery.

Participants' policy argument – that a continuous ownership requirement deters a plaintiff from mitigating damages by preventing him or her from selling shares during the pendency of litigation – is unconvincing. First, because the recovery belongs to the company, not the security holder, *see Daily Income Fund,* 464 U.S. at 535 n.11, it would not seem appropriate to impose a duty to mitigate damages on individual security holders. Moreover, it has long been recognized that only those parties who would actually benefit

10

from a suit may continue to prosecute the action, a rationale that we explicitly adopted in

*Kauffman*:

> Standing is justified only by this proprietary interest created
> by the stockholder relationship and the possible indirect
> benefits the nominal plaintiff may acquire *qua* stockholder of
> the corporation which is the real party in interest. Without
> this relationship, there can be no standing, "no right in
> himself to prosecute this suit."

434 F.2d at 735-36 (citations omitted).

Furthermore, we note that even if continuous ownership were not a requirement of Section 36(b), Participants' claim under that Section still fails. As observed above, a plain reading of Section 36(b) indicates that ownership when the suit is first filed is an indisputable prerequisite. The Poleys' interests in the John Hancock funds were terminated prior to the filing of the original complaint. Therefore, they cannot be classified as "security holder[s]" under Section 36(b). Santomenno, meanwhile, still owned John Hancock funds when the case was first initiated, but no longer had any interest in the funds when the Second Amendment Complaint was filed on October 22, 2010. It is the Second Amended Complaint that is the operative pleading for standing purposes. As the Supreme Court observed in *Rockwell International Corp. v. United States*, 549 U.S. 457 (2007):

> The state of things and the originally alleged state of things
> are not synonymous; demonstration that the original
> allegations were false will defeat jurisdiction. So also will the
> withdrawal of those allegations, unless they are replaced by
> others that establish jurisdiction. Thus, when a plaintiff files
> a complaint in federal court and then voluntarily amends the
> complaint, courts look to the amended complaint to determine
> jurisdiction.

*Id.* at 473-74 (citations omitted).  Even if we were to hold that continuous ownership is

not required by the statute, Participants' Section 36(b) claim would fail because their

interests in the John Hancock funds were terminated prior to the filing of the Second

Amended Complaint.  As a result, they are not security holders entitled to bring an action

on behalf of the investment company.  Accordingly, dismissal of Participants' Section

36(b) claim was proper.

### B.

The second ICA issue is whether Participants' claim under Section 47(b) of the

ICA survives a motion to dismiss.  Section 47(b), in pertinent part, provides that:

> A contract that is made, or whose performance involves, a
> violation of [the ICA], or of any rule, regulation, or order
> thereunder, is unenforceable by either party . . . unless a court
> finds that under the circumstances enforcement would
> produce a more equitable result than nonenforcement and
> would not be inconsistent with the purposes of [the ICA].

15 U.S.C. § 80a-46(b)(1).

Participants argue that the District Court incorrectly dismissed their Section 47(b)

claim by erroneously believing it was premised upon a breach of the fiduciary duty

provision of Section 36(b) of the ICA.  Participants assert that the Section 47(b) claim is

not based upon a violation of  Section 36(b), but is instead premised upon an alleged

violation of Section 26(f) of the ICA, 15 U.S.C. § 80a-26(f), which requires that "the fees

and charges deducted under [a registered separate account funding variable insurance

contract], in the aggregate, are reasonable in relation to the services rendered, the

expenses expected to be incurred, and the risks assumed by the insurance company."  15

U.S.C. § 80a-26(f)(2)(A).  While conceding that Section 26(f) does not establish a private

cause of action, Participants contend that "its standards are enforceable in an action

brought under ICA § 47(b)."  (Appellant's Br. at 38.)

Participants contend that because amendments made in 1980 to Section 47(b)

"substantially tracked" Section 215 of the Investment Advisers Act of 1940 (IAA), 15

U.S.C. § 80b-15, which had been "previously construed by the Supreme Court [in

*Transamerica Mortgage Advisors, Inc., v. Lewis*, 444 U.S. 11, 19 (1979)] to provide a

right of action," Section 47(b) similarly creates a private right of action in their favor to

seek rescission and restitution.  (Appellant's Reply Br. at 24.)  Citing *Alexander v.

Sandoval*, 532 U.S. 275 (2001), Participants contend that the District Court should have

read Section 47(b) of the ICA as the Supreme Court read Section 215 of the IAA – as

creating a private right of action: "the Court's reasoning . . . that similarly-worded

statutes should be similarly construed, especially when the statute at issue was enacted

after a provision is judicially construed, supports Plaintiffs' position here."  (Appellant's

Reply Br. at 24-25.)

Participants misread *Sandoval*, which made it clear that only Congress could

create private rights of action.  532 U.S. at 286 ("Like substantive federal law itself,

private rights of action to enforce federal law must be created by Congress.").  Congress

empowered the Securities and Exchange Commission to enforce all ICA provisions

through Section 42, *see* 15 U.S.C. § 80a-41, while creating an exclusive private right of

action in Section 36(b).  In *Sandoval*, the Court observed that "[t]he express provision of

13

one method of enforcing a substantive rule suggests that Congress intended to preclude others. . . ." 532 U.S. at 290 (citations omitted).

Unlike Section 36(b) of the ICA, the IAA construed in *Transamerica* did not expressly provide for a private cause of action. *See* 444 U.S. at 14. The *Transamerica* Court observed that where the same statute contains private causes of action in other sections (such as with the ICA),"it is highly improbable that 'Congress absentmindedly forgot to mention an intended private action.'" 444 U.S. at 20 (quoting *Cannon v. University of Chicago*, 441 U.S. 677, 742 (1979) (Powell, J., dissenting)). As the Court explained, "it is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." *Id.* at 19. Thus, one reason why a right of action exists in Section 215 of the IAA but not Section 47(b) of the ICA is because "Congress intended the express right of action set forth in Section 36(b) [of the ICA] to be exclusive; there was no similar exclusive, express right of action in [the IAA]." *Tarlov*, 559 F. Supp. at 438.

Another reason not to imply the existence of a cause of action under Section 47(b) to enforce the standards of Section 26(f) of the ICA is that Section 26(f) itself does not create investor rights. Section 26(f) states that "[i]t shall be unlawful for any registered separate account funding variable insurance contracts, or for the sponsoring insurance company of such account, to sell any such contract . . . unless the fees and charges deducted under the contract, in the aggregate, are reasonable." 15 U.S.C. § 80a-26(f)(2). As recognized in *Olmsted v. Pruco Life Insurance Co. of New Jersey*, 283 F.3d 429 (2d Cir. 2002), this is not "rights-creating language." *Id.* at 432. The focus of the section is

14

on the insurance company, not on the investors.  This focus on the insurance companies

rather than the investors is precisely what the Supreme Court meant in *Sandoval* when it

observed that "[s]tatutes that focus on the person regulated rather than the individuals

protected create 'no implication of an intent to confer rights on a particular class of

persons.'"  532 U.S. at 289 (quoting *California v. Sierra Club*, 451 U.S. 287, 294

(1981)).  This led the Second Circuit to conclude in *Olmsted* that "[n]o provision of the

ICA explicitly provides for a private right of action for violations of . . . § 26(f) . . . and

so we must presume that Congress did not intend one."  283 F.3d at 432.

Furthermore, it is not clear that even the *Transamerica* Court would have found a

private right of action in Section 47(b) due to the differences in text and structure

between the ICA and the IAA.  While Section 47(b) of the ICA does track Section 215 of

the IAA closely, there are important differences between the two.  While the latter states

that "[e]very contract made in violation of any provision of this subchapter . . . shall be

*void*," 15 U.S.C. § 80b-15(b) (emphasis added), the former stipulates that "[a] contract

that is made, or whose performance involves, a violation of this subchapter . . . is

*unenforceable*."  15 U.S.C. § 80a-46(b) (emphasis added).  This difference, while

seemingly slight, is significant.  The Court specifically noted in *Transamerica* that "the

legal consequences of voidness are typically not . . . limited [to defensive use].  A person

with the power to void a contract ordinarily may resort to a court to have the contract

rescinded and to obtain restitution of consideration paid."  444 U.S. at 18 (citations

omitted).  The use of the term "void" in § 215 prompted the Court to conclude that

"Congress . . . intended that the customary legal incidents of voidness would follow,

15

including the availability of a suit for rescission or for an injunction against continued

operation of the contract, and for restitution." *Id.* at 19.

The use of the term "unenforceable" in Section 47(b), by way of contrast, carries

no such legal implications. Indeed, courts have held that the language of Section 47(b)

creates "a remedy rather than a distinct cause of action or basis of liability." *Stegall v.*

*Ladner*, 394 F. Supp. 2d 358, 378 (D. Mass 2005); *see also Mutchka v. Harris*, 373 F.

Supp. 2d 1021, 1027 (C.D. Cal. 2005).

In summary, neither the language nor the structure of the ICA supports

Participants' effort to insinuate their excessive fees claim into Section 47(b). Such a

claim is cognizable under Section 36(b), but Participants lack standing to sue under that

provision. They cannot circumvent their standing deficiency by resort to Section 47(b).

Accordingly, Participants' Section 47(b) claim was properly dismissed.

C.

We now turn to whether pre-suit demand and mandatory joinder of trustees is

required for Participants' claims brought under Sections 502(a)(2) and (a)(3) of ERISA.

The relevant sections state:

> (a) Persons empowered to bring a civil action
>
> A civil action may be brought— . . .
>
>> (2) by the Secretary, or by a participant, beneficiary or
>> fiduciary for appropriate relief under section 1109 of
>> this title;
>>
>> (3) by a participant, beneficiary, or fiduciary

16

(A) to enjoin any act or practice which violates
any provision of this subchapter or the
terms of the plan, or

(B) to obtain other appropriate equitable relief

(i) to redress such violations or

(ii) to enforce any provisions of this
subchapter or the terms of the plan.

29 U.S.C. §§ 1132(a)(2), (a)(3).

The text is silent as to pre-suit demand and mandatory joinder of trustees – in fact,

no preconditions on a participant or beneficiary's right to bring a civil action to remedy a

fiduciary breach are mentioned at all.  This led the Supreme Court to hold in *Harris Trust*

*& Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238 (2000), that Section

502(a)(3):

[A]dmits of no limit (aside from the "appropriate equitable
relief" caveat) on the universe of possible defendants.  Indeed
§ 502(a)(3) makes no mention at all of which parties may be
proper defendants – the focus, instead, is on redressing the
"*act or practice* which violates any provision of [ERISA Title
I]." Other provisions of ERISA, by contrast, expressly
address who may be a defendant.

*Id.* at 239 (quoting 29 U.S.C. § 1132(a)(3)) (citing 29 U.S.C. §1109(a)).  The text of

Sections 502(a)(2) and 502(a)(3) thus does not require joinder of trustees.  Furthermore,

no Court of Appeals has found pre-suit demand a requirement for civil actions brought

under Sections 502(a)(2) or (a)(3).  *See, e.g., Katsaros v. Cody*, 744 F.2d 270, 280 (2d

Cir. 1984) ("[A]lthough common law may have required a prior demand before bringing

an action, Congress did not incorporate that doctrine into the ERISA statute.  The ERISA

17

jurisdictional statute, 29 U.S.C. § 1132(a)(3), contains no such condition precedent to filing suit."); *Licensed Div. Dist. No. 1 MEBA/NUM v. Defries*, 943 F.2d 474, 479 (4th Cir. 1991) (citing *Katsaros* for the proposition that no prior demand requirement is incorporated into ERISA).

The District Court, relying on *Diduck v. Kaszycki & Sons Contractors, Inc.*, 874 F.2d 912 (2d Cir. 1989), and the common law of trusts, held that pre-suit demand upon the trustees and joinder of the trustees as parties were prerequisites to Participants' ERISA claims. *Diduck*, however, was decided under Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), not Sections 502(a)(2) and (a)(3), under which Participants proceed. Indeed, the Second Circuit itself has explained that its holding in *Diduck* is limited to claims brought under Section 502(g)(2), which "authorizes fiduciaries, but no one else, to obtain unpaid contributions pursuant to ERISA § 515, 29 U.S.C. § 1145, which requires employers participating in multi-employer ERISA plans to make obligatory contributions to the plans." *Coan v. Kaufman*, 457 F.3d 250, 258 (2d Cir. 2006). As the Second Circuit explained:

> Because section 502(g)(2) only applies to suits by fiduciaries, it is sensible to require plan participants, if they may assert the fiduciaries' right of action at all, to follow Rule 23.1, which applies when the appropriate plaintiff has "failed to enforce a right which may properly be asserted by it." FED. R. CIV. P. 23.1. Section 502(a)(2), unlike section 502(g)(2), provides an express right of action for participants – presumably because the drafters of ERISA did not think fiduciaries could be relied upon to sue themselves for breach of fiduciary duty.

*Id.*

18

One reason for this lack of a demand requirement for Section 502(a)(2) and (a)(3) claims is that the protective purposes of ERISA would be subverted if the section covering fiduciary breach required beneficiaries to ask trustees to sue themselves. Accordingly, the District Court erred in concluding that Section 502(g) claims are "akin" to Section 502(a) claims. *Santomenno*, 2011 WL 2038769, at *3. "Because plan participants are expressly authorized to bring suit under section 502(a)(2), the situation here is not controlled by *Diduck*." *Coan*, 457 F.3d at 258.

In addition to the text, structure, and purpose of ERISA, the legislative history of the statute also indicates that Congress did not intend to impose obstacles such as pre-suit demand or mandatory joinder of trustees with respect to claims brought under Section 502(a):

> The enforcement provisions have been designed specifically to provide both the Secretary [of Labor] and participants and beneficiaries with broad remedies for redressing or preventing violations of the [Act] . . . . The intent of the Committee is to provide the full range of legal and equitable remedies available in both state and federal courts and to remove jurisdictional and procedural obstacles which in the past appear to have hampered effective enforcement of fiduciary responsibilities under state law or recovery of benefits due to participants.

S. Rep. No. 93-127, at 3 (1973), *reprinted in* 1974 U.S.C.C.A.N. 4838, 4871. As we noted in *Leuthner v. Blue Cross & Blue Shield of Northeastern Pennsylvania*, 454 F.3d 120 (3d Cir. 2006), "ERISA's legislative history indicates that Congress intended the federal courts to construe the statutory standing requirements broadly in order to facilitate enforcement of its remedial provisions." *Id.* at 128.

In dismissing the ERISA counts, the District Court relied on "guidance from the common law of trusts." *Santomenno*, 2011 WL 2038769 at *3. We believe this reliance was misplaced, as the statute unambiguously allows for beneficiaries or participants to bring suits against fiduciaries without pre-suit demand or joinder of trustees. The common law of trusts is not incorporated en masse into ERISA. On the contrary, "trust law will offer only a starting point, after which courts must go on to ask whether, or to what extent, the language of the statute, its structure, or its purposes require departing from common-law trust requirements." *Varity Corp. v. Howe*, 516 U.S. 489, 497 (1996). As noted above, the language of the statute, the legislative history, and the structure of this remedial legislation compel the conclusion that neither a pre-suit demand requirement nor joinder of the plan trustees is a prerequisite to Participants' claims. Accordingly, the District Court should not have dismissed Counts I through VII due to the lack of a pre-suit demand upon the plan trustees and the absence of the trustees as parties to this action.

III.

For the foregoing reasons, we affirm the District Court's judgment on the ICA counts, but vacate the District Court's dismissal of the ERISA claims and remand for further proceedings.