Jonathan M. Korn
BLANK ROME LLP
301 Carnegie Center, 3rd Floor
Princeton, NJ  08540
(609) 750-7700 (Phone)
(609) 750-7701 (Fax)
Korn@BlankRome.com

James N. Benedict (*Pro Hac Vice*)
Sean M. Murphy (*Pro Hac Vice*)
Robert C. Hora (*Pro Hac Vice*)
MILBANK, TWEED, HADLEY & McCLOY LLP
1 Chase Manhattan Plaza
New York, NY  10005
(212) 530-5000 (Phone)
(212) 530-5219 (Fax)
*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARY ANN SIVOLELLA, for the use and benefit of the EQ/Common Stock Index Portfolio, the EQ/Equity Growth PLUS Portfolio, the EQ/Equity 500 Index Portfolio, the EQ/Large Cap Value PLUS Portfolio, the EQ/Global Multi-Sector Equity Portfolio, the EQ/Mid Cap Value PLUS Portfolio, the EQ/GAMCO Small Company Value, and the EQ/Intermediate Government Bond Index Portfolio,<br><br>                                    Plaintiff,<br><br>vs.<br><br>AXA EQUITABLE LIFE INSURANCE COMPANY and AXA EQUITABLE FUNDS MANAGEMENT GROUP, LLC,<br>                                    Defendants. | Civil Action No. 3:11-cv-04194 (PGS)<br><br>and<br><br>Civil Action No. 3:13-cv-00312 (PGS) |
| GLENN D. SANFORD, *et al.*,<br>                                    Plaintiffs,<br><br>vs.<br><br>AXA EQUITABLE FUNDS MANAGEMENT GROUP, LLC,<br><br>                                    Defendant. | **DEFENDANTS' RESPONSE TO PLAINTIFFS' OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION THAT DISTRICT COURT GRANT DEFENDANTS' MOTION TO STRIKE PLAINTIFFS' DEMANDS FOR JURY TRIAL**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>**FILED ELECTRONICALLY** |

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT .................................................................................... 1

ARGUMENT ................................................................................................................ 3

I.    MAGISTRATE JUDGE ARPERT CORRECTLY DETERMINED THAT SECTION 36(b) DOES NOT DEMONSTRATE ANY CONGRESSIONAL INTENT TO GRANT A RIGHT TO A JURY TRIAL. ............................................................................................... 3

    A.    The Reference To "Actual Damages" In Section 36(b) Does Not Afford A Right To A Jury Trial. .................................................. 4

    B.    The Reference To "Injunctive" Relief In Section 36(a) Of The Investment Company Act Does Not Indicate Congressional Intent To Provide A Right To A Jury Trial Under Section 36(b). ....................... 6

II.    MAGISTRATE JUDGE ARPERT CORRECTLY CONCLUDED THAT THE SEVENTH AMENDMENT DOES NOT AFFORD A RIGHT TO A JURY TRIAL FOR SECTION 36(b) CLAIMS. .................................................. 7

    A.    Plaintiffs Do Not Contest That Section 36(b) Claims Are Equitable In Nature. ................................................................. 9

    B.    Plaintiffs' Section 36(b) Claims Seek Equitable Restitution Under *Great-West* And *Pereira*. ...................................................... 9

        1.    Plaintiffs Seek Equitable Restitution Under *Great-West* ............... 10

        2.    Plaintiffs Seek Equitable Restitution Under *Pereira*. .................... 13

        3.    Equitable Restitution Does Not Require A Constructive Trust Or Equitable Lien With Respect To A Segregated Fund. ............... 14

CONCLUSION .......................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*ACS HR Solutions, LLC v. Bonds*,
    No. 10-cv-4179, 2012 WL 3647399 (D.N.J. Aug. 22, 2012) ................................................15

*Blue Cross & Blue Shield of Minn. v. Wells Fargo Bank, N.A.*,
    No. 11-2529, 2013 WL 2434875 (D. Minn. June 4, 2013)...................................................14

*Brosted v. Unum Life Ins. Co. of Am.*,
    421 F.3d 459 (7th Cir. 2005) ...............................................................................................16

*Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*,
    494 U.S. 558 (1990)........................................................................................................8, 9, 12

*Dairy Queen Inc. v. Wood*,
    369 U.S. 469 (1962)................................................................................................................11

*Feltner v. Columbia Pictures Television, Inc.*,
    523 U.S. 340 (1998)........................................................................................................2, 3, 4, 5

*Great-West Life & Annuity Ins. Co. v. Knudson*,
    534 U.S. 204 (2002)........................................................................................................ passim

*Hatco Corp. v. W.R. Grace & Co.*,
    59 F.3d 400 (3d Cir. 1995)......................................................................................................8

*In re Evangelist*,
    760 F.2d 27 (1st Cir. 1985)................................................................................................4, 12

*In re Gartenberg*,
    636 F.2d 16 (2d Cir. 1980)...........................................................................................4, 12, 14

*Jones v. Harris Assocs. L.P.*,
    559 U.S. 335 (2010)................................................................................................................7, 9

*Kamen v. Kemper Fin. Servs., Inc.*,
    659 F. Supp. 1153 (N.D. Ill. 1987) .........................................................................................4

*Kamen v. Kemper Fin. Servs., Inc.*,
    908 F.2d 1338 (7th Cir. 1990) ..........................................................................................4, 12

*Krinsk v. Fund Asset Mgmt., Inc.*,
    875 F.2d 404 (2d Cir. 1989)............................................................................................11, 12

*Nat'l Sec. Sys., Inc. v. Iola*,
    700 F.3d 65 (3d Cir. 2012)..............................................................................................12, 16

*Pereira v. Farace*,
    413 F.3d 330 (2d Cir. 2005)..................................................................... passim

*Schuyt v. Rowe Price Prime Reserve Fund, Inc.*,
    835 F.2d 45 (2d Cir. 1987)...............................................................................11

*Skretvedt v. E.I. DuPont De Nemours*,
    372 F.3d 193 (3d Cir. 2004)............................................................................16

*Soley v. Wasserman*,
    No. 08-9262, 2013 WL 1655989 (S.D.N.Y. Apr. 17, 2013) .................................14

*Stoneback v. ArtsQuest*,
    No. 12-3286, 2012 U.S. Dist. LEXIS 149897 (E.D. Pa. Oct. 17, 2012) ..................6

*Strom v. Goldman Sachs & Co.*,
    202 F.3d 138 (2d Cir. 1999)........................................................................13, 14

*United States ex rel. Drakeford v. Tuomey Healthcare Sys., Inc.*,
    675 F.3d 394 (4th Cir. 2012) ..........................................................................16

*United States v. Gregg*,
    226 F.3d 253 (3rd Cir. 2000) .............................................................................7

*United States v. Lane Labs-USA Inc.*,
    427 F.3d 219 (3rd Cir. 2005) ..........................................................................16

*Unum Life Ins. Co. of Amer. v. Lynch*,
    No. 04-cv-9007, 2006 WL 266562 (S.D.N.Y. Jan. 31, 2006) ...............................15

*Weissman v. Alliance Capital Mgmt. Corp.*,
    No. 84 Civ 8904, 1985 U.S. Dist. LEXIS 13392 (S.D.N.Y. Nov. 27, 1985) .........4

**CONSTITUTIONAL PROVISIONS**

U.S. Const. amend VII....................................................................................... passim

**STATUTES**

15 U.S.C. § 80a-35(b) ..........................................................................................6

**RULES**

Local Rule 72.1 ..............................................................................................1, 3

**OTHER AUTHORITIES**

Restatement (Third) of Restitution and Unjust Enrichment (2011)..............................17

S. Rep. No. 91-184, 91st Cong., 2d Sess. (1969) ............................................................................6

Defendants AXA Equitable Life Insurance Company and AXA Equitable Funds

Management Group, LLC (together, "Defendants") respectfully submit this Response to

Plaintiffs' Objections to Magistrate Judge Arpert's Report and Recommendation that the Court

grant Defendants' Motion To Strike Plaintiffs' Demands For A Jury Trial.[1]

## PRELIMINARY STATEMENT

No court has ever held in the forty-year history of Section 36(b) that there is a right to a

jury trial for Section 36(b) claims.  To the contrary, as indicated in Defendants' prior briefing on

this Motion, at least nine courts (including three Courts of Appeal) have found, in seventeen

separate decisions, that there is no such right.[2]  In accord with this well-settled precedent,

Magistrate Judge Arpert recommended in his Report that Defendants' Motion To Strike

Plaintiffs' Demands For A Jury Trial be granted.

Plaintiffs' Objection does not raise any new arguments.[3]  Each of the arguments in

Plaintiffs' Objection was previously asserted by Plaintiffs in their Opposition Brief and/or at oral

---

[1] As used herein: "Motion" refers to the Motion to Strike Plaintiffs' Demands For A Jury Trial, *Sivolella v. AXA Equitable Life Ins. Co., et al.*, Civ. No. 11-04194 (D.N.J.), *Sanford, et al. v. AXA Equitable Funds Mgm't Group, LLC*, Civ. No. 13-00312 (D.N.J.), filed Feb. 22, 2013 (*Sivolella* Dkt. No. 42) (*Sanford* Dkt. No. 7); "Opposition Brief" and "Opp. Br." refer to the Brief In Opposition To Defendants' Motion To Strike Plaintiffs' Demand For Jury Trial, filed Mar. 18, 2013 (*Sivolella* Dkt. No. 51) (*Sanford* Dkt. No 15); "Reply Brief" and "Reply Br." refer to the Defendants' Reply Memorandum of Law In Support Of Their Motion To Strike Plaintiffs' Demands For A Jury Trial, filed Apr. 1, 2013 (*Sivolella* Dkt. No. 53) (*Sanford* Dkt. No. 17); "Report" refers to the Report and Recommendation, filed July 3, 2013 (*Sivolella* Dkt. No. 62) (*Sanford* Dkt. No. 23); "Objection" and "Obj." refer to Objections To Magistrate Judge's Report And Recommendation That District Court Grant Defendants' Motion To Strike Plaintiffs' Demand For Jury Trial, filed July 12, 2013 (*Sivolella* Dkt. No. 63) (*Sanford* Dkt. No. 24); and "Complaints" refers, together, to the Second Amended Complaint and Jury Demand filed on April 15, 2013 (*Sivolella* Dkt. No. 56) and the First Amended Complaint and Jury Demand filed on April 15, 2013 (*Sanford* Dkt. No. 20).

[2] *See* Defendants' Memorandum of Law In Support Of Their Motion To Strike Plaintiffs' Demands For A Jury Trial, filed Feb. 22, 2013 (*Sivolella* Dkt. No. 42-1; *Sanford* Dkt. No. 7-1), at note 5.

[3] Plaintiffs' Objection also does not appear to comply with the mandate under Local Rule 72.1 that objections to a magistrate judge's report and recommendation "specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis of such objection."  Local Rule 72.1(c)(2).  Plaintiffs generically state that their "primary objection to the

argument before Magistrate Judge Arpert, and each of those arguments was squarely rejected in Magistrate Judge Arpert's Report.  Plaintiffs claim that their "primary objection" is that Magistrate Judge Arpert "fail[ed] to adequately analyze" two cases: *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002), and *Pereira v. Farace*, 413 F.3d 330 (2d Cir. 2005). Plaintiffs fail to identify any "inadequacies" in Magistrate Judge Arpert's analysis of *Great-West* and *Pereira* and, instead, essentially "cut and paste" the same arguments they made in their Opposition Brief.  Plaintiffs' effort to take a second bite at the apple is unavailing.

Faced with a sea of unfavorable precedent, Plaintiffs admitted at oral argument before Magistrate Judge Arpert that they "should definitely lose this [M]otion" unless *Great-West* or *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340 (1998) somehow changed the legal landscape with respect to the availability of jury trials for Section 36(b) claims.  *See* Tr. at 27.[4] As Magistrate Judge Arpert concluded, *Great-West* and *Feltner* did no such thing, and neither these nor any other cases have overruled or otherwise undermine the seventeen decisions finding that there is no right to a jury trial for Section 36(b) claims.

In accord with this precedent, Magistrate Judge Arpert correctly concluded that (1) there is nothing in the statutory language of Section 36(b) or its legislative history that affords a right to a jury trial for Section 36(b) claims, and (2) the Seventh Amendment does not afford such a right.  Significantly, as Magistrate Judge Arpert noted in his Report, Plaintiffs admitted at oral argument that their Section 36(b) claims seek nothing more than "<u>return of the fees</u>" (Tr. at

---

[Report] is that it fails to adequately analyze the import of [a Supreme Court decision and a Second Circuit decision]," but the vast majority of Plaintiffs' Objection has nothing to do with either of these two decisions, and merely reasserts (in some cases verbatim) the arguments Plaintiffs raised in their Opposition Brief.  Nevertheless, in an abundance of caution, Defendants respond herein to each of the arguments reasserted in Plaintiffs' Objection.

[4] "Tr." refers to the transcript of the oral argument held before Magistrate Judge Arpert on May 17, 2013 on Defendants' Motion to Strike Plaintiffs' Demands For A Jury Trial.  The transcript is attached as Exhibit A to the Declaration of Jonathan M. Korn, filed contemporaneously herewith.

28)—this is the prototypical form of *equitable* restitution described in *Great-West*, and affords

no right to a jury trial.  After analyzing *Great-West* and *Pereira*, Magistrate Judge Arpert

properly concluded that "Plaintiffs' claim is for equitable restitution and, as a result, not triable

to a jury."  Report at 10.  Plaintiffs' Objection fails to set forth any reason for the Court to reject

Magistrate Judge Arpert's recommendation that the Court grant Defendants' Motion To Strike

Plaintiffs' Demands For A Jury Trial.[5]

## ARGUMENT

I.   **MAGISTRATE JUDGE ARPERT CORRECTLY DETERMINED THAT
SECTION 36(b) DOES NOT DEMONSTRATE ANY CONGRESSIONAL
INTENT TO GRANT A RIGHT TO A JURY TRIAL.**

In *Feltner*, the Supreme Court reiterated the well-settled principle that before courts

inquire "into the applicability of the Seventh Amendment," they must first consider whether

there is "'any congressional intent to grant . . . the right to a jury trial.'"  *Feltner*, 523 U.S. at 345

(quoting *Tull v. United States*, 481 U.S. 412, 417 n.3 (1987)).  This is not in dispute.  *See* Obj. at

5.  Plaintiffs contend, however, that the statutory text of Section 36(b) "unambiguously" confers

a right to trial by jury.  *Id*. at 7.  Plaintiffs are incorrect.  Magistrate Judge Arpert, following a

long line of judicial precedent, rejected each of the same arguments Plaintiffs now reassert in

their Objection.  Namely, Magistrate Judge Arpert correctly found that the reference to "actual

damages" in Section 36(b) does not afford a right to a jury trial (citing three Court of Appeals

decisions that reached this same conclusion) and that *Feltner* in no way changed this result.

Magistrate Judge Arpert ultimately concluded that "the constitutional issue cannot be resolved by

resort to the statute."  Report at 5.  Plaintiffs' Objection identifies no reason for the Court to

reject Magistrate Judge Arpert's conclusion.

---

[5] Local Rule 72.1 provides that "[a] Judge shall make a *de novo* determination of those portions to which
objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations
made by the Magistrate Judge."  Local R. 72.1(c)(2).  However, even under a *de novo* standard of review,
Plaintiffs identify no basis for rejecting any part of the Report.

A. **The Reference To "Actual Damages" In Section 36(b) Does Not Afford A Right To A Jury Trial.**

Plaintiffs contend that the reference in Section 36(b) to the phrase "actual damages" "constitutes an unambiguous expression of congressional intent to afford plaintiffs a right to trial by jury." Obj. at 7. However, as Magistrate Judge Arpert recognized, three Courts of Appeal have "undertook this same statutory inquiry," and "each one determined that the language of Section 36(b) was not dispositive of the issue." *See* Report at 4; *In re Evangelist*, 760 F.2d 27, 30 (1st Cir. 1985) ("The simple use of the word 'damages,' in light of the other evidence of Congressional intent, is not sufficient to show that Congress intended to create an action 'at law' . . . ."); *In re Gartenberg*, 636 F.2d 16, 17-18 (2d Cir. 1980) (Section 36(b) is "silent" on the "jury-non-jury issue"); *Kamen v. Kemper Fin. Servs., Inc.*, 908 F.2d 1338, 1351 (7th Cir. 1990) ("adopt[ing] both the holding and rationale of *Evangelist*"), *rev'd on other grounds*, 500 U.S. 90 (1991).[6] Absent controlling Third Circuit precedent to the contrary, Magistrate Judge Arpert found these decisions persuasive. Report at 4.

Contrary to Plaintiffs' contention, the Supreme Court's decision in *Feltner* (a copyright case) in no way overrules or undermines this precedent. As Magistrate Judge Arpert recognized, *Feltner* has no bearing on whether the statutory text of Section 36(b) affords a right to a jury trial. Report at 4-5 ("The Court is not swayed by Plaintiffs' argument . . . that the Supreme

---

[6] *See also Kamen v. Kemper Fin. Servs., Inc.*, 659 F. Supp. 1153, 1165 n.19 (N.D. Ill. 1987) (plaintiff's argument that the reference in Section 36(b) to "damages" renders Section 36(b) claims actions at law "has been rejected by every court that has considered it"); *Weissman v. Alliance Capital Mgmt. Corp.*, No. 84 Civ. 8904, 1985 U.S. Dist. LEXIS 13392, at *6 n.3 (S.D.N.Y. Nov. 27, 1985) (Section 36(b)'s reference to "actual damages" does not afford a right to a jury trial "for substantially the same reasons set forth" in *Gartenberg*, 487 F. Supp. 999 (S.D.N.Y. 1980) and *Evangelist*); *Gartenberg*, 487 F. Supp. at 1006 ("[G]iven the repeated statement in the legislative history that actions under § 36(b) are equitable, to be administered on equitable standards, it would seem impossible to conclude from the use of the word 'damages' that Congress thereby provided for a trial by jury.").

Court's recent decision in *Feltner* has somehow 'changed the analytical framework for the evaluation of a party's entitlement to a jury.'").

In *Feltner*, the Court held that a plaintiff seeking statutory damages under the Copyright Act of 1976 has a Seventh Amendment right to a jury trial because copyright actions have been tried to juries for over 200 years. *Feltner*, 523 U.S. at 350. In its discussion of why the statutory damages set forth in the Copyright Act did not afford a right to a jury trial, the Supreme Court distinguished statutory damages from "actual damages" under the Copyright Act and noted that actual damages under the Copyright Act "generally are thought to constitute legal relief." *Id.* at 346. Plaintiffs' contention that "*Feltner* requires Section 36(b) to be construed to afford them a right to a jury trial" improperly attempts to take *Feltner* out of its historical, copyright context. Obj. at 8; Report at 4 ("Plaintiffs cite *Feltner* for the proposition that it is 'beyond dispute that a plaintiff who seeks to recover actual damages is entitled to a jury trial.' This is not a correct statement or application of the law as it relates to Section 36(b). In the first instance, Plaintiffs' quote is taken out of context. . . . Second, and more importantly, the *Feltner* Court did not base its holding on the language of [Section 36(b)].") (internal citations omitted)).

Furthermore, Plaintiffs ignore the other precedent cited in Defendants' prior briefing (including from the Supreme Court and the Third Circuit) that indicates that mere references to "actual damages" in statutory text do not as a matter of law demonstrate congressional intent to grant a right to a jury trial. Reply Br. at 4. For instance, in *City of Monterey v. Del Monte Dunes at Monterey, Ltd.* (a Supreme Court case decided after *Feltner*), the Court refused to find a statutory right to a jury trial under 42 U.S.C. § 1983, even though the statute expressly authorizes a party to seek relief through an "action at law." 526 U.S. 687, 707-708 (1999). Similarly, in *Pichler v. UNITE*, the Third Circuit held that the Driver's Privacy Protection Act of 1994 does not confer a statutory right to a jury trial despite authorizing remedies that include "actual

damages" and "punitive damages."  542 F.3d 380, 386 n.7, 387 (3rd Cir. 2008); *see also*

*Stoneback v. ArtsQuest*, No. 12-3286, 2012 U.S. Dist. LEXIS 149897, at *15-17 (E.D. Pa. Oct.

17, 2012) (Pennsylvania's whistleblower law does not confer a statutory right to a jury trial even

though it provides for "actual damages").  These cases provide even further support for

Magistrate Judge Arpert's conclusion that the reference to "actual damages" in Section 36(b)

does not afford a right to trial by jury.  Plaintiffs offer no legitimate basis to disturb this correct

determination.

> **B.** **The Reference To "Injunctive" Relief In Section 36(a) Of The Investment Company Act Does Not Indicate Congressional Intent To Provide A Right To A Jury Trial Under Section 36(b).**

Plaintiffs also argue that because the text of Section 36(a) of the Investment Company

Act refers to "injunctive" relief, while Section 36(b) does not contain comparable references,

Congress must have intended for Section 36(b) to afford a right to a jury trial.  This is incorrect.[7]

Section 36(b) specifically refers to the "court" as the arbiter of Section 36(b) claims: (1)

"approval by the board of directors of . . . such compensation or payments . . . shall be given

such consideration by the <u>court</u> as is deemed appropriate under all the circumstances"; and (2)

"[n]o finding by a <u>court</u> with respect to a breach of fiduciary duty under this subsection shall be a

basis for . . . [a violation of other securities laws or injunctive relief by the Securities and

Exchange Commission]."  15 U.S.C. §§ 80a-35(b)(2), (b)(6) (emphasis added).

It is clear from the legislative history of Section 36(b) that these references to "court" in

the statutory text were intended to refer to a judge, and not to a jury.  The legislative history

repeatedly refers to Section 36(b) as authorizing an "equitable" action and contains no reference

to a right to a jury trial.  S. Rep. No. 91-184, 91st Cong., 2d Sess. (May 21, 1969), *reprinted in*

---

[7] Although Magistrate Judge Arpert did not separately address this argument in his Report, he apparently rejected it by concluding that "the constitutional issue cannot be resolved by resort to the statute."  Report at 5.

1970 U.S.C.C.A.N. 4897 (describing the bill adding Section 36(b) as amending the Investment

Company Act to "define the equitable standards governing relationships between investment

companies and their investment advisers")  (emphasis added).  For instance, the Senate Report

submitted with the bill that added Section 36(b) to the Investment Company Act states that

"Section 36(b) authorizes the Commission and also a shareholder acting on behalf of the fund to

institute an equitable action involving a claim of breach of fiduciary duty."  *Id.* at 4910

(emphasis added).  The Report goes on to note that "section 36(b) provides for an equitable

action for breach of fiduciary duty."  *Id.* at 4911 (emphasis added); *see also Jones v. Harris*

*Assocs. L.P.*, 559 U.S. 335, 352 (2010) ("the standard for fiduciary breach under § 36(b) does not

call for judicial second-guessing of informed board decisions") (emphasis added).

　　　To the extent Plaintiffs suggest that this legislative history is irrelevant, they are

incorrect.  Plaintiffs note that "legislative history cannot prevail over explicit statutory language"

(Obj. at 9), but for the reasons stated above and in Magistrate Judge Arpert's Report, there is no

"explicit statutory language" in Section 36(b) that authorizes a right to a jury trial.  *See* Report at

3-5 ("[T]he constitutional issue cannot be resolved by resort to the statute."); *see also United*

*States v. Gregg*, 226 F.3d 253, 257 (3rd Cir. 2000) ("Where the statutory language does not

express Congress's intent unequivocally, a court traditionally refers to the legislative history . . .

."").  The legislative history confirms that Section 36(b) demonstrates no congressional intent to

grant a right to jury trials for Section 36(b) claims.

## II.　　MAGISTRATE JUDGE ARPERT CORRECTLY CONCLUDED THAT THE SEVENTH AMENDMENT DOES NOT AFFORD A RIGHT TO A JURY TRIAL FOR SECTION 36(b) CLAIMS.

　　　Magistrate Judge Arpert correctly concluded that there is no right to a jury trial for

Section 36(b) claims under the Seventh Amendment.  Report at 5-10.  Where there is no

congressional intent to grant a right to a jury trial demonstrated in the statute (as is the case here),

there only can be a right to a jury trial if it is constitutionally protected by the Seventh Amendment.  The right to a jury trial is protected by the Seventh Amendment "when the claim is a legal one, but not if it is equitable."  *Hatco Corp. v. W.R. Grace & Co.*, 59 F.3d 400, 411 (3d Cir. 1995).  In deciding whether a claim is legal or equitable, a court must "examine both the nature of the issues involved and the remedy sought."  *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 565 (1990).  Specifically, the court must (1) "compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity" and (2) "examine the remedy sought and determine whether it is legal or equitable in nature."  *Id.*  These basic principles are not in dispute.  *See* Obj. at 10-11.

With respect to the first prong of the Seventh Amendment test, Plaintiffs do not dispute that Section 36(b) claims for breaches of fiduciary duty are historically equitable in nature.  With respect to the second prong, Plaintiffs argue that under *Great-West* and *Pereira*, their Section 36(b) claims seek "legal restitution" rather than "equitable restitution" and, therefore, are actions at law protected by the Seventh Amendment.  Magistrate Judge Arpert carefully analyzed and then rejected this argument.  *See* Report at 6-10.  Plaintiffs admitted at oral argument that their Section 36(b) claims seek nothing more than "the return of the fees."  Tr. at 28 ("MR. LAKIND: Your Honor, I do concede that the damages are limited to the return of the fees.").  As Magistrate Judge Arpert concluded, under the standards articulated in *Great-West* and *Pereira*, this is equitable restitution.  Report at 10 ("Under Great-West and Pereira, Plaintiffs' claim is for equitable restitution . . . .").  Plaintiffs' Objection identifies no reason for the Court to reject Magistrate Judge Arpert's conclusion.

### A.      Plaintiffs Do Not Contest That Section 36(b) Claims Are Equitable In Nature.

Plaintiffs concede that the first prong of the Seventh Amendment test weighs in favor of finding that there is no right to a jury trial for Section 36(b) claims.  Section 36(b) "impose[s] upon investment advisers a 'fiduciary duty' with respect to compensation received from a mutual fund."  *Jones*, 559 U.S. at 340.  As Magistrate Judge Arpert explained, "'breach of fiduciary duty claims were historically within the jurisdiction of the equity courts.'"  Report at 6 (quoting *Pereira*, 413 F.3d at 338).  Magistrate Judge Arpert also noted that "neither Party appears to dispute" that "it has been traditionally understood that Section 36(b) claims would be heard by a court of equity."  *Id.* at 6.  Plaintiffs raise no arguments in their Objection with respect to Magistrate Judge Arpert's conclusion that Section 36(b) claims are equitable in nature.  Accordingly, it is undisputed that the first prong of the Seventh Amendment test weighs in favor of a finding that Section 36(b) claims are equitable and afford no right to a jury trial.

### B.      Plaintiffs' Section 36(b) Claims Seek Equitable Restitution Under *Great-West* And *Pereira*.

After analyzing both *Great-West* and *Pereira*, Magistrate Judge Arpert properly concluded that Plaintiffs seek "equitable restitution" under the standards articulated and applied in those two cases.  *See* Report at 7-10 ("Plaintiffs' remedy is for equitable restitution.").  Plaintiffs identify no reason for the Court to reject Magistrate Judge Arpert's analysis and conclusion.[8]

---

[8] Plaintiffs devote several pages of their Objection to a discussion of *Terry*, but provide no explanation of how *Terry* is in any way inconsistent with Magistrate Judge Arpert's Report.  Obj. at 10-13.  In *Terry*, a group of employees sought compensatory damages for lost wages and health benefits in a suit alleging that the employees' union had breached its duty of fair representation.  *Terry*, 494 U.S. at 562-63, 570 ("[T]he only remedy sought is a request for compensatory damages representing backpay and benefits.").  The Court held that the employees were entitled to a jury trial under the Seventh Amendment because "[t]he backpay sought by respondents is not money wrongfully held by the Union, but wages and benefits they would have received from [the employer] had the Union processed the employees' grievances properly" and "[s]uch relief is not restitutionary."  *Id.* at 570-71 (emphasis added).  Here, in contrast,

1.      Plaintiffs Seek Equitable Restitution Under *Great-West*

In *Great-West*, the Supreme Court distinguished between "legal restitution" and "equitable restitution" in the context of a claim asserted under the Employee Retirement Income Security Act of 1974 ("ERISA").  *Great-West*, 534 U.S. at 212-14.  The Court explained that restitution is an equitable remedy when the action seeks "not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession."  *Great-West*, 534 U.S. at 214 (emphasis added).   In contrast, restitution is a legal remedy when it seeks the recovery of "money to pay for some benefit the defendant had received from [plaintiff]," as such claims are "viewed essentially as actions at law for breach of contract." *Id.* at 213.

In *Great-West*, the Court dismissed the ERISA claim after concluding that the claim and remedy at issue were not equitable in nature and therefore were not authorized by the relevant ERISA provision.  *Id.* at 212-215.  The petitioners in that case (an employer, insurance company, and employee benefits plan) sought payment from the respondents pursuant to a "reimbursement provision" in the respondents' employer-sponsored benefits plan.  *Id.* at 206-209.  The Court concluded that the petitioners sought legal restitution—not equitable restitution—because the funds at issue were never in the respondents' possession and the petitioners' claim was, instead, premised on a contractual right under the plan's reimbursement provision to recover money to pay for a benefit the petitioners had conferred on the respondents.  *Id.* ("Here, the funds to which petitioners claim an entitlement under the Plan's reimbursement provision—the proceeds from the settlement of respondents' tort action—are not in respondents' possession.") (emphasis

Plaintiffs admit that they seek restitution.  Obj. at 16 (arguing that Plaintiffs seek "legal restitution") (emphasis added).  In any event, unlike the wages and benefits at issue in *Terry*, which were never in the defendants' possession, Plaintiffs have conceded that what they really seek in this case is the "return of the fees" that were paid to Defendants.  Tr. at 28.  Accordingly, the holding in *Terry* supports Magistrate Judge Arpert's finding that the remedy Plaintiffs seek is equitable, and not legal.

added).  The Court further explained that "[t]he basis for petitioners' claim is not that respondents hold particular funds that, in good conscience, belong to petitioners, but that petitioners are contractually entitled to *some* funds for benefits that they conferred."  *Id*. at 214.

Applying the standards in *Great-West*, Magistrate Judge Arpert found that the relief sought by Plaintiffs is "equitable restitution."  Report at 7-10.  Specifically, Magistrate Judge Arpert explained, "Plaintiffs here are not seeking '*some* funds,' but rather *the* funds allegedly charged and retained by Defendants.  In other words, Plaintiffs seek 'particular funds [held by Defendants] that, in good conscience, belong to [Plaintiffs].'"  Report at 9 (quoting *Great-West*) (internal citations omitted).

Plaintiffs contend that their "complaints simply seek awards of 'compensatory damages' and 'legal restitution' against AXA."  Obj. at 16.  This is not true,[9] and this same argument was considered and rejected by Magistrate Judge Arpert.  Report at 9.  Plaintiffs' Complaints seek "repayment of all unlawful and/or excessive fees paid to [Defendants]" (Complaints, Prayer for Relief ¶ B) and, as noted, Plaintiffs admitted at oral argument that their "damages are limited to the return of the fees" (Tr. at 28).

Furthermore, as Magistrate Judge Arpert explained, it is irrelevant that Plaintiffs' Complaints purport to seek "compensatory damages" because "Plaintiffs' choice of words must . . . be compared to the actual relief they seek."  Report at 8-9; *see also Dairy Queen Inc. v. Wood*, 369 U.S. 469, 477-78 (1962) ("[T]he constitutional right to trial by jury cannot be made to depend upon the choice of words used in the pleadings."); *Schuyt v. Rowe Price Prime Reserve Fund, Inc.*, 835 F.2d 45, 46 (2d Cir. 1987) ("The mere fact that Schuyt has designated the relief she seeks as 'damages' does not mean that she is automatically entitled to a jury trial."); *Krinsk v. Fund Asset Mgmt., Inc.*, 875 F.2d 404, 414 (2d Cir. 1989) ("Although Krinsk insists his claim

---

[9] The term "legal restitution" appears nowhere in either of the two Complaints.

was for damages, a claim under section 36(b), even when labeled as one for damages, ordinarily should be treated as an equitable claim not for a jury.").  Here, the actual relief Plaintiffs seek "is disgorgement of the excessive fees they claim were collected by Defendants."  Report at 9.  As Magistrate Judge Arpert concluded, "[t]his is equitable restitution."  *Id*. at 9; *see also Nat'l Sec. Sys., Inc. v. Iola*, 700 F.3d 65, 101 (3d Cir. 2012) ("It is undisputed that restitution of ill-gotten commissions is an equitable remedy.").

The standards set forth in *Great-West* for distinguishing between legal and equitable restitution reinforce what at least nine courts have already confirmed: Section 36(b) claims are equitable and, therefore, afford no right to a jury trial.  Contrary to what Plaintiffs contend, the cases that have found (without exception) that Section 36(b) claims are equitable are still good law despite that they pre-date *Great-West*.  These cases were not, as Plaintiffs argue, "premised" on the notion that restitution is always an equitable remedy.  Obj. at 18.  The first of these cases recognized that restitution may not be an "exclusively equitable remedy."  *Gartenberg*, 487 F. Supp. at 1006.  Furthermore, the rationale articulated in these cases is entirely consistent with the standard for equitable restitution set forth in *Great-West*.  *See, e.g., In re Gartenberg*, 636 F.2d at 18 (finding that plaintiffs sought an equitable remedy because the issue is "whether the Trust adviser violated its fiduciary obligations by charging an exorbitant fee" and "[i]f it did, the excessive portion of the fee must be returned"); *In re Evangelist*, 760 F.2d at 29 ("[T]he remedy Congress created—the payment of any excess fees to the company—is similar to the traditional equity remedy of an 'accounting.'"); *Kalish*, 928 F.2d at 592 (noting that the return of "exorbitant" advisory fees is "restitutionary relief" that is "clearly equitable in nature regardless of whether it is called damages").[10]

---

[10] In their attempt to cast doubt on the long line of cases that have found that there is no right to a jury trial for Section 36(b) claims, Plaintiffs make reference to the Seventh Circuit's statement in *Kamen v.*

2.      Plaintiffs Seek Equitable Restitution Under *Pereira.*

Far from helping Plaintiffs, the Second Circuit's decision in *Pereira* confirms that the

relief Plaintiffs seek is equitable restitution.  After analyzing *Pereira*, Magistrate Judge Arpert

concluded that "[t]he designation of the relief Plaintiffs seek as equitable is, moreover, consistent

with Pereira's interpretation of Great-West—that a 'defendant must possess the funds at issue for

the remedy of equitable restitution to lie against them.'"  Report at 9-10 (quoting *Pereira*, 413

F.2d at 341) (emphasis added).

In *Pereira*, a bankruptcy trustee (acting on behalf of a defunct corporation) asserted a

breach of fiduciary duty claim against the corporation's former officers and directors based on

allegations that they improperly used corporate assets.  *Pereira*, 413 F.3d at 333.  The Second

Circuit addressed whether there was a right to a jury trial for the trustee's claims.  *Id.* at 333-41.

Citing the distinction between legal and equitable restitution articulated in *Great-West*, the court

held that because the funds at issue were never in the officers' or directors' possession, and only

sought to recover funds attributable to the corporation's loss, the trustee's claim was for

compensatory damages, rather than equitable restitution.  *Id*. at 339-41.  As Magistrate Judge

Arpert explained, the Second Circuit held that "[b]ecause it was 'undeniable [] that the Trustee

seeks only to recover funds attributable to [the company's] losses, not the director's unjust gain,'

the claims were for compensatory damages and, thus, triable to a jury."  Report at 8 (quoting

*Pereira*, 413 F.3d at 341) (emphasis added).  Here, in contrast, and as Magistrate Judge Arpert

recognized, the Plaintiffs seek to recover the allegedly excessive fees that were paid to

---

*Kemper Financial Services, Inc.* that *Terry* "appears to call into question the foundation for *Evangelist*
and similar holdings about § 36(b)."  Obj. at 19.  Plaintiffs made this same unavailing argument in their
Opposition Brief.  Opp. Br. at 23-24.  Far from undermining the Section 36(b) case law, the Seventh
Circuit in *Kamen* expressly adopted "both the holding and the rationale" of *Evangelist*, in which the First
Circuit squarely held that there is no right to a jury trial on Section 36(b) claims.  *Kamen*, 908 F.2d at
1351.  In so ruling, the court distinguished *Terry*, both on its facts and based on the different relief sought
in that case.  *Id.*

Defendants.  *See* Report at 8-9; Complaints, Prayer for Relief ¶ B (seeking "repayment of all unlawful and/or excessive fees paid to [Defendants]").[11]  Accordingly, *Pereira* is entirely consistent with Magistrate Judge Arpert's conclusion that the Plaintiffs seek equitable restitution.[12]

3.    <u>Equitable Restitution Does Not Require A Constructive Trust Or Equitable Lien With Respect To A Segregated Fund.</u>

Plaintiffs appear to argue that equitable restitution is only available where the funds sought to be recovered are held in a segregated account that could be subject to a constructive trust or equitable lien.  Obj. at 20-22.  Plaintiffs raised this same argument before Magistrate Judge Arpert, and Magistrate Judge Arpert rejected it.  *See* Opp. Br. at 21-22; Report at 10; Tr. at

---

[11] Plaintiffs note that in *Pereira*, the Second Circuit suggested that *Great-West* "cuts across the grain" of the court's prior decision in *Strom v. Goldman Sachs & Co.*, 202 F.3d 138 (2d Cir. 1999) and noted that "several courts have already agreed that *Great-West* has overruled our decision in *Strom*."  Obj. at 15 (citing *Pereira*, 413 F.3d at 339-40).  These comments in *Pereira* are irrelevant.  In *Strom*, the Second Circuit found that the monetary relief sought by plaintiffs was equitable "even though the defendant did not actually *possess* the funds in question."  *Pereira*, 413 F.3d at 339 (citing *Strom*, 202 F.3d at 144).  In contrast, Section 36(b) claims seek the return of fees that were *paid to* an investment adviser.  *See, e.g., In re Gartenberg*, 636 F.2d at 18 (finding that the issue is "whether the Trust adviser violated its fiduciary obligations by charging an exorbitant fee" and "[i]f it did, the excessive portion of the fee must be returned"); *Kalish*, 928 F.2d at 592 (noting that the return of "exorbitant" advisory fees is "restitutionary relief").

[12] Plaintiffs cite *Blue Cross & Blue Shield of Minn. v. Wells Fargo Bank, N.A.*, No. 11-2529, 2013 WL 2434875 (D. Minn. June 4, 2013) and *Soley v. Wasserman*, No. 08-9262, 2013 WL 1655989 (S.D.N.Y. Apr. 17, 2013), apparently for their proposition that under *Pereira*, Plaintiffs are entitled to a jury trial. Each of these cases is inapposite.  In *Blue Cross & Blue Shield*, the court found that the plaintiffs were entitled to a jury trial for certain breach of fiduciary duty claims because the "damages sought by Plaintiffs . . . are, at their core, compensatory in nature; and compensatory damages are 'the classic form of *legal* relief.'"  *Blue Cross & Blue Shield of Minn.*, 2013 WL 243875, at *2.  Here, in contrast, Plaintiffs seek restitution and, as Magistrate Judge Arpert explained, Plaintiffs' mere labeling of their relief as "compensatory damages" does not defeat that the "actual relief" Plaintiffs seek is equitable restitution. Report at 8-9.  Likewise, in *Soley*, the court looked beyond the mere labels in the complaint and found that the plaintiff's claim for breach of fiduciary duty sought compensatory damages because "(1) Soley seeks to impose personal liability on Wasserman, rather than seeking return of particular funds in Wasserman's possession, and (2) Soley measures her damages based on her losses, and not merely on Wasserman's gain."  *Soley*, 2013 WL 1655989, at *2.  Here, in contrast, Plaintiffs (1) seek the return of particular funds in Defendants' possession and (2) restitution measured by Defendants' gain.  *See* Complaints, Prayer for Relief ¶ B (seeking "repayment of all unlawful and/or excessive fees"); Tr. at 28 (conceding that Plaintiffs seek only "return of the fees").

- 14 -

32-33 ("THE COURT:  You mean to suggest that . . . to recover the particular funds, that AXA would have to have the fees that were charged and paid by the funds sitting in some segregated account, unique to those charges of those particular funds in order to make this equitable restitution versus legal?  MR. LAKIND:  Yes, Your Honor.  THE COURT:  As opposed to in their general coffers?  MR LAKIND:  Right. . . . .").

As Magistrate Judge Arpert explained, "the funds Plaintiffs seek need not be marked with a red 'X'.  It is enough that they can be clearly traced to the excessive fees allegedly charged by Defendants.  Because they can, Plaintiffs' remedy is for equitable restitution."  Report at 10. This conclusion is consistent with *Great-West*, as well as subsequent cases.  In *Great-West*, the Court indicated that equitable restitution is available so long as the "money or property identified as belonging in good conscience to the plaintiff could clearly be <u>traced</u> to particular funds or property in the defendant's possession."  *Great-West*, 534 U.S. at 213 (emphasis added).

Judge Cavanaugh of the District of New Jersey has held that there is no requirement under *Great-West* that the funds "improperly" transferred to a defendant be held in a segregated account in order for equitable restitution to lie.  *ACS HR Solutions, LLC v. Bonds*, No. 10-cv-4179, 2012 WL 3647399, at *3-4 (D.N.J. Aug. 22, 2012).  In *Bonds*, the plaintiff sought equitable restitution to recover retirement fund benefits that had been distributed to the defendant by mistake.  *Id*. at *1.  Citing *Great-West*, the defendant argued that because the funds at issue had been co-mingled with other funds in the defendant's account, equitable restitution was not available.  *Id*. at *3.  Judge Cavanaugh rejected this argument, explaining that "the court is sufficiently convinced that the funds improperly given to Defendant are fairly traceable through Defendant's accounts, equipment, and real property."  *Id.* at *4.  Judge Cavanaugh ultimately found that "[t]he fact that some of [the] funds have been co-mingled with funds not traceable to the improper payments does not destroy Plaintiff's case for [equitable] restitution."  *Id.*  Other

courts have also concluded that there is no requirement under *Great-West* that the funds be held in a segregated account.  *See Unum Life Ins. Co. of Amer. v. Lynch*, No. 04-cv-9007, 2006 WL 266562, at *3 (S.D.N.Y. Jan. 31, 2006) (applying *Great-West* and holding that although "[plaintiff] may have commingled [the] funds with other money which she spent," this "should not limit a Court of Equity from ordering equitable restitution"); *see also Nat'l Sec. Sys., Inc. v. Iola*, 700 F.3d 65, 101-102 (3d Cir. 2012) ("It is undisputed that restitution of ill-gotten commissions is an equitable remedy" and it was irrelevant that "a portion of [the] commissions" had been transferred to a third-party.); *United States v. Lane Labs-USA Inc.*, 427 F.3d 219, 231 (3rd Cir. 2005) (restitution was equitable because it sought funds that were "directly traceable to the [defendants'] offensive conduct").

Plaintiffs are also incorrect in their suggestion that equitable restitution requires a "constructive trust" or "equitable lien" that would give Plaintiff a "priority claim" over Defendants' "general creditors."  Obj. at 21-22.  Money judgments always have been available for restitution, and *Great-West* did nothing to change this.  *Skretvedt v. E.I. DuPont De Nemours*, 372 F.3d 193, 212-13 (3d Cir. 2004) (*Great-West* is not a "*per se* pronouncement that where a plaintiff seeks an award that ultimately involves money . . . such an award is a claim for legal relief."); *Lane Labs-USA Inc.*, 427 F.3d at 231 (finding that the "reimbursement of the money consumers paid Appellants for products that violated the FDCA" qualified as equitable restitution); *United States ex rel. Drakeford v. Tuomey Healthcare Sys., Inc.*, 675 F.3d 394, 403 n.15 (4th Cir. 2012) ("[A] money damages award may be a form of equitable relief if it is restitutionary.") (internal quotation marks omitted); *Brosted v. Unum Life Ins. Co. of Am.*, 421 F.3d 459, 466 (7th Cir. 2005) ("[R]estitution may be in the form of monetary relief.") (internal quotation marks omitted).

Plaintiffs cite no authority for the proposition that equitable restitution only applies where there is a segregated fund over which a plaintiff could obtain a constructive trust or equitable lien.  In *Sereboff v. Mid Atlantic Medical Services, Inc.*, a case cited by Plaintiffs, the Court merely noted that in *Great-West*, the Court "examined cases and secondary legal materials to determine if the relief would have been equitable '[i]n the days of the divided bench,'" and explained that, historically, "one feature of equitable restitution was that it sought to impose a constructive trust or equitable lien on 'particular funds or property in the defendant's possession.'"  547 U.S. 356, 362 (2006).  Plaintiffs' citation to the Restatement (Third) of Restitution and Unjust Enrichment is equally unavailing.  Although the Restatement notes that "[i]f restitution to the claimant is accomplished exclusively by a judgment for money, without resort to any of the ancillary remedial devices traditionally available in equity but not at law, the remedy is presumptively legal," the Restatement explains that this presumption is a mere "tautology" and an "[e]lementary generalization" of "limited utility."  Restatement (Third) of Restitution and Unjust Enrichment § 4 cmt. d (2011); *see also id.* (while damages are traditionally thought of as a legal remedy, "[t]his does not mean that any remedy by which the defendant is required to pay money is necessarily legal rather than equitable").  Accordingly, Magistrate Judge Arpert properly concluded that there is no requirement that the funds sought by Plaintiffs be held in a segregated account in order to find that Plaintiffs' Section 36(b) claims seek equitable restitution.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant Defendants' Motion to Strike Plaintiffs' Demands For A Jury Trial.

Dated:  July 26, 2013

BLANK ROME LLP

By:  /s/ Jonathan M. Korn
    Jonathan M. Korn
    301 Carnegie Center, 3rd Floor
    Princeton, NJ 08540

MILBANK, TWEED, HADLEY & M$^{c}$CLOY LLP
    James N. Benedict (*pro hac vice*)
    Sean M. Murphy (*pro hac vice*)
    Robert C. Hora (*pro hac vice*)
    1 Chase Manhattan Plaza
    New York, NY  10005-1413
    (212) 530-5000

*Attorneys for Defendants*