# SZAFERMAN LAKIND

Szaferman, Lakind, Blumstein & Blader, P.C.
Attorneys at Law

101 Grovers Mill Road, Suite 200
Lawrenceville, NJ 08648
p: 609.275.0400
f: 609.275.4511
www.szaferman.com

Arnold C. Lakind
Barry D. Szaferman
Jeffrey P. Blumstein
Steven Blader
Brian G. Paul+
Craig J. Hubert++
Michael R. Paglione*
Lionel J. Frank**
Jeffrey K. Epstein+
Stuart A. Tucker
Scott P. Borsack***
Daniel S. Sweetser*
Robert E. Lytle
Janine G. Bauer***
Daniel J. Graziano Jr.
Nathan M. Edelstein**
Bruce M. Sattin***
Gregg E. Jaclin**
Robert P. Panzer
Benjamin T. Branche*
Eric M. Stein**

Of Counsel
Stephen Skillman
Linda R. Feinberg
Anthony J. Parrillo
Paul T. Koenig, Jr.
Robert A. Gladstone
Janine Danks Fox*
Richard A. Catalina Jr.*†
E. Elizabeth Sweetser

Robert G. Stevens Jr.**
Michael D. Brottman**
Lindsey Moskowitz Medvin**
Mark A. Fisher
Robert L. Lakind***
Thomas J. Manzo**
Carley Ward**
Melissa A. Chimbangu
Kathleen O'Brien
Steven A. Lipstein**
Yarona Y. Liang#
Brian A. Heyesey
Mengyi *Jason* Ye
John O'Leary***
Christopher S. Myles

August 25, 2015

+Certified Matrimonial Attorney
++Certified Civil and Criminal Trial Attorney
*NJ & PA Bars
**NJ & NY Bars
***NJ, NY & PA Bars
#NY Bar
†U.S. Patent & Trademark Office

**Via ECF**
The Honorable Douglas E. Arpert, U.S.M.J.
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street, Courtroom 6W
Trenton, NJ 08608

Re: **Sivolella, et al. v. AXA Equitable Life Ins. Co., et al.**
**Civil Action No.: 3:11-cv-04194 (PGS)(DEA)**
**Sanford, et al. v. AXA Equitable Funds Mgmt Group, LLC**
**Civil Action No.: 3:13-cv-312 (PGS)(DEA)**

Dear Judge Arpert:

We represent Plaintiffs in this consolidated action. The purpose of this letter is to request the Court to reopen discovery for the limited purpose of allowing Plaintiffs to obtain critical discovery related to Defendants' in-house counsel and litigation counsel's admitted creation of three documents that Judge Sheridan recently ruled to be admissible. As explained below, there is good cause to grant Plaintiffs' request, Defendants will not be prejudiced by the requested relief and the granting of this limited discovery will not delay the yet to be scheduled Pre-Trial Conference or the January 11, 2016 trial date.

## Background

After Plaintiffs filed this action, Defendants' in-house counsel with the assistance of the law firm hired to defend it, the Milbank Firm, created three "Summary Charts" purporting to set forth the services that Defendant performs in comparison to the services that Defendant delegates to sub-contractors. The Charts go to the crux of the central issue in this litigation -- whether the Defendants' fees are excessive for the services it actually performs for Plaintiffs' Funds. The Charts were created after this action was filed and contain no supporting reference or citation for the scores of self-serving, conclusory statements contained therein. After Defendants' attorneys created the Summary Charts, Defendants began to include the Charts in the materials they submit annually to the Board of Trustees for the Plaintiffs' Funds in support of Defendants' request for the Board's approval of Defendants' fees. Moreover, Defendants' experts relied heavily on the



Charts in forming their opinions and Defendants relied heavily on the Charts in their summary judgment papers in support of the level of services they allege they provide in return for the exorbitant fees they collect from Plaintiffs' Funds.

Defendants produced over 1.2 million pages of documents in discovery. However, Defendants did not provide metadata or identifiers that indicated that the Defendants' in-house counsel and the Milbank Firm were involved with the creation of the Summary Charts. Certainly, Plaintiffs had no reason to suspect that Defendants' in-house attorneys and litigation counsel were responsible for creating charts of alleged services Defendants profess to perform for submission to the Board.

Plaintiffs first discovered that Defendants' in-house counsel and the Milbank Firm were involved in the creation of the Charts during the deposition of Defendants' expert witness, Marianne Smythe, on October 29, 2014 – five months after fact discovery ended. *See Ex. A*, Smythe Tr. 130-133. Based on Ms. Smythe's deposition testimony, shortly thereafter Plaintiffs served Requests for Admissions on November 12, 2014 to reveal the full extent to which in-house counsel and litigation counsel were involved in the creation of the Charts. On December 12, 2014, Defendants admitted that in-house counsel prepared each of the three Charts post-litigation and that "one or more attorneys from Milbank provided comments on" each of the three Charts. *See Ex. B*, Defendants' Response to Request for Admission ("RFAs") Nos. 2, 3, 9, 10, 15, 16, 22 and 23.

On January 23, 2015 (three weeks after receipt of Defendants' Responses to Plaintiffs' RFAs), Plaintiffs filed a motion *in limine* to bar the admission of the Summary Charts contemporaneously with the parties' motions for summary judgment. Plaintiffs contended that the Charts are hearsay and do not fall within any exception to the hearsay rule. Defendants' motion heavily relied on the Charts to depict the alleged services they provide to Plaintiffs' Funds. On August 5, 2015, the Court denied both parties' summary judgment motions and Plaintiffs' *in limine* motion to exclude the Summary Charts. (ECF No. 168).

Immediately following the Court's ruling, Plaintiffs via email requested Defendants to produce the following discovery relating to the creation of the Charts:

Given the Court's ruling on the admissibility of the Summary Charts, kindly provide Plaintiffs with the following discovery on Charts:

1.      All hard copy documents and electronically stored information (whether included in email servers, computer hard drives or network folders) related to the creation, drafting, review and development of any/all of the 3 Summary Charts, including but not limited to documents created by and/or exchanged between defendants' In-House Counsel's Office and the Milbank Firm regarding the Summary Chart(s) and

2.      All electronic and hard copy drafts or versions of the Summary Charts.

**SZAFERMAN  LAKIND**

August 25, 2015
Page 3

Once we receive the documents, we request the limited depositions of Ms. Louie and the Milbank attorneys revealed to have been involved in the creation, drafting, review, etc. of the Summary Charts. We realize that this request comes after the expiration of the discovery deadline, however we believe sufficient cause exists to re-open discovery on this limited matter given the Court's ruling on the Summary Charts.

*See* Ex. C, August 6, 2015 D. Sweetser email to R. Hora. On August 12th, Defendants informed Plaintiffs of their refusal to provide the requested discovery due to the expired discovery end-date and Defendants' perception that Plaintiffs should have known to ask their in-house counsel, Patty Louie, about the creation of the Summary Charts when she was deposed on other issues. *See* Ex. D, August 12, 2015 R. Hora email to D. Sweetser.

### Argument

Fed. R. Civ. P. 16(b)(4) allows discovery to be reopened for "good cause." In *Glennon v. Wing Enterprises, Inc.,* No. 10-cv-0324 (JAP)(DEA), 2011 WL 5825783, at *4 (D.N.J. Nov. 17, 2011), this Court identified the factors to be considered when deciding if good cause exists:

'[T]he factors to be considered in resolving' whether to reopen discovery are whether there was 'bad faith on the part of the party seeking to call witnesses not listed in ... [a] pretrial memorandum', the 'ability of the party to have discovered the witnesses earlier', the 'validity of the excuse offered by the party', the 'willfulness of the party's failure to comply with the court's order', 'the parties' intent to mislead or confuse his adversary', 'and ... the importance of the excluded testimony'.

*Glennon,* 2011 WL 5825783 at *4 (quoting *Meyers v. Pennypack Woods Home Ownership Ass'n,* 559 F.2d 894, 904–05 (3d Cir.1977).

Applying these factors to the case now before the Court, it is clear that substantial grounds and just cause exist to reopen discovery on the limited matter at issue. Plaintiffs had no reason whatsoever to suspect during fact discovery that in-house counsel or the Milbank Firm were responsible for creating the Summary Charts. It was not until months after fact discovery ended that Plaintiffs first learned from Ms. Smythe's deposition that Defendants' attorneys played a role in the creation of the Charts. Thereafter, Plaintiffs expeditiously served Requests for Admission on Defendants to probe the extent to which in-house and litigation counsel were involved in creating the Charts. When Defendants' Response to Requests for Admission revealed that in-house counsel prepared the Summary Charts <u>and</u> the Milbank Firm contributed to the creation of the Charts, Plaintiffs timely filed a motion *in limine* to bar the subject evidence. While the Court denied Plaintiffs' motion, it cannot be refuted that Plaintiffs' motion to exclude was filed in good faith and based on viable legal arguments.



August 25, 2015
Page 4

Given the Court's ruling allowing the Charts into evidence, Plaintiffs will be severely prejudiced in their ability to effectively cross-examine defense witnesses at trial on this critical evidence if they are denied the limited discovery they seek in this application. Given Defendants' reliance on the Summary Chart in their summary judgment papers and the defense experts' reliance on the Charts in forming their opinions, the Charts are certain to play a critical role in the Defendants' case at trial. Plaintiffs must be permitted to probe in-house counsel and the Milbank Firm's communications about the Summary Charts and their respective roles in creating the Charts. This limited discovery is essential to Plaintiffs having a fair opportunity to cross-examine defense witnesses on the Charts and attack the credibility of the Charts at trial. If Plaintiffs' application is granted, Defendants will suffer minimal if any prejudice. Surely, the limited scope of documents requested and a limited number of depositions of the defense attorneys involved in the creation of Summary Charts will not unduly burden the defense. Moreover, the Court's granting the requested discovery will not delay the Pre-Trial Conference (which has yet to be scheduled) or the January 11, 2016 trial date. In sum, there is an abundance of good and just cause to allow the limited discovery at issue and concurrently, no prejudice to the defense or delay to the these proceedings.

For all of the foregoing reasons, the Court is urged to grant Plaintiffs' request to reopen discovery to allow Plaintiffs to take the limited discovery described in counsel's August 6, 2015 email referenced above.  Alternatively, the Plaintiffs respectfully request that the Court hold a L.Civ.R. 16.1(f)(1) conference call to assist the parties with the resolution of this matter.

The Court's consideration of this request is greatly appreciated.

Respectfully submitted,

SZAFERMAN, LAKIND,
BLUMSTEIN & BLADER, P.C.

Daniel S. Sweetser

Enclosures
c:      All Counsel (*via ECF*)

# EXHIBIT A

Page 1

1    MARY ANN SIVOLELLA                :

                                       :   CASE NO: 11-4194

2            Plaintiff,                :

                                       :

3            vs.                       :

                                       :

4    AXA EQUITABLE LIFE INSURANCE      :

     COMPANY AND AXA EQUITABLE FUND:

5    MANAGEMENT GROUP, LLC             :

                                       :

6            Defendants.               :

7                        - - -

8            Wednesday, October 29, 2014

9                        - - -

10           Videotaped deposition of MARIANNE K.

11   SMYTHE, taken at the law offices of Milbank,

12   Tweed, Hadley & McCloy, LLP, 1850 K Street, N.W.,

13   Suite 1100, Washington, DC 20006, commencing at

14   10:17 a.m., before Stayce Lawson, a Court Reporter

15   and Notary Public for the District of Columbia.

16

17

18

19

20

21

22

23

24

25

Page 130

1     A.   And my answer was I think it was of great
2   importance to Gary Schpero.   I think I read that in
3   his testimony.
4     Q    Okay.  Now, on the bottom of page 3,
5   there's a sentence that reads:  "The trust
6   investment adviser is AXA FMG" -- which we have been
7   calling it FMG.
8     A.   Right.
9     Q    "AXA FMG is registered as an investment
10  adviser under the Investment Advisers Act of 1940"
11  -- and then there is a parenthetical -- "AXA FMG
12  also serves as the administrator of the trust and
13  subcontracts some of those services to JPMorgan
14  Chase.
15    A.   Yes, sir.
16    Q    What are the services that are
17  subcontracted to JPMorgan Chase?
18    A.   My recollection, again, I don't have a
19  photographic memory, but my recollection is things
20  such as NAV calculations, some of the financial
21  reporting, some of the transactional reporting that
22  can be mechanized, that is, if admin is
23  cerebellar -- kind of the things that you do without
24  thinking about it, but they have to be done well or
25  you don't walk, that JPMorgan Chase was doing those

Page 131

```
 1    things that required largely mechanical actions.
 2        Q    In your views as to the scope of
 3    JPMorgan's services, what did you review to form
 4    those views?
 5        A.   I reviewed -- I believe what I reviewed
 6    was AXA FMG's description of its services and
 7    discussions.
 8             But I -- I can't frankly tell you --
 9    can I look at my report and see what I said I looked
10    at?
11        Q    Please.  Please.
12        A.   Because I can't remember from...
13             MR. LAROCHE:  Go to page -- starting at
14        page 30, Marianne, is where you talk about
15        administrative services.
16             THE WITNESS:  Thank you.  Okay, so I
17        looked at the Board materials presented,
18        Exhibit 10, they laid out what AXA FMG did.
19        And then there is an Exhibit 53, which has a
20        chart of the services done by the manager
21        administrator, and subadministrator.
22    BY MR. LAKIND::
23        Q    Did you know who prepared those two
24    charts, Exhibit 10 and 53 to your report?
25        A.   I think they were prepared by AXA FMG.
```

1    Q    Do you know if counsel to AXA FMG prepared

2    them or do you know if non-attorneys prepared them?

3    A    I can't answer that without breaking

4    privilege.

5    Q    Well, it calls for a fact question --

6         MR. LAROCHE:  Yeah.

7         MR. LAKIND:  So you really can.

8         MR. LAROCHE:  If you know the answer of

9    who, you can answer that.

10         THE WITNESS:  My understanding is that it

11    was a collaboration done between and among

12    lawyers and staff.

13    BY MR. LAKIND::

14    Q    And who were the lawyers?

15    A    I think some of them might be sitting in

16    this room.

17    Q    And who are the lawyers that are sitting

18    in this room that -- that participated in preparing

19    the charts?

20    A    I'm not saying that they participated in

21    preparing --

22    Q    Collaborated.

23    A    -- the charts; I'm saying they were part,

24    maybe, part of the collaborative process.  I

25    believe, possibly, Mr. LaRoche and Mr. Benedict were

Page 133

1    involved in that.

2         Q    How is that you came to the belief that

3    Mr. LaRoche and Mr. Benedict collaborated in the

4    preparation of those charts?

5              MR. LAROCHE:  Objection.  I will instruct

6         you not to answer on privilege grounds.

7              MR. LAKIND:  Don't respond if you learned

8         from counsel.  But if you learned it in another

9         fashion, I would like you to please respond.

10             THE WITNESS:  Then I can't respond.

11   BY MR. LAKIND::

12        Q    Okay.  Okay.  Thank you.

13             Did you look at the

14   sub-administration agreement between FMG and

15   JPMorgan Chase?

16        A    No, I did not.

17        Q    Okay.  Why was it that you opted not to

18   look at the sub-administration agreement?

19        A    I read, I guess it was testimony.  I can't

20   remember where else I might have read it.

21             But that -- I think it was testimony

22   that there was the agreement between AXA FMG and the

23   trust was -- would have gotten an A in my contracts

24   class.  That is, it was, in fact, an accurate

25   reflection of the services that were done.  And

# EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARY ANN SIVOLELLA, for the use and benefit of the EQ/Common Stock Index Portfolio, the EQ/Equity Growth PLUS Portfolio, the EQ/Equity 500 Index Portfolio, the EQ/Large Cap Value PLUS Portfolio, the EQ/Global Multi-Sector Equity Portfolio, the EQ/Mid Cap Value PLUS Portfolio, the EQ/GAMCO Small Company Value, and the EQ/Intermediate Government Bond Index Portfolio, | Civil Action No. 3:11-cv-04194 (PGS)<br><br>and<br><br>Civil Action No. 3:13-cv-00312 (PGS) |
| Plaintiff, | |
| vs. | |
| AXA EQUITABLE LIFE INSURANCE COMPANY and AXA EQUITABLE FUNDS MANAGEMENT GROUP, LLC, | |
| Defendants. | |
| GLENN D. SANFORD, *et al.*, | |
| Plaintiffs, | |
| vs. | |
| AXA EQUITABLE FUNDS MANAGEMENT GROUP, LLC | |
| Defendant. | |

## DEFENDANTS' RESPONSES AND OBJECTIONS TO PLAINTIFFS' FIRST REQUEST FOR ADMISSIONS

Pursuant to Rule 36 of the Federal Rules of Civil Procedure and Local Rule 36.1, defendants AXA Equitable Life Insurance Company and AXA Equitable Funds Management Group, LLC (together, "Defendants"), by their undersigned counsel, hereby object and respond to Plaintiffs' First Request for Admissions ("Requests"), dated November 12, 2014. Defendants incorporate the General Responses and Objections into each of the responses below, as though set forth therein.

1

Provided by AXA Equitable Funds Management Group, LLC and Sub-Advisers Pursuant to

Investment Management and Investment Advisory Agreements" that Defendant(s) provided to

the EQAT Board with the 2012 15(c) materials.

**Response to Request For Admission No. 2:**

Defendants hereby incorporate by reference the General Responses and Objections stated

above as though fully set forth herein.

Defendants further object to the Request as improper to the extent it seeks disclosure of

information protected by attorney-client privilege and work-product doctrine.  Subject to and

without waiver of the foregoing General and specific objections, Defendants deny the Request,

except admit that one or more attorneys from Milbank provided comments on the document

entitled "Summary Chart of Services Provided by AXA Equitable Funds Management Group,

LLC and Sub-Advisers Pursuant to Investment Management and Investment Advisory

Agreements" that Defendant(s) provided to the EQAT Board with the 2012 15(c) materials.

**Request For Admission No. 3:**

If you deny the prior Request, please admit that one or more attorneys from Milbank

provided advice in connection with the preparation of the document entitled "Summary Chart of

Services Provided by AXA Equitable Funds Management Group, LLC and Sub-Advisers

Pursuant to Investment Management and Investment Advisory Agreements" that Defendant(s)

provided to the EQAT Board with the 2012 15(c) materials.

**Response to Request For Admission No. 3:**

Defendants hereby incorporate by reference the General Responses and Objections stated

above as though fully set forth herein.

Defendants further object to the Request as improper to the extent it seeks disclosure of

information protected by attorney-client privilege and work-product doctrine.  Subject to and

6

without waiver of the foregoing General and specific objections, Defendants deny the Request, except admit that one or more attorneys from Milbank provided comments on the document entitled "Summary Chart of Services Provided by AXA Equitable Funds Management Group, LLC and Sub-Advisers Pursuant to Investment Management and Investment Advisory Agreements" that Defendant(s) provided to the EQAT Board with the 2012 15(c) materials.

**Request For Admission No. 4:**

Please admit that one or more attorneys from AXA Equitable Funds Management Group, LLC, or AXA Equitable Life Insurance Company (any and all attorneys from either of these companies is hereinafter referred to as "AXA's In- House Counsel"), prepared the document entitled "Summary Chart of Services Provided by AXA Equitable Funds Management Group, LLC and Sub-Advisers Pursuant to Investment Management and Investment Advisory Agreements" that Defendants provided to the EQAT Board with the 2012 15(c) materials.

**Response to Request For Admission No. 4:**

Defendants hereby incorporate by reference the General Responses and Objections stated above as though fully set forth herein.

Defendants further object to the Request as improper to the extent it seeks disclosure of information protected by attorney-client privilege and work-product doctrine. Subject to and without waiver of the foregoing General and specific objections, Defendants deny the Request, except admit that, based on input from non-attorney employees at AXA Equitable Funds Management Group, LLC and/or AXA Equitable Life Insurance Company and in response to requests from the EQAT Board, one or more attorneys from AXA Equitable Funds Management Group, LLC or AXA Equitable Life Insurance Company prepared the document entitled "Summary Chart of Services Provided by AXA Equitable Funds Management Group, LLC and

Investment Manager and Sub-Advisers Pursuant to the Investment Management and Investment Advisory Agreements" that Defendant(s) provided to the EQAT Board with the 2013 15(c) materials.[4]

**Request For Admission No. 9:**

If you deny the prior Request, please admit that one or more attorneys from Milbank were involved in the preparation of the documents entitled "Summary Chart of Services Provided by the Investment Manager and Sub-Advisers Pursuant to the Investment Management and Investment Advisory Agreements" that Defendant(s) provided to the EQAT Board with the 2013 15(c) materials.

**Response to Request For Admission No. 9:**

Defendants hereby incorporate by reference the General Responses and Objections stated above as though fully set forth herein.

Defendants further object to the Request as improper to the extent it seeks disclosure of information protected by attorney-client privilege and work-product doctrine. Subject to and without waiver of the foregoing General and specific objections, Defendants deny the Request, except admit that one or more attorneys from Milbank provided comments on the document entitled "Summary Chart of Services Provided by the Investment Manager and Sub-Advisers Pursuant to the Investment Management and Investment Advisory Agreements" that Defendant(s) provided to the EQAT Board with the 2013 15(c) materials.

**Request For Admission No. 10:**

If you deny the prior Request, please admit that one or more attorneys from Milbank provided advice in connection with the preparation of the document entitled "Summary Chart of Services Provided by the Investment Manager and Sub-Advisers Pursuant to the Investment

---

[4] See D_AXA02643 80-87 (Identified as Exhibit 4.1 to the 15(c) Board materials).

11

Management and Investment Advisory Agreements" that Defendant(s) provided to the EQAT
Board with the 2013 15(c) materials.

**Response to Request For Admission No. 10:**

Defendants hereby incorporate by reference the General Responses and Objections stated
above as though fully set forth herein.

Defendants further object to the Request as improper to the extent it seeks disclosure of
information protected by attorney-client privilege and work-product doctrine. Subject to and
without waiver of the foregoing General and specific objections, Defendants deny the Request,
except admit that one or more attorneys from Milbank provided comments on the document
entitled "Summary Chart of Services Provided by the Investment Manager and Sub-Advisers
Pursuant to the Investment Management and Investment Advisory Agreements" that
Defendant(s) provided to the EQAT Board with the 2013 15(c) materials.

**Request For Admission No. 11:**

Please admit that one or more attorneys from AXA's In-House Counsel prepared the
document entitled "Summary Chart of Services Provided by the Investment Manager and Sub-
Advisers Pursuant to the Investment Management and Investment Advisory Agreements" that
Defendants provided to the EQAT Board with the 2013 15(c) materials.

**Response to Request For Admission No. 11:**

Defendants hereby incorporate by reference the General Responses and Objections stated
above as though fully set forth herein.

Defendants further object to the Request as improper to the extent it seeks disclosure of
information protected by attorney-client privilege and work-product doctrine. Subject to and
without waiver of the foregoing General and specific objections, Defendants deny the Request,
except admit that, based on input from non-attorney employees at AXA Equitable Funds

12

Mutual Funds Service Agreement and Sub- Administrative Services" that Defendant(s) provided to the EQAT Board with the 2013 15(c) materials.[5]

**Response to Request For Admission No. 14:**

Defendants hereby incorporate by reference the General Responses and Objections stated above as though fully set forth herein.

Defendants further object to the Request as improper to the extent it seeks disclosure of information protected by attorney-client privilege and work-product doctrine. Subject to and without waiver of the foregoing General and specific objections, Defendants deny that one or more attorneys from Milbank prepared the document entitled "Summary Chart of Services Provided by the Administrator Sub-Administrator Pursuant to the Mutual Funds Service Agreement and Sub- Administrative Services" that Defendant(s) provided to the EQAT Board with the 2013 15(c) materials.[6]

**Request For Admission No. 15:**

If you deny the prior Request, please admit that one or more attorneys from Milbank were involved in the preparation of the documents entitled "Summary Chart of Services Provided by the Administrator Sub-Administrator Pursuant to the Mutual Funds Service Agreement and Sub-Administrative Services" that Defendant(s) provided to the EQAT Board with the 2013 15(c) materials.

**Response to Request For Admission No. 15:**

Defendants hereby incorporate by reference the General Responses and Objections stated above as though fully set forth herein.

---

[5] See D_AXA02643 88-99 (Identified as Exhibit 4.2 to the 15(c) Board materials).
[6] See D_AXA02643 88-99 (Identified as Exhibit 4.2 to the 15(c) Board materials).

Defendants further object to the Request as improper to the extent it seeks disclosure of information protected by attorney-client privilege and work-product doctrine.  Subject to and without waiver of the foregoing General and specific objections, Defendants deny the Request, except admit that one or more attorneys from Milbank provided comments on the document entitled "Summary Chart of Services Provided by the Administrator Sub-Administrator Pursuant to the Mutual Funds Service Agreement  and Sub-Administrative Services" that Defendant(s) provided to the EQAT Board with the 2013 15(c) materials.

**Request For Admission No. 16:**

If you deny the prior Request, please admit that one or more attorneys from Milbank provided advice in connection with the preparation of the document entitled "Summary Chart of Services Provided by the Administrator Sub- Administrator Pursuant to the Mutual  Funds Service Agreement and Sub- Administrative Services" that Defendant(s) provided to the EQAT Board with the 2013 15(c) materials.

**Response to Request For Admission No. 16:**

Defendants hereby incorporate by reference the General Responses and Objections stated above as though fully set forth herein.

Defendants further object to the Request as improper to the extent it seeks disclosure of information protected by attorney-client privilege and work-product doctrine.  Subject to and without waiver of the foregoing General and specific objections, Defendants deny the Request, except admit that one or more attorneys from Milbank provided comments on the document entitled "Summary Chart of Services Provided by the Administrator Sub-Administrator Pursuant to the Mutual Funds Service Agreement  and Sub-Administrative Services" that Defendant(s) provided to the EQAT Board with the 2013 15(c) materials.

**Request For Admission No. 21:**

Please admit that one or more attorneys from Milbank prepared the document entitled "Summary Chart of Services Provided by the Investment Manager, Administrator Sub-Administrator Pursuant to the Investment Management, Mutual Funds Service Agreement and Sub-Administrative Services Agreement" that Defendant(s) provided to the EQAT Board with the 2013 15(c) materials.

**Response to Request For Admission No. 21:**

Defendants hereby incorporate by reference the General Responses and Objections stated above as though fully set forth herein.

Defendants further object to the Request as improper to the extent it seeks disclosure of information protected by attorney-client privilege and work-product doctrine. Subject to and without waiver of the foregoing General and specific objections, Defendants deny that one or more attorneys from the Milbank prepared the document entitled "Summary Chart of Services Provided by the Investment Manager, Administrator Sub-Administrator Pursuant to the Investment Management, Mutual Funds Service Agreement and Sub-Administrative Services Agreement" that Defendant(s) provided to the EQAT Board with the 2013 15(c) materials.

**Request For Admission No. 22:**

If you deny the prior Request, please admit that one or more attorneys from Milbank were involved in the preparation of the documents entitled "Summary Chart of Services Provided by the Investment Manager, Administrator Sub- Administrator Pursuant to the Investment Management, Mutual Funds Service Agreement and Sub-Administrative Services Agreement" that Defendant(s) provided to the EQAT Board with the 2013 15(c) materials.

**Response to Request For Admission No. 22:**

Defendants hereby incorporate by reference the General Responses and Objections stated above as though fully set forth herein.

Defendants further object to the Request as improper to the extent it seeks disclosure of information protected by attorney-client privilege and work-product doctrine. Subject to and without waiver of the foregoing General and specific objections, Defendants deny the Request, except admit that one or more attorneys from Milbank provided comments on the document entitled "Summary Chart of Services Provided by the Investment Manager, Administrator Sub-Administrator Pursuant to the Investment Management, Mutual Funds Service Agreement and Sub-Administrative Services Agreement" that Defendant(s) provided to the EQAT Board with the 2013 15(c) materials.

**Request For Admission No. 23:**

If you deny the Prior Request, please admit that one or more attorneys from Milbank provided advice in connection with the preparation of the document entitled "Summary Chart of Services Provided by the Investment Manager, Administrator Sub-Administrator Pursuant to the Investment Management, Mutual Funds Service Agreement and Sub-Administrative Services Agreement" that Defendant(s) provided to the EQAT Board with the 2013 15(c) materials.

**Response to Request For Admission No. 23:**

Defendants hereby incorporate by reference the General Responses and Objections stated above as though fully set forth herein.

Defendants further object to the Request as improper to the extent it seeks disclosure of information protected by attorney-client privilege and work-product doctrine. Subject to and without waiver of the foregoing General and specific objections, Defendants deny the Request, except admit that one or more attorneys from Milbank provided comments on the document

21

entitled "Summary Chart of Services Provided by the Investment Manager, Administrator Sub-Administrator Pursuant to the Investment Management, Mutual Funds Service Agreement and Sub-Administrative Services Agreement" that Defendant(s) provided to the EQAT Board with the 2013 15(c) materials.

**Request For Admission No. 24:**

Please admit that one or more attorneys from AXA's In-House Counsel prepared the document entitled "Summary Chart of Services Provided by the Investment Manager, Administrator Sub-Administrator Pursuant to the Investment Management, Mutual Funds Service Agreement and Sub-Administrative Services Agreement" that Defendants provided to the EQAT Board with the 2013 15(c) materials.

**Response to Request For Admission No. 24:**

Defendants hereby incorporate by reference the General Responses and Objections stated above as though fully set forth herein.

Defendants further object to the Request as improper to the extent it seeks disclosure of information protected by attorney-client privilege and work-product doctrine. Subject to and without waiver of the foregoing General and specific objections, Defendants deny the Request, except admit that, based on input from non-attorney employees at AXA Equitable Funds Management Group, LLC and/or AXA Equitable Life Insurance Company and in response to requests from the EQAT Board, one or more attorneys from AXA Equitable Funds Management Group, LLC or AXA Equitable Life Insurance Company prepared the document entitled "Summary Chart of Services Provided by the Investment Manager, Administrator Sub-Administrator Pursuant to the Investment Management, Mutual Funds Service Agreement and Sub-Administrative Services Agreement" that Defendant(s) provided to the EQAT Board with the 2013 15(c) materials.

22

# EXHIBIT C

**Christopher S. Myles**

| | |
|---|---|
| **From:** | Daniel S. Sweetser |
| **Sent:** | Thursday, August 06, 2015 3:00 PM |
| **To:** | Hora, Robert |
| **Cc:** | Murphy, Sean; Benedict, James N. (JBenedict@milbank.com); Arnold C. Lakind; Robert L. Lakind; Christopher S. Myles; Christopher S. Kwelty; Mark A. Fisher; Robert G. Stevens, Jr.; Karen L. Cortesini |
| **Subject:** | Request for Discovery on the Summary Charts |

Rob,

Given the Court's ruling on the admissibility of the Summary Charts, kindly provide Plaintiffs with the following discovery on Charts:

1. All hard copy documents and electronically stored information (whether included in email servers, computer hard drives or network folders) related to the creation, drafting, review and development of any/all of the 3 Summary Charts, <u>including but not limited to</u> documents created by and/or exchanged between defendants' In-House Counsel's Office and the Milbank Firm regarding the Summary Chart(s) and

2.
3.
    2. All electronic and hard copy drafts or versions of the Summary Charts.

Once we receive the documents, we request the limited depositions of Ms. Louie and the Milbank attorneys revealed to have been involved in the creation, drafting, review, etc. of the Summary Charts. We realize that this request comes after the expiration of the discovery deadline, however we believe sufficient cause exists to re-open discovery on this limited matter given the Court's ruling on the Summary Charts.

Thank you.

Dan

Daniel S. Sweetser, Esquire
Szaferman Lakind
101 Grovers Mill Road, Suite 200
Lawrenceville, NJ 08648
Phone 609-275-0400
Fax 609-275-4511
dsweetser@szaferman.com
www.szaferman.com



# EXHIBIT D

**Christopher S. Myles**

| | |
|---|---|
| **From:** | Hora, Robert <RHora@milbank.com> |
| **Sent:** | Wednesday, August 12, 2015 9:16 AM |
| **To:** | Daniel S. Sweetser |
| **Cc:** | Murphy, Sean; Benedict, James N.; Arnold C. Lakind; Robert L. Lakind; Christopher S. Myles; Christopher S. Kwelty; Mark A. Fisher; Robert G. Stevens, Jr.; Karen L. Cortesini |
| **Subject:** | RE: Request for Discovery on the Summary Charts |

Dan,

Defendants object to any additional discovery regarding the summary charts.   Among other things, discovery is long over.  Fact discovery closed on May 5, 2014.  Defendants produced the charts in question as early as March 2013
.  Plaintiffs had ample time before the fact discovery deadline to request whatever discovery they now seek.  Plaintiffs likewise ample opportunity to ask Ms. Louie about the charts during her November 26, 2013 deposition.

Regards,

Rob

_____

Robert C. Hora | **Milbank**
28 Liberty Street | New York, NY 10005-1413
T: +1 212.530.5170 | F: +1 212.822.5170
RHora@milbank.com | www.milbank.com

**From:** Daniel S. Sweetser [mailto:DSweetser@szaferman.com]
**Sent:** Thursday, August 06, 2015 3:00 PM
**To:** Hora, Robert
**Cc:** Murphy, Sean; Benedict, James N.; Arnold C. Lakind; Robert L. Lakind; Christopher S. Myles; Christopher S. Kwelty; Mark A. Fisher; Robert G. Stevens, Jr.; Karen L. Cortesini
**Subject:** Request for Discovery on the Summary Charts

Rob,

Given the Court's ruling on the admissibility of the Summary Charts, kindly provide Plaintiffs with the following discovery on Charts:

1.  All hard copy documents and electronically stored information (whether included in email servers, computer hard drives or network  folders) related to the creation, drafting, review and development of any/all of the 3  Summary Charts, including but not limited to documents created by and/or exchanged between defendants' In-House Counsel's Office and the Milbank Firm regarding the Summary Chart(s) and

2.
3.
2.  All electronic and hard copy drafts or versions of the Summary Charts.

Once we receive the documents, we request the limited depositions of Ms. Louie and the Milbank attorneys revealed to have been involved in the creation, drafting, review, etc.  of the Summary Charts. We realize that this request comes after the expiration of the discovery deadline, however we believe sufficient cause exists to re-open discovery on this limited matter given the Court's ruling on the Summary Charts.

1

Thank you.

Dan

Daniel S. Sweetser, Esquire
Szaferman Lakind
101 Grovers Mill Road, Suite 200
Lawrenceville, NJ 08648
Phone 609-275-0400
Fax 609-275-4511
dsweetser@szaferman.com
www.szaferman.com



=============================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.