```
 1                    UNITED STATES DISTRICT COURT
                      DISTRICT OF NEW JERSEY
 2


 3   _____
     MARY ANN SIVOLELLA, et al,
 4                   PLAINTIFFS

 5       Vs.                          CIVIL NO.
                                      11-4194 (PGS)
 6   AXA EQUITABLE LIFE INS. CO.,
     et al,
 7                   DEFENDANTS
     _____
 8   GLENN D. SANFORD, et al,
                     PLAINTIFFS
 9
         Vs.                          CIVIL NO.
10                                    13-312 (PGS)
     AXA EQUITABLE FUNDS
11   MANAGEMENT GROUP,
                     DEFENDANT
12   _____


13
                           DECEMBER 16, 2015
14                         CLARKSON S. FISHER COURTHOUSE
                           402 EAST STATE STREET
15                         TRENTON, NEW JERSEY  08608


16


17   B E F O R E:     THE HONORABLE PETER G. SHERIDAN
                      U.S. DISTRICT COURT JUDGE
18                    DISTRICT OF NEW JERSEY


19


20   HEARING ON SUBMISSION OF BOARD MATERIALS
21


22


23                         Certified as true and correct as required
                           by Title 28, U.S.C. Section 753
24                         /S/ Francis J. Gable
                           FRANCIS J. GABLE, C.S.R., R.M.R.
25                         OFFICIAL U.S. REPORTER
                           (856) 889-4761
```

*United States District Court*
*Trenton, New Jersey*

1

2  A P P E A R A N C E S:

3

4  SZAFERMAN, LAKIND, BLUMSTEIN & BLADER, PC
   BY:  ARNOLD C. LAKIND, ESQUIRE
        ROBERT L. LAKIND, ESQUIRE
5  FOR THE PLAINTIFFS

6

7  BLANK ROME, LLP
   BY:  DAVID C. KISTLER, ESQUIRE
8  FOR THE DEFENDANTS

9

10  MILBANK, TWEED, HADLEY & McCLOY, LLP
    BY:  SEAN M. MURPHY, ESQUIRE
11       ROBERT C. HORA, ESQUIRE
         JAMES N. BENEDICT, ESQUIRE
12  FOR THE DEFENDANTS

13

14

15

16

17

18

19

20

21

22

23

24

25

1          THE COURT:  So, this is Sivolella versus AXA

2     Equitable.  Can we enter appearances?  We'll start with the

3     plaintiff.

4          MR. LAKIND:  Yes, your Honor, good afternoon.

5     Arnold Lakind of Szaferman Lakind for the plaintiffs.

6          MR. R. LAKIND:  Good afternoon, your Honor, Rob

7     Lakind for the plaintiffs.

8          THE COURT:  Good afternoon, Mr. Lakinds.

9          MR. KISTLER:  Good afternoon, your Honor, David

10    Kistler from Blank Rome on behalf of the defendants, and I'll

11    allow my co-counsel to introduce themselves.

12         THE COURT:  Good afternoon, Mr. Kistler.

13         MR. MURPHY:  Sean Murphy with Milbank, Tweed, Hadley

14    and McCloy for the defendants, your Honor.

15         THE COURT:  Good afternoon, Mr. Murphy.

16         MR. HORA:  Robert Hora, also with Milbank Tweed for

17    the defendants.

18         THE COURT:  Good afternoon, Mr. Hora.

19         MR. BENEDICT:  And Drew Benedict, Milbank Tweed,

20    also for the defendants, your Honor.

21         THE COURT:  Good afternoon.

22         So, I'd ask that all the parties assist me or help

23    me out on these things.  Letters are okay, but I still think

24    you still need to follow the rules.  And there are

25    requirements in the local rules as to double space and the

*United States District Court*
*Trenton, New Jersey*

1   type of font size, and, you know, I wish you would follow

2   those rules.

3        And secondly, the one application I'm going to be

4   dealing with today I thought is the amount of materials from

00:01   5   the Board, and this actually looks like a motion to me.  And I

6   don't understand why we're not following motion rules.  And

7   even though it's close to trial, there's ways of doing that;

8   you can bring it by order to show cause if it needs an

9   expedited date, but it doesn't seem to comply with the local

00:01   10  practice in my view.

11       Who wishes to be heard first on the Board materials

12  is what I think we're dealing with?

13       MR. MURPHY:  Your Honor, it's Sean Murphy from

14  Milbank Tweed for the defendants, your Honor.  First let me

00:02   15  apologize for the way we presented the matter.  I'm hoping if

16  I explain what the issue is, maybe you'll see it's a little --

17  it doesn't fit squarely into kind of a clean motion.

18       THE COURT:  I know it doesn't, but these letters

19  come in on the docket, and I try to keep abreast of them all,

00:02   20  as do my law clerks, but when you see it as a notice of motion

21  it kind of fits into a different category as to what you're

22  reading.

23       MR. MURPHY:  Fair point, your Honor, and I do

24  apologize.

00:02   25       THE COURT:  The thing about it is when it's a

1   discovery matter I know the magistrate judges will handle

2   things like that, because they'll handle them on an expedited

3   basis as they come in, but generally when it's a motion that's

4   dispositive in nature or a significant issue before trial, you

00:03   5   know, I always look at it as well, if it's important enough

6   for the parties to present it, then it should be presented in

7   a more formal way I think.  So, somehow a motion seems to be

8   more appropriate to me I guess is the better way of saying it.

9           MR. MURPHY:  Okay, your Honor.  And I do apologize.

00:03   10           THE COURT:  The double spacing is better for me,

11   because the way I prepare every day, I wake up very early in

12   the morning, and some would say it's not even -- it's before

13   dawn usually.  And so when you wake up, even though my mind is

14   very alert, my eyes are still very -- squinting at the page,

00:03   15   so I'd just like it to be easier to read early in the day.

16   So, the double spacing and the font size are more important.

17           And I don't put it on my computer because -- and I

18   know it's old fashioned, but that's just the way I am, I write

19   all my notes on the side of the pages.  So it's just easier to

00:04   20   do it.

21           MR. MURPHY:  And there's certainly no excuse for

22   that, your Honor, I apologize.  We should have double-spaced

23   and used larger font regardless of whether it was a motion, so

24   I do appreciate that and we won't let it happen again.

00:04   25           THE COURT:  Okay, thanks.

1          MR. MURPHY:  So, just to tee up the issue because

2     you may want it presented differently in a motion or an order

3     to show cause, but what we were hoping to do --

4          THE COURT:  No, I have you here, we'll do it today.

5          MR. MURPHY:  What we'd like, your Honor, is guidance

6     on what to do with these "Board materials", and how to handle

7     the admission of them.  And I'm going to -- I'm not going to

8     try and move them into admission today obviously, but I'm just

9     trying to frame some of the issues so we can take some of the

10    burden off you and the delay of trial.  And I recognize at

11    first blush this might seem kind of like a procedural issue,

12    but it really is -- it does hold the potential to

13    substantially delay or disrupt trial if we don't deal with it

14    a little bit in advance.

15          And first some context here.  You'll recall, your

16    Honor, perhaps from summary judgment, this is a 36(b) case

17    where plaintiffs have challenged the fees charged to 12 mutual

18    funds as excessive.  And the relevant period, at least

19    certainly according to plaintiffs, spans over many years, from

20    2010 at least through 2014, so at least five years.

21          And these fees were approved by a Board of Directors

22    each year, a majority of whom were independent trustees,

23    independent of the advisor.  And the documents we're talking

24    about are the documents that these Board members are given

25    each year as part of their approval of the fees.  There's

1    statutes that govern this, there's a section of the Investment

2    Company Act that says you must give the Board information that

3    reasonably allows them to conclude or give them enough

4    information to approve the fees, so they're governed by

5    statute.

6         THE COURT:  And they're kept in the ordinary course

7    of business?

8         MR. MURPHY:  Totally kept in the ordinary course of

9    business, your Honor.  There's actually Investment Company

10   rules, Section 31(a) and (b) requires these books and records

11   be kept; they're subject to inspection by the SCC, when the

12   SCC comes in this is what they get.  There's no question that

13   these were prepared both before and after the litigation, and

14   there's very much we think business records -- again I'm not

15   trying to lay the foundation, we can bring in a witness to do

16   that, but we have this -- a significant issue and these are --

17   I should say, your Honor, we believe these are the critical

18   materials at trial.

19        We have -- between our collective counsel we've

20   tried four of the seven cases to go to trial under 36(b),

21   these are always the core of the case.  You may recall from

22   summary judgment the *Gartenberg* factors, you know, these six

23   factors, one of which is the independence and

24   conscientiousness of the independent trustees, and courts have

25   said it's among the most important factor.  The Supreme Court

1   approved the standard in *Gartenberg* and said really the

2   starting point of your analysis is whether the Board had

3   adequate information.

4         THE COURT:  So what I was uncertain about when I

00:07   5   read the letters, was I thought you were trying -- or there

6   was an attempt to put in all Board materials on all matters

7   that were reviewed by the Board; but you're only asking to put

8   in the materials dealing with the fees?

9         MR. MURPHY:  They tend to be bundled together, and

00:07   10   maybe the best way to do this is to get right to the heart of

11   the matter.  I mean we're talking about as I said five years

12   of Board materials, there's at least five meetings a year, but

13   for example in 2011 and '12 there were 14 meetings, so there's

14   maybe 50 meetings of the Board at issue.  And let me just show

00:08   15   you what they look like.

16         If I may approach, your Honor?

17         THE COURT:  Okay, you may.  You have to show it to

18   your adversary.

19         MR. MURPHY:  Yes, I'm going to give them one.

00:08   20   They've seen this, this is Exhibit 1.  They're very --

21         MR. LAKIND:  We've seen it, your Honor.

22         MR. MURPHY:  I'll give them another copy as well.

23         Actually that may have my handwriting in it.  I

24   don't want ex parte communications -- I think I might get in

00:08   25   trouble if I circled some stuff on the first page, your Honor.

1          (Handing to Court.)

2          THE COURT:  Thank you.

3          MR. MURPHY:  So, this is -- this is Book 1, and

4    really what you have is -- we needed an efficient way to

00:08     5    handle these at trial; right?  So this is Book 1.  There's

6    usually a Book 1, 2 and 3 for a board meeting; sometimes

7    there's a Book 1 and a Book 2, but there's usually a Book 1,

8    Book 2 and Book 3 particularly at the annual meeting where

9    there's an actual vote on the contracts.  And this is how

00:09    10    they're kept in the ordinary course of business, your Honor.

11          So there's -- if you go into AXA's files this is

12    what you'd find.  When the SEC comes in and they say let me

13    see your Board materials they're subject to inspection, they

14    lay these on the table and the SEC goes through them.  So,

00:09    15    these are -- these are how they're kept in the ordinary course

16    of business; it's a book.  And if you look through them, your

17    Honor --

18          THE COURT:  Let's just go back through this book.

19    So, if I was attending this board meeting, which this would be

00:09    20    the quarter ending December 31st, 2009; let's say I was a

21    board member, I'd just have one book?

22          MR. MURPHY:  So these are actually --

23          THE COURT:  How many books would I have?

24          MR. MURPHY:  There'd be three books -- for this

00:09    25    meeting I think there was three, there's often three.  So it

1   would be three books, but they're presented to the Board on an

2   electronic system called Diligent, which is a big provider in

3   the industry, and they would be posted as Book 1 on Diligent.

4   And if you look at --

5   THE COURT:  So, you mean posted in some way on the

6   Internet so they can review these documents?

7   MR. MURPHY:  Yeah, and we would go through this at

8   trial, your Honor, but they would have an IPad that they can

9   access them as well that's specifically hooked up.  And if you

10  look at the tab, for example the second tab is the Agenda,

11  your Honor, you'll see at the top there's a legend, EQ

12  Advisors Trust Agenda, and then there would be a legend on

13  every page of the entire book.

14  The pages are consecutively numbered, they start

15  with page 1, and the very last page of this entire book is

16  numbered 1186.  So there's -- it's consecutively numbered from

17  1 to 1186.  And if you look at the agenda, your Honor, what

18  you say is, you know, references on the right-hand side to

19  presenter, and it has references to tab 6 of Book 1, tab 5 of

20  Book 2.

21  So, the agendas go through and highlight references

22  to the tab numbers that we don't think would make sense, if

23  you start unbundling the book, take out random pages.  There

24  are numerous -- there was many depositions in this case, your

25  Honor, and witnesses referred to Book 1, Book 2, Book 3; at

1    trial they will certainly refer to the various books and the

2    tabs within the books.

3              And if I may just hand out one other thing, your

4    Honor.  If I may approach?

00:11    5              THE COURT:  You may.

6              (Handing to Court.)

7              THE COURT:  We'll mark that Defendant's Exhibit 1

8    for today.  That's the book.

9              MR. MURPHY:  That's Book 1, yes.

00:12   10              THE COURT:  And then this other one we'll mark as

11   Defendant's Exhibit 2.

12              MR. MURPHY:  Correct.  Thanks, your Honor.

13              THE COURT:  Can you just describe what Defendant's

14   Exhibit 2 is, sir?

00:12   15              MR. MURPHY:  Yeah, for the record, Defendant's

16   Exhibit 2 is a compilation of actually three different

17   documents behind separate tabs.  The first one is an agenda of

18   a board meeting for July 8th and 9th, 2013; second tab is a

19   set of meeting minutes of the EQAT Board of Trustees for a

00:13   20   meeting held on July 8th and 9th, 2013; and the third is --

21   it's one of the exhibits off plaintiff's exhibit lists and how

22   they presented the materials, I don't have the exact exhibit

23   number.

24              THE COURT:  Okay.

00:13   25              MR. MURPHY:  So, if you just look at tab 2 of

*United States District Court*
*Trenton, New Jersey*

1   Defendant's Exhibit 2, your Honor, so this is the minutes of

2   the meeting of the Board of Trustees, this one was in July of

3   2013.  And I didn't do all of them, if you turn to page 3

4   there's references in the minutes to presentations that were

5   given by defendant's employees to the Board that reference --

6   this one's -- this one references a tab 6 of Book 3.  Again,

7   on page 6, Mr. Joenk then referred the Trustees to the

8   overview of FMG's profitability located behind tab 5 of Book

9   3.  Page 10 there's two references, one to a tab 1 of Book 1,

10   and a tab 2 of Book 1.  Two more references on page 11 to tab

11   2 of Book 2, tab 3 of Book 1.

12          So the minutes, which are the critical record of

13   what the Board reviewed, what was presented, what they

14   questioned, it's based on tab numbers in an overall book.  And

15   we don't think it would create a very good record to sort of

16   pull out random pages, and many of which -- we believe many of

17   these documents, maybe not all of them, we don't need to move

18   in every single piece, but we believe many of them are

19   information the directors relied on in approving these fees.

20          So, we think these are the way they're kept in the

21   ordinary course of business.  It puts us in a weird position

22   to unbundle it somehow and then say well's it not how it's

23   kept, we pulled out random pages.  It would be an unclear

24   record because we might pull out pages 12, 18, 28, instead of

25   having consecutively numbered pages, so it wouldn't create a

 1   very clear record.

 2          So what plaintiffs have done -- so on our exhibit

 3   list, your Honor, this would be Exhibit 1.  And we think it's

 4   a -- I'm just trying to respect your time because it will be a

00:15   5   lengthy trial; when we put a witness on to lay a foundation to

 6   say we need to move a voluminous amount of Board materials in,

 7   we would put on a witness to say this is Book 1, this is the

 8   way it's kept, meet that requirement and move on.

 9          If we unbundle, the plaintiffs would have this taken

00:15   10   apart and made into -- there'd be some subjectivity to what's

 11   a separate document.  But they would say break this into 150

 12   or 200 components, and then have a witness come in and say for

 13   each one, okay, this is this, this is this, and we'd do six

 14   days of foundational testimony by unbundling the book for what

00:15   15   end.  I mean the Trustees say they rely on all the information

 16   they get in approving the fees.

 17          And just to go back to Defendant's Exhibit 2, your

 18   Honor --

 19          THE COURT:  So you're saying the custodian of

00:16   20   records may show as one of your witnesses, and the custodian

 21   of records would say, well, these are all the books from the

 22   Board of Trustees meetings between certain periods.

 23          MR. MURPHY:  Yeah.  And whatever -- and if you

 24   wanted more detail we can obviously break it down, but we

00:16   25   would try and do it -- and we think these qualify quite

1    clearly as business records.  You know, plaintiffs will point

2    to one document in there that they think is, you know, hearsay

3    within hearsay, but we think the bulk of them will come in as

4    business records.

5    00:16          Just to turn to tab 3 in Defendant's Exhibit 2, your

6    Honor, which is the skinny book, so this is the way -- and I

7    was actually generous because there's a more confusing one

8    that's on plaintiff's list, but this is a document as it

9    appears on plaintiff's exhibit list.  And so if you look at

10   00:17  the heading at the top, it says EQ Advisors Trust Board

11   Meeting July 8th and 9th, 2013, Book 2 Industry Report; so

12   this was pulled out of Book 2, but we have no idea what tab it

13   was behind.  So if this is referenced in the Board materials

14   as tab 2 of Book 2 we don't know what it is, there's no cross

15   00:17  reference to the Board materials.

16          You'll see it starts on page 9, and goes to page

17   226.  Obviously there's only about 50 pages here, so they jump

18   all over the place, it goes from page 9, then it goes to page

19   18 to 27, 46 to 50, 62 to 80, whatever the page numbers are

20   00:17  but there's massive gaps.  And to what end?  That's not how

21   they're kept, and the references in the Board materials will

22   be incomplete.  It just doesn't seem like an efficient way to

23   do it.

24          The reason why we're trying to deal with this now,

25   00:18  your Honor, again going back to where I started was at first

1   blush this could seem like something we could wait on, you

2   could hear testimony and decide; but the problem is the

3   parties have made absolutely no progress at resolving what

4   Board materials can come in.

00:18   5        And your Honor -- so, they're relying on the Board

6   materials extensively.  All their experts use them.  We looked

7   at their exhibit list, they have 400 exhibits; over 200 of

8   them are the Board materials, more than half their exhibits

9   are the Board materials.  We want the complete record to come

00:18   10   in, but we haven't resolved a single objection.

11        Plaintiffs have objected to every single page of the

12   Board materials; they're not conceding one page should come in

13   yet.  Even though they admit some are business records they're

14   relying on them, because they're saying well, you've got these

00:18   15   big books, and if I have one -- one objection on one page, I'm

16   -- that's my objection; and I'm not going to go through them

17   and tell you what they are, it's -- we don't like the way

18   you've done it.

19        If we were, your Honor, to have some guidance from

00:19   20   you that these can be as presented as one book and that's how

21   we lay the foundation through a witness at trial, you would

22   accept them as such and it's appropriate to include them on

23   the witness as such, they could then go through them.  If they

24   have some objections to some pages we could meet and confer;

00:19   25   we may be willing to pull out some pages that we both agree

**1** are irrelevant, it's not a problem.

**2**      If for purposes of ease of trial, people want to

**3** take out one tab and use it, we have no objection to that.  So

**4** we're not saying they can't use the exhibits on their list,

00:19 **5** we're just trying to do this in an efficient way and put the

**6** records into evidence the way they're kept in the ordinary

**7** course.  That doesn't seem like a tall ask.

**8**      But if we wait 'til trial, here's my fear, your

**9** Honor, here's why I think you need to do something; we go to

00:19 **10** put on Book 1 and we've got a stack of books and we're going

**11** to go through them all.  They say no, you need to unbundle

**12** them into 200 components each, so it's really now 4,000

**13** different exhibits.  And then they're going to object and say

**14** well, this relates to a fund not at issue, redact that out,

00:20 **15** you know, do redactions, pull out pages; then we would do that

**16** -- we'd have a new exhibit list with 4,000 pages which would

**17** take a tremendous amount of time.  They would then have to go

**18** through and lodge a new set of objections, all of which we

**19** could do that if we got some guidance from your Honor.

00:20 **20**      THE COURT:  Well, assuming that -- I don't know

**21** exactly have to state my -- but I'd ask the parties to look at

**22** Rule 1006, and it says there:  The proponent may use a summary

**23** chart or a calculation to prove the content of voluminous

**24** writings, recordings or photographs that cannot be

00:20 **25** conveniently examined by the court.

1      So, if you're going to have 50 of these books, I

2  would say that fits into the phrase "cannot be conveniently

3  examined by the court."  So the proponent must make the

4  originals or duplicates available for inspection on a

00:21      5  reasonable timeframe, but you may make a summary of that;

6  right?  Is there a way that I get a summary of what's in the

7  books, so I get a list of what pages I should refer to when

8  you're going through all this testimony?

9      MR. MURPHY:  So yes, in some regard -- and we're

00:21     10  very cognizant of burdening you with -- with cumbersome

11  exhibits and voluminous materials, so we've -- we've

12  undertaken, for example, to go through the *Gartenberg* factors,

13  profitability is one of the factors.  And there's 12 funds and

14  five years, so there's 60 data points of profit margins

00:21     15  there's; there's also a management and admin contract, so now

16  you double it, there's 120 data points, all of which are drawn

17  from the Board materials.

18      And we've prepared demonstrative exhibits that we

19  think qualify as summary charts under 1006.  We've cited the

00:22     20  source material which is in the Board materials, so we're

21  going to do all that, and that will certainly make your life

22  easier, but we do -- there are a couple reasons where we think

23  we need the Board materials actually to be moved into

24  evidence, and there's two main reasons, your Honor.

00:22     25      First, one of the most important things you have to

1   decide up front is whether the Board was fully informed, and

2   if we just give you a list of, you know, they got this broad

3   type of information, you don't -- you don't necessarily have

4   in the record what the Board saw.  And they could come in

5   after trial in post trial briefings and say there's no

6   evidence, your Honor, the Board was told A, B and C; and it's

7   absolutely buried in the Board materials, but it's not in some

8   summary list.

9          And secondly, your Honor, you may recall the

10   complaint in this matter, the allegation is that FMG delegated

11   virtually all of the work to a sub-advisor, and one of the

12   things that's required by both the management and admin

13   contract, different pieces, but both contracts cover some

14   portions of the Board materials, so it's -- a lot of the stuff

15   that's in there you need to see and see how hard it is to

16   prepare and the work that FMG does to put it together as

17   evidence of what we do.

18          And again, that's -- that's regardless of the truth

19   of the matter asserted, your Honor.  So even if they had some

20   business records problem, we could put in a lot of this

21   material to show what FMG does.  So there's a lot of reasons

22   why isolated pieces or just summarize don't get it done for

23   us, given the allegations that we don't do anything.  So they

24   don't want us to put in what we do, your Honor, this is a huge

25   substantive piece to say well, you don't -- it doesn't take

1    any time to prepare this, anybody can do this.  That's just

2    not the case and we need to show you that in many respects.

3              Now, that doesn't mean, your Honor --

4              THE COURT:  I got your point.

00:23    5              MR. MURPHY:  Okay.  So what are we asking for; we

6    just think because these are the way the documents are kept,

7    it's a more efficient use of the Court's time, it would be a

8    clearer record, that we be permitted to treat these as a

9    single exhibit.  And plaintiffs, if they object -- there's

00:24   10    many of these documents they want in too, but if they object

11    to portions of it, identify them and we'll meet and confer and

12    see if we can resolve those, because there may be some where

13    we can reduce the volume by taking it out.

14              I will say -- you know, they'll say there's hundreds

00:24   15    of thousands of pages; there are significant portions of, for

16    example, Book 2 we think we can eliminate 50,000 pages if we

17    can meet and confer on the issue, and just stipulate that

18    although this is not the way they're kept in the ordinary

19    course of business, we remove these 50,000 pages we could

00:24   20    greatly shorten them.  So I think there are ways we can make a

21    lot of progress, it's more of just can we start doing it.

22              THE COURT:  Why can't we just put them on a disk?

23    Why do we have to have all the books?

24              MR. MURPHY:  And that would be our intent, your

00:24   25    Honor.  We have no intention of showing up and going through

1   page by page with you, it would really just be getting them in

2   as business records; they would want us to unbundle it, and --

3   they may say this is a thousand documents, I suspect they have

4   their -- they're going to stand up and probably show you as

5   they showed to Judge Arpert, they're going to take this exact

6   same document and say, it's got yellow tabs all over it, and

7   all they've done is pull the chapters out of a book and say

8   oh, it's a thousand different documents, and they want us to

9   lay a foundation for each of those thousand which is totally

10  not practical or efficient use of your time when many of them

11  they don't even object to.

12          THE COURT:  All right.

13          MR. MURPHY:  Thank you, your Honor.

14          MR. LAKIND:  Thank you, your Honor.  And I, too,

15  apologize for the manner in which our papers were submitted.

16          THE COURT:  Yes, thanks.

17          MR. LAKIND:  Unfortunately the problem is

18  considerably more complicated than counsel has indicated,

19  which is why plaintiffs are of the view they should be

20  revolved by way of motion.

21          What I would like to do is first address the context

22  in which this problem arises, and secondly, propose what I

23  think is a fair and reasonable solution for all parties.

24          Let me start first with the context in which this

25  problem arises.  Defendants in this matter have served an

1  exhibit list with 1,871 separate documents, that total nearly

2  one million pages.  We frankly were overwhelmed by that list.

3  We could not sensibly review an exhibit list of that

4  magnitude.  It contains many, if not the majority, of

00:26     5  documents are utterly irrelevant to this case.  By serving an

6  exhibit list of that magnitude it defeats the goal of the

7  whole pretrial process to have -- to make our cases

8  transparent.  In contrast, our exhibit list is some 400 odd

9  exhibits, most of which are drawn from the Board material.

00:27    10        When defendants made their summary judgment motion,

11  they had the ability to isolate documents they thought were

12  relevant to the disposition of this matter included in their

13  motion, and respectfully that's what they should have done

14  here.

00:27    15        Now, this is not a problem that arose recently; it

16  arose in November, 2014, more than one year ago when I had a

17  conversation with counsel, and indicated that I did not think

18  Board material was a business record.  It's an advocacy

19  document, it's a document which the Board uses -- excuse me;

00:27    20  which FMG uses to negotiate a higher fee with my clients'

21  Board of Directors.  If we have the opportunity to brief the

22  issue, we will demonstrate that this -- these 15,000 pages are

23  not business records, they're documents prepared by counsel,

24  they're documents with opinions; they could not satisfy the

00:28    25  business record exception.

1      But the evidential ruling on this document is

2  inextricably intertwined with substantive issues.  And what

3  I'd like to do now, your Honor, is turn to what I perceive to

4  be a simple straightforward way to deal with the issues.  It

5  appears from reviewing defendant's papers that they are of the

6  view that the Board materials are relevant on three issues:

7  Number one, the extent of the work done by FMG; number two,

8  was the Board fully informed; and number three, were the

9  substantive truth of a variety of documents, the performance

10  of the funds and the expenses of the funds and so on.

11      Let me first turn to the first issue, which is the

12  extent of the work done by FMG.  The overwhelming majority of

13  the 1,871 exhibits and the 100,000 pages of Board material are

14  utterly irrelevant to this case.  This case is brought on

15  behalf of 12 mutual funds.  FMG claims to be the advisor to 90

16  mutual funds.  So there is information in that Board material

17  with regard to 78 mutual funds that have nothing to do with

18  this case.  How we or the Court or any witness is able to go

19  through and understand those is well beyond me.

20      THE COURT:  Well, couldn't some of the funds have

21  overlapping issues?

22      MR. LAKIND:  That's what I'd like to turn to.  There

23  are three categories of information within the Board material.

24  The first category is material that clearly relates to our 12

25  funds.  The second category is Board material in which there

1   is overlap, that it affects our 12 funds and the 78 other

2   funds.  And the third category is work done on behalf of other

3   funds.

4          For instance, in the very first exhibit on their

5   exhibit list, there are 100 -- there are well over 100

6   documents in that single exhibit which pertain to other funds.

7   There are contract with other funds, they're boards of ethics

8   of other advisers, they're information about other funds; that

9   is not the least bit relevant to what the Board does with

10  regard to the 12 funds we represent.  And it's simply

11  impossible for counsel or the Court to examine them.

12         I would respectfully submit the way to deal with

13  this issue insofar as they want to demonstrate the magnitude

14  of their work, is to pull out the information that is

15  completely irrelevant to this case, to the 78 funds that are

16  not even plaintiffs before your Honor.

17         With regard to the remainder, some of those were

18  prepared by FMG, and we can look at them and agree to that.

19  But a various large number were prepared by others.  And one

20  of the issues in this case is who did what work; well, with

21  regard to the others we should have an agreement that the work

22  that indicates it was prepared by others was in fact prepared

23  by others.  The remaining documents we can talk to and try and

24  resolve what happens to them.  We can't do it with 100,000

25  pages of paper.  It's impossible to know what is in there.

**1**          The second issue they tell you this information is

**2**  important to is --

**3**          THE COURT:  I don't know, but during the course of

**4**  this trial they'll be presenting certain pages for me to

00:31  **5**  review; right?  They're not going to ask me to review the

**6**  documents of 78 mutual funds that have no bearing on the case

**7**  so to speak; right?  So if they're only asserting certain

**8**  pages, why don't you just go to those pages?  Why should they

**9**  do this initial -- go through all the Board documents and then

00:32  **10**  delete everything that's not -- what you say may not be

**11**  relevant.

**12**          And if you say it's not relevant, why isn't it your

**13**  job to show exactly what pages they are?  I mean, they keep

**14**  these records -- I don't know why who the secretary of the

00:32  **15**  Board is, but generally the custodian of records could be just

**16**  some person, you know, that doesn't have all the -- I want to

**17**  say this correctly; it could be just a person that's familiar

**18**  with what was presented at the Board, and what they have kept

**19**  as a result of that Board meeting, and they would be the ones

00:33  **20**  to say I've had it, it's been in my office, we haven't altered

**21**  it, and it's usually kept every week or every month, and

**22**  that's how you get the board pages in.

**23**          But they might not have the knowledge to know what

**24**  mutual funds they apply to, whether it's the 78 or less than

00:33  **25**  the -- or whatever it is.  So, I'm not sure why it's their

1  burden to do that.  Maybe you'd have to come forward with

2  what's irrelevant.

3          MR. LAKIND:  Okay.  Your Honor, let me --

4          THE COURT:  I mean you're asking them to do your job

00:33  5  first.

6          MR. LAKIND:  I think not, your Honor.  Number one,

7  the Board materials are hearsay; I mean everyone agreed to

8  that when we were in court before Judge Arpert.  In the course

9  of the discussions, defendants said they would undertake the

00:34  10  burden to make a motion for -- to make a motion to admit these

11  documents as an exception to the hearsay rule.

12          These documents are not business records, and if we

13  are given the opportunity to brief this issue, we will

14  demonstrate that they are not business records.  They are full

00:34  15  of conclusions, they are full of judgments -- some are, some

16  are financial records that are legitimate business records,

17  and we didn't object to over 400 of those documents.

18          But the overwhelming majority are opinions, they are

19  not business records.  And it's their burden to demonstrate

00:34  20  that these documents fall within the exception to the hearsay

21  rule, and if we are permitted to brief it they will not be

22  able to do take.

23          Secondly, your Honor indicates that -- I'm sorry.

24          THE COURT:  No, go ahead.

00:35  25          MR. LAKIND:  Your Honor indicates that, well,

1    they're going to only ask you to look at a certain subset of

2    these documents and hopefully that is the case.  But the whole

3    purpose of an exhibit list in a pretrial order, is to provide

4    some transparency to all parties as to what each party thinks

00:35    5    is relevant to the disposition of the case.  When we receive

6    an exhibit list of 400 different pages -- excuse me; 400

7    documents that constitute Board materials, and 1,871 documents

8    that they say are exhibits, it's impossible for us to discern

9    what is relevant and to properly prepare our witnesses.

00:35    10    Third, if defendants are going to ask your Honor to

11    only look at some documents in trial, why should they not do

12    it now so that we can simply eliminate the objections in

13    advance.  Plaintiffs did that, and defendants did that in

14    connection with their motion for summary judgment.  To require

00:35    15    the parties to sit here and go through irrelevant page after

16    irrelevant page, simply is not in anyone's interest.

17    The issue here is what did FMG do; we say they

18    didn't do very much and others did.  They need to lay that

19    foundation as to what they did.  Simply putting the Board

00:36    20    materials in does not do that.

21    There's a second issue --

22    THE COURT:  Well, it may not be all of the evidence,

23    but it could be a portion of their case.  So, I think that

24    they should be -- in zealously defending their case they

00:36    25    should be able to put in all the information they believe is

1  relevant; one of it would be what the Board members were

2  thinking or how they formed their opinions.

3        MR. LAKIND:  Absolutely, and I'll get to that in a

4  moment --

00:36  5        THE COURT:  So that's where you get to these Board

6  members; here's what I was looking at, this is what I thought

7  was a smart thing to do.

8        MR. LAKIND:  Absolutely and I'd like to get to that

9  in one moment, but your Honor, let me just clarify one thing;

00:37  10  there are many things in this Board material which they are

11  going to claim credit for having done.  And that's an area of

12  significant dispute.  Our evidence --

13        THE COURT:  That's why we have trials.

14        MR. LAKIND:  Our evidence will show that others did

00:37  15  that work.  They need to lay a foundation to demonstrate what

16  they did, because otherwise a document will simply come in as

17  being handed to your Honor as an example of work, which they

18  cannot lay a foundation that they did it.  So that's why with

19  regard to what they did we're objecting on foundational

00:37  20  grounds.

21        Now, your Honor said a moment ago --

22        THE COURT:  The question is evidence; right?  So

23  they're looking at this as showing this is evidence of

24  something we've done; if you dispute that they haven't done it

00:37  25  then you can bring in whatever evidence you want.  Right?

**1**        MR. LAKIND:  Yes, sir.

**2**        THE COURT:  So, then it's up the Court because I'm

**3** also the trier of fact as to weigh that evidence, who's right.

**4** So I don't get your point that they're going to try to say

00:38    **5** they did something they didn't do; well, if that happens

**6** you'll have your opportunity to present that evidence.

**7**        MR. LAKIND:  Well, perhaps, your Honor, let me give

**8** you an example of one piece of evidence that is typical of

**9** this.  There's been a good deal of argument over the

00:38   **10** admissibility of a side-by-side chart and your Honor might

**11** recall that was argued before your Honor some months ago.

**12** Defendants are of the view that that was something that was

**13** prepared by FMG; plaintiffs are of the view that is something

**14** that was prepared by counsel.

00:38   **15**        There are a variety of reports that we think were

**16** prepared by sub-advisors; defendants of the view that it was

**17** prepared by them.  They need to lay a foundation to say we're

**18** giving this to you, the finder of fact, as an example of our

**19** work, and the foundation that we -- that we did this work is

00:39   **20** this.  We are entitled to have them lay a foundation if a

**21** document is to come in as an example of work.  It shouldn't

**22** simply be handed up to your Honor as the work.

**23**        Your Honor also mentioned that well, doesn't the

**24** Board -- don't they have the ability to have the Board say we

00:39   **25** looked at this document, we reviewed this document; and the

1   answer to that is yes, because one of the issues in this case

2   is how careful and how conscientious was the Board.

3          However, this information was posted to an Internet

4   site called Diligent, three weeks before the meeting.  Board

00:39   5   members have testified they didn't review this information.

6   So when the assessment becomes how well informed was the

7   Board, the fact that it was posted is not an indicia of what

8   the Board did and what the Board knew.

9          We will have testimony from a board member that said

00:40  10   that they didn't look at all of this information.  So the

11   notion that merely posting it is -- is evidential of how well

12   informed the Board is, is a legal issue.  Going back many

13   years in the old days when the question was if you mailed a

14   letter was it received, and there were certain inferences or

00:40  15   presumptions that developed.  Likewise there's a legal issue

16   here.  Merely posting this information --

17          THE COURT:  I don't get how those two things are

18   related.  I mean mailing a letter always goes to -- it's

19   whether people had notice of a hearing, for instance, if you

00:40  20   go to a planning board or a variance or something of that

21   nature, you know, you have to send a letter to your neighbors

22   telling them that you're applying for something.  And the

23   issue with regard to that notice is whether the parties had

24   the right to present any objections they might have.  So it

00:41  25   goes into a notice and due process issue.

1          Here we're talking about the posting of things on

2    the Internet for Board members to read.  It's not whether they

3    got it or not, we know they got it.  So, I don't see how you

4    analyze whether a letter was sent and received to be the same

5    as what we're doing in this case.

6          MR. LAKIND:  I think the analogy was a poor one, but

7    that being said, that being said, the mere fact that this

8    material was posted on the Internet in the face of testimony

9    from Board members that they did not read it, does not

10   demonstrate that the Board was well informed.  They need to

11   bring in --

12         THE COURT:  I don't even see the merit in your

13   argument, because that seems to me as that the defense

14   presents this as evidence that the Board considered it, you

15   present evidence that the Board didn't consider it, and then I

16   have to weigh the evidence.  That's what we do at trials.  So,

17   I don't see why because you have this evidence that's contrary

18   to the defendants, that I should rule that the evidence is not

19   admissible.  That makes no sense to me.

20         MR. LAKIND:  No, I'm not making that argument.  The

21   argument I'm making, your Honor --

22         THE COURT:  Yes, you are.

23         MR. LAKIND:  -- is that in addition to posting the

24   information on the Internet, to make it relevant they need to

25   bring a board member or Board members in to say we reviewed

 1   this information, and it formed part of our decision-making

 2   process.  Merely posting it on the Internet does not make it

 3   admissible.  If they take the second step, then we have a

 4   factual dispute, because we'll bring in evidence that they

 5   didn't look at it.

 6          THE COURT:  So you think that the custodian of

 7   records -- we usually do it through a custodian of records,

 8   but you're just saying that to have the entire books

 9   admissible, then we'd need the custodian of records who

10   maintained the books, plus some board member who said we

11   relied on it; is that what we're here about?

12          MR. LAKIND:  That's one component of the argument,

13   that merely posting it on the Internet does not make it

14   admissible unless they take the second step, which is to bring

15   a board member in -- which they can't do because the Board

16   members will testify they didn't review it; bring a board

17   member in to connect the posting to the deliberative process.

18          THE COURT:  All right.

19          MR. LAKIND:  Your Honor, the third issue, of course,

20   is the substantive relevance, and here I think we did our best

21   to identify all of the Board material that represents --

22   excuse me; that relates to these significant issues, the

23   profitability, comparative fees, expenses and so on.  We

24   didn't object to some 400 of the 1,800 exhibits that they

25   mentioned; we think we have the universe of what was relied

1    on.

2            If they are -- if they will make a motion and

3    indicate we left information out or they left information out,

4    and it qualifies as a business record, we're going to consent

00:44   5    to it.  But to resolve an issue of this magnitude without a

6    motion that really explains in detail what went on, is simply

7    not fair to plaintiffs, your Honor.

8            THE COURT:  Well, why isn't it fair?

9            MR. LAKIND:  Well, your Honor, because number one,

00:44   10   we haven't even briefed the business record issue at any

11   length.  The premise of the argument you heard a few minutes

12   ago was that these are -- these are definitively business

13   records.  Yet there is a decision in the District of New

14   Jersey that -- in the *Ebenhoech/Koppers* case which essentially

00:45   15   says documents of this nature would not qualify as business

16   records.  So we need the opportunity to address those issues,

17   your Honor.

18           THE COURT:  Well, I'm not moving off the trial, I

19   was actually going to ask you if you wanted to move up the

00:45   20   trial.  So, if they present the books at trial, right, then

21   you make their objection when they come up; right?  That's

22   usually how it happens.  So, you got this letter -- I think

23   the first letter came from Blank Rome --

24           MR. LAKIND:  Yes, your Honor.

00:45   25           THE COURT:  So, they presented the issue, and I

1  believe you've responded; I don't know if it was on the same

2  issue, it was respect to the admission of 409 exhibits -- oh

3  yes, consisting of 200 pages of the Board materials.  So you

4  filed some response, but you didn't file a full response; is

00:46  5  that what you're saying?

6       MR. LAKIND:  No, what I said in my letter, your

7  Honor, is that we were responding to whether or not this

8  should be done informally or on a motion, and we didn't

9  understand defendants to be moving for the actual admission of

00:46  10  the documents.

11       THE COURT:  Well, I didn't either, that's why I

12  brought up that point in the beginning.

13       MR. LAKIND:  Yes.

14       THE COURT:  But they're looking for some guidance

00:46  15  here.  So, do you have any other arguments?  You just want

16  more opportunity to be heard?

17       MR. LAKIND:  Your Honor, I don't think -- listening

18  to your Honor's inclinations, I'm not sure it would be

19  fruitful to submit anymore papers; I think I have a sense of

00:47  20  what your Honor's thinking.

21       THE COURT:  I'm not sure exactly what I'm thinking.

22  I have some ideas of what I would do --

23       MR. LAKIND:  Then I'd like a chance --

24       THE COURT:  -- to narrow the dispute to tell you the

00:47  25  truth.

1          MR. LAKIND:  Then your Honor, can I submit a five

2  page, double-spaced, 14 font letter that just tells what our

3  position is, responding to the substantive letter that Blank

4  Rome submitted?

00:47     5          THE COURT:  When can you do that by?  Friday?

6          MR. LAKIND:  I'm sorry, your Honor?

7          THE COURT:  Friday?

8          MR. LAKIND:  Yes, your Honor, Friday.

9          THE COURT:  And do you want to reply?

00:47    10          MR. MURPHY:  Yes, your Honor, I don't know what he's

11  arguing --

12          THE COURT:  Monday.

13          MR. MURPHY:  Okay.

14          THE COURT:  So I'm breaking early next week, but

00:47    15  I'll try to give you a decision before I leave next week.

16          MR. LAKIND:  Your Honor, may I raise a couple of

17  issues counsel had been speaking about?

18          THE COURT:  All right.

19          MR. LAKIND:  Number one is we know there are a

00:48    20  number in limines on in early January, but it's all of our

21  expectations that objections to expert testimony will be

22  handled in the course of trial.  We just -- all of us wanted

23  to make sure that was the case and they wouldn't be argued.

24          THE COURT:  Usually that's what I do.

00:48    25          MR. LAKIND:  Okay.

```
 1          THE COURT:  But I will -- actually if you want to
 2   make arguments on any of the experts, I'll listen to that at
 3   the time of the in limine motions.  A lot of times I reserve,
 4   but --
 5          MR. LAKIND:  I think we've argued the issue once,
 6   and I think it would be certainly our preference when the
 7   witness is called; I don't know how Mr. Murphy feels.
 8          MR. MURPHY:  For experts that's correct, there may
 9   be other motions in limine that we want to argue --
10          THE COURT:  Right.  We don't have a jury, so we can
11   spent time arguing whether an expert should be heard or barred
12   or whatever during the course of the trial.  I think that
13   makes sense to me to tell you the truth.
14          MR. MURPHY:  And your Honor, I'm certainly not
15   interested in arguing something that if there's not a point to
16   it -- if that's the practice on any of these motions in
17   limine, if you read them and you're clearly going to need to
18   hear the evidence at trial there's -- we can take the argument
19   up at trial.  So --
20          THE COURT:  I know.  I don't mind doing in limine
21   motions, only because I learn a lot about the case from when
22   we start the trial, so it's of help to me.
23          MR. MURPHY:  Good.
24          MR. LAKIND:  Your Honor, the second question is, I
25   think there's a indication of Dolores of your office that she
```

1     might be able to show our technical people today some

2     material?  I don't know if it's a bad day --

3              THE COURT:  Yes, whenever they want.  We need to get

4     Dan and the technical guys up here, but they're here

00:49    5     full-time.  So if you just tell us when they're coming in,

6     we'll probably be able to set up an appointment with them.

7              MR. LAKIND:  Okay.  Third, your Honor, is on January

8     25th I have to be in California to argue a case; is there any

9     chance -- and I can raise it as we get closer -- that we might

00:50   10     not proceed on that date?

11              THE COURT:  Does anyone object to that?

12              MR. MURPHY:  Just missing one day of trial -- I

13     didn't catch the date?

14              MR. LAKIND:  January 25th.

00:50   15              MR. MURPHY:  Yes, no objection.

16              THE COURT:  All right.  No problem.

17              Okay.  So, there might be times during this trial

18     where I might have to break for a while, I don't know; I have

19     some criminal cases that are pending.  So, we were looking at

00:50   20     five to seven days, but it seems it's going to be a lot longer

21     than that?

22              MR. LAKIND:  I think, your Honor, my guess is it

23     will be about 15 trial days; I don't know how Mr. Murphy

24     feels.

00:50   25              MR. MURPHY:  Yes, your Honor, we're in a little bit

1    -- and some of that relates to this issue; we're in a little

2    bit of an uncomfortable position in the sense that our

3    allegation is we don't do anything, right.  So kind of backs

4    me into a corner to bring in evidence, and I'm trying to do it

00:50    5    in summary ways, but I need to tell you what FMG does as an

6    advisor/administrator for a mutual fund which we would say is

7    a massive amount of work, and it's hard for me to just sort of

8    put on a witness and say yeah, we're working a lot.

9           I've been backed into a corner where I need to bring

00:51    10    in witnesses and say okay, tell me what services we provide in

11    various buckets, compliance, admin or portfolio management.

12    So it is going to be -- I think we projected eight to 10

13    trials days just for our case.

14           THE COURT:  So, it may come a time where -- well,

00:51    15    let me tell you when I wanted to start.  I have you down for

16    the 11th or 12th, but the case the week before was adjourned

17    for some reason, so I might be able to start on the 6th.

18           MR. LAKIND:  The only thing, your Honor, from our

19    perspective, we have our experts lined up, I'm not -- and one

00:51    20    of my partners is trying it -- or two of my partners are

21    trying it with me, so I'm just not sure what the experts' and

22    everyone's schedule is, that's the only thing.

23           THE COURT:  Well, we can put all your fact witnesses

24    on, we'll accommodate the expert witnesses to the extent we

00:52    25    can, but we can do those in limine motions earlier.  So, I'm

**1**   available beginning the 6th.  So, we had you coming in on the

**2**   11th; right?

**3**          MR. LAKIND:  I think, your Honor, you have us in on

**4**   the 4th for the in limines.

00:52   **5**          MR. MURPHY:  4th for the in limines, January 11th

**6**   for the start of the trial, your Honor.

**7**          THE COURT:  Well, we'll do the in limines on the

**8**   6th.

**9**          MR. MURPHY:  We'll do whatever -- we're happy to

00:52   **10**  start on the 6th, we're happy to do the in limines on the 6th,

**11**  whatever your Honor wishes.

**12**         THE COURT:  I have the 6th, 7th and 8th, so all the

**13**  motions we can do and any practical problems on the 6th and

**14**  the 7th, and we can start the testimony on the 8th.  And then

00:53   **15**  you'll be right where you were, Mr. Lakind, and then you can

**16**  present your experts starting the 12th.

**17**         So I have you the week of the 6th, 7th and 8th, 11th

**18**  through the 15th, and then I believe I have you the next week

**19**  the 18th through the 22nd.  And you wanted off the 25th?

00:53   **20**         MR. LAKIND:  If possible, your Honor.  I think

**21**  that's a Monday.

**22**         THE COURT:  Yes, the 25th is -- I might have to

**23**  adjourn that week, I have a number of trials on.

**24**         MR. LAKIND:  Your Honor, it might be the 25th and

00:54   **25**  the 26th just because I'll be flying back from California.

*United States District Court*
*Trenton, New Jersey*

1          THE COURT:  Okay.  So, if we're not going to do the

2    25th and 26th, the 27th, that looks to me maybe the afternoon,

3    1 o'clock to 4:00.  Then the 28th and 29th we should be

4    around.  And then the 2nd I'm here, and the 4th and 5th of

5    February I'm here.  Is that enough time?  Until the 5th of

6    February?

7          MR. LAKIND:  I think we'll go probably about seven

8    to eight days, your Honor, for us.

9          THE COURT:  I have 6th, 7th, 8th, that's three; then

10   the next week is five; then the next week -- well, the 18th is

11   a holiday, it's Martin Luther King Day; the 19th's a motion

12   today so you won't come in.  And then I have the 20th, 21st,

13   and 22nd, three days; there's a few things on so I think we

14   will go the whole day, but we might be interrupted for an

15   hour.  And then the 25th and 26th you're out.

16         So then 27th is from 1 o'clock; and then the 28th

17   and 29th.  The 1st is a motion day, so I won't have court that

18   day.  The 2nd, the 4th and 5th, three more days; looks like a

19   lot of time.

20         MR. LAKIND:  Yes, it is.  Your Honor, just if I

21   might mention, the 25th and 26th we're going to have three

22   attorneys trying this case, so if I'm away and it's not a

23   witness I'm going to do, we may if it's okay with your Honor

24   suggest that we proceed that day.

25         THE COURT:  You have to let us know --

*United States District Court*
*Trenton, New Jersey*

**1**          MR. LAKIND:  We'll know as soon as we see how fast

**2** we're going.

**3**          THE COURT:  Well, hopefully it will be fast.

**4**          All right.  So, we didn't get back to the issue yet.

00:57 **5** Does that take care of the timeframe?  Does anyone have any

**6** objections to that?

**7**          MR. LAKIND:  We do not, your Honor.

**8**          MR. MURPHY:  No, your Honor.

**9**          THE COURT:  So, you've made all your arguments with

00:57 **10** regard to the board minutes?

**11**          MR. LAKIND:  I have, your Honor.

**12**          THE COURT:  Do you wish to bring?

**13**          MR. MURPHY:  I'm very tempted, your Honor; just

**14** maybe two minutes?

00:57 **15**          THE COURT:  You may.

**16**          MR. MURPHY:  Thank you, your Honor.  Just in terms

**17** of, you know, transparency is what he said, we did offer last

**18** week -- we're not trying to hide the ball.  We think the Board

**19** materials heed to come in and a significant volume of them,

00:57 **20** but we did offer to try and identify what documents we're

**21** actually going to show our witnesses and the judge.  We're not

**22** going to go through a hundred thousand pages and show you

**23** stuff.  We're going to identify some stuff, we're going to

**24** have summary charts, we're going give them those summary

00:57 **25** charts, and we're going to identify specific pages of the

**1**  Board materials.

**2**      Again, we won't have a hundred percent precision

**3**  because some of our case is rebuttal, but we think we can cull

**4**  down the list and get, you know, a large chunk of what we show

00:58  **5**  our witnesses and tell them that in advance, so they're going

**6**  to see what we show witnesses.

**7**      THE COURT:  When will you tell them in advance by?

**8**      MR. MURPHY:  I imagine the next couple weeks.  We

**9**  just have to go to each witness and look at their direct exam

00:58  **10**  and pull out those documents, so we can do well in advance of

**11**  trial.

**12**      THE COURT:  Okay.  So, by the 23rd of December.

**13**      MR. MURPHY:  Okay.  The second point I would just

**14**  make, your Honor, is that most of the stuff he's talking about

00:58  **15**  is cross-examination, so he can stand up --

**16**      THE COURT:  I understand.

**17**      MR. MURPHY:  Okay.  In terms of the other funds at

**18**  issue, your Honor, just a couple points on that because it

**19**  actually is a significant issue.  There are 12 funds at issue

00:58  **20**  and they're part of a trust, so it's one trust; the Board sits

**21**  on all of them, and they're claiming that there's stuff about

**22**  other funds that's irrelevant.  And as your Honor said, are

**23**  there overlapping issues; absolutely, right.

**24**      So they're pointing to advantages across all funds.

00:59  **25**  They're pointing to overall profitability, they're arguing

1   that economies of scale in one fund that's not at issue should

2   cause breakpoints in our funds and they should be aggregated

3   across assets.  They're claiming our employees are spending

4   time on other funds, so they're very much at issue.

00:59   5           Our Board has negotiated numerous fee reductions on

6   funds not at issue as well, and that certainly goes to

7   diligence.  Even if it's one fund not at issue, if where they

8   saw a problem, they negotiated a fee reduction and they

9   explain why, it certainly goes do their diligence.  So it's

00:59   10  relevant, but to redact it -- and you can just look at Book 1,

11  your Honor, which Defendant's Exhibit 1, you can go through --

12  a lot of times it's a page of all the funds, and you're not

13  going to redact out individual funds, it would take us an

14  enormous amount of time, to what end.  If it's irrelevant it's

00:59   15  going to be on a disk, we're not going to show it to your

16  Honor, there's no harm, it would just create a significant

17  amount of work for no reason.

18          And the last thing, your Honor, which I agree

19  doesn't go to the substance, but, you know, they claim that a

01:00   20  board member said they didn't read every page; the correct

21  testimony was they don't read every page because they rely on

22  counsel in some instances to summarize what's relevant, and

23  that was one trustee.  Two other trustees, including the

24  30(b)(6) for the Board, testified very clearly I review all

01:00   25  the materials or in some instances my counsel reviews them and

**1**   summarizes them for me.

**2**          So there is going to be testimony, we're designating

**3**   that in, from two trustees saying they review all the

**4**   materials.  But it doesn't matter, even if they didn't it's

01:00   **5**   still a business record because they're records of FMG the

**6**   advisor.  Thank you, your Honor.

**7**          MR. LAKIND:  Your Honor, I know it's late, but could

**8**   I just raise two very quick issues?

**9**          THE COURT:  Well, quick is a minute or so.

01:00   **10**          MR. LAKIND:  They will both be.  If we get that list

**11**   -- I had not realized they were prepared to give us that list,

**12**   that may obviate a lot of these issues, so that would help

**13**   enormously, we were not aware that that was going to happen.

**14**          Secondly, our first witness is Mr. Joenk, who's the

01:01   **15**   defendant's CEO, he sets the stage and I think it's critical

**16**   that he be our first witness; I want to make sure he can be

**17**   available on the first day of trial.

**18**          MR. MURPHY:  Sorry.  The 4th through the 6th were

**19**   the motions and the first day of trial would be the 8th?  I

01:01   **20**   would -- I'm sure he'll make himself available.  I haven't

**21**   spoken with him obviously, he's not here, but --

**22**          THE COURT:  Well, Mr. Lakind can't have his experts

**23**   here, so he needs you to bring your witnesses.

**24**          MR. MURPHY:  I'll just make sure my witnesses can

01:01   **25**   make for it up, so we'll certainly endeavor to do that.

1          THE COURT:  I'm sorry, Mr. Lakind, but I think you

2    should, if it helps the trial move smoothly I'd appreciate if

3    you do that.

4          MR. LAKIND:  I'm sorry, your Honor?

01:01    5          THE COURT:  I was asking if you could have Mr.

6    Joenk --

7          MR. MURPHY:  No, absolutely, it's a matter of --

8          THE COURT:  You know, if it makes the trial go

9    smoother and he can be here, I'd request that you do it.

01:01    10          MR. MURPHY:  I just work for him, so he's the

11    president of my defendant so I don't commit his schedule, but

12    I think he's available and we certainly would make him

13    available, yeah.

14          THE COURT:  I'm thinking that all those motions will

01:02    15    probably take us all day on the 6th, so the trial wouldn't

16    start until the 7th, so if that's the first day.

17          MR. LAKIND:  Thank you, your Honor.

18          THE COURT:  And it might take us a little longer

19    than that on the motions, but we should get the trial started

01:02    20    on the 7th.

21          MR. MURPHY:  Thank you.

22          MR. LAKIND:  Thank you, your Honor.

23          MR. MURPHY:  Thank you for your patience.

24          THE COURT:  At any rate, I don't know if it's a

01:02    25    ruling or it's just guidance, but when I was listening to the

1    issue and even before I came out here, I had looked at that

2    summary rule, and I had set it forth before, but it's 1006 is

3    the rule.  And generally when you have use summary charts and

4    things of that nature, you always have the originals available

01:02    5    for the other party to look at at a reasonable time, which

6    they have.  And if there's a list of the materials that are

7    going to be referred to from the Board members, it should be

8    given to the plaintiffs by December 23rd so they can start to

9    review it, and I think that's the best way of doing this.

01:03    10    Having a lot of redactions and missing pages during

11    the trial can cause disruption, and we'll be looking for other

12    pages, I can't see doing that.  So if we have them all here in

13    some kind of disk format or some kind of format that we can

14    see on the computers, then I think that's the way we should

01:03    15    proceed.  I can't see doing it any other way.

16    It seems to me that -- I know, Mr. Lakind, you're

17    saying they're not business records and they could be hearsay,

18    but in this case -- and I haven't read the case that you were

19    referring to that said they were not business records kept in

01:04    20    the ordinary course of business, to me when you're looking at

21    what the Board of Directors does, it's what they do; they look

22    at these volumes of materials time in and time out at every

23    meeting, and you're questioning their diligence, their

24    negligence, their carelessness, and these are all things that

01:04    25    go to show whether they were amply advised before they made

*United States District Court*
*Trenton, New Jersey*

1   the decision.

2          To me they look like they were the records that were

3   relied on by the Board of Directors in the course of their

4   business, so I would think I would allow them in on that

01:04   5   basis; subject to you having any more briefing time if you

6   want.  But I think the smart way to do this is let's -- we

7   have all the Board members, we'll admit them into evidence;

8   the defendants under the obligation to give you the summary of

9   what they're going to be relying on by next Wednesday the

01:05   10   23rd, and then we'll rely on those summaries for the evidence

11   that I'm going to be weighing.  I believe that's what we're

12   going to be doing; right?  And I think you should make your

13   objections as to those specific items that are listed in the

14   summary.

01:05   15          MR. LAKIND:  Your Honor, I think -- given your

16   Honor's explanation I think we should not further brief the

17   issue.  We'll deal with it at trial or even in post trial

18   briefing.  It is a bench trial, so to the extent something

19   comes in we want to object to we can deal with it later.

01:05   20          THE COURT:  Exactly.  Although we use the rules of

21   evidence, it's not like you have six jurors there.

22          MR. LAKIND:  Right.

23          THE COURT:  You know, that could be misled or

24   whatnot, and I guess I could be misled, but usually I see

01:06   25   through it.  And you know now that I'm not going to read 50

1   volumes of board member notes and books, so I'm only going to

2   read what's in the summary.

3         MR. LAKIND:  I think your Honor's procedure obviates

4   a lot of the concerns we had as to what we should prepare for,

01:06   5   too, so I think that --

6         THE COURT:  Now, if you're going to be relying on

7   parts of those board minute meetings, are you going to give a

8   summary to them?

9         MR. LAKIND:  They have a list of what -- exactly

01:06   10   what we're relying on and it's self-evident what it's for;

11   it's performance, expenses, I don't think there's any dispute

12   about that.  They've not objected.

13         MR. MURPHY:  Ironically, your Honor, I think we're

14   relying -- we're going to be all showing you the same

01:06   15   documents, it's just we need a complete record as well.

16         THE COURT:  All right.  Any other matters?

17         MR. MURPHY:  Not for the defendants, your Honor.

18         MR. LAKIND:  Not for plaintiffs, your Honor.

19         THE COURT:  All right.  Thank you for coming in

01:07   20   today.

21         (Counsel say thank you.)

22         (Matter concluded.)

23

24

25

**'** [1]

**'12** [1] - 8:13

**/**

**/S** [1] - 1:24

**0**

**08608** [1] - 1:15

**1**

**1** [24] - 8:20, 9:3, 9:5,
9:6, 9:7, 10:3, 10:15,
10:17, 10:19, 10:25,
11:7, 11:9, 12:9,
12:10, 12:11, 13:3,
13:7, 16:10, 39:3,
39:16, 42:10, 42:11
**1,800** [1] - 31:24
**1,871** [3] - 21:1, 22:13,
26:7
**10** [2] - 12:9, 37:12
**100** [2] - 23:5
**100,000** [2] - 22:13,
23:24
**1006** [3] - 16:22,
17:19, 45:2
**11** [1] - 12:10
**11-4194** [1] - 1:5
**1186** [2] - 10:16, 10:17
**11th** [4] - 37:16, 38:2,
38:5, 38:17
**12** [8] - 6:17, 12:24,
17:13, 22:15, 22:24,
23:1, 23:10, 41:19
**120** [1] - 17:16
**12th** [2] - 37:16, 38:16
**13-312** [1] - 1:10
**14** [2] - 8:13, 34:2
**15** [1] - 36:23
**15,000** [1] - 21:22
**150** [1] - 13:11
**15th** [1] - 38:18
**16** [1] - 1:13
**18** [2] - 12:24, 14:19
**18th** [2] - 38:19, 39:10
**19th's** [1] - 39:11
**1st** [1] - 39:17

**2**

**2** [20] - 9:6, 9:7, 9:8,
10:20, 10:25, 11:11,

**11:14, 11:16, 11:25,**
12:1, 12:10, 12:11,
13:17, 14:5, 14:11,
14:12, 14:14, 19:16
**200** [4] - 13:12, 15:7,
16:12, 33:3
**2009** [1] - 9:20
**2010** [1] - 6:20
**2011** [1] - 8:13
**2013** [4] - 11:18,
11:20, 12:3, 14:11
**2014** [2] - 6:20, 21:16
**2015** [1] - 1:13
**20th** [1] - 39:12
**21st** [1] - 39:12
**226** [1] - 14:17
**22nd** [2] - 38:19, 39:13
**23rd** [3] - 41:12, 45:8,
46:10
**25th** [8] - 36:8, 36:14,
38:19, 38:22, 38:24,
39:2, 39:15, 39:21
**26th** [4] - 38:25, 39:2,
39:15, 39:21
**27** [1] - 14:19
**27th** [2] - 39:2, 39:16
**28** [2] - 1:23, 12:24
**28th** [2] - 39:3, 39:16
**29th** [2] - 39:3, 39:17
**2nd** [2] - 39:4, 39:18

**3**

**3** [8] - 9:6, 9:8, 10:25,
12:3, 12:6, 12:9,
12:11, 14:5
**30(b)(6** [1] - 42:24
**31(a** [1] - 7:10
**31st** [1] - 9:20
**36(b** [2] - 6:16, 7:20

**4**

**4,000** [2] - 16:12,
16:16
**400** [6] - 15:7, 21:8,
25:17, 26:6, 31:24
**402** [1] - 1:14
**409** [1] - 33:2
**46** [1] - 14:19
**4:00** [1] - 39:3
**4th** [5] - 38:4, 38:5,
39:4, 39:18, 43:18

**5**

**5** [2] - 10:19, 12:8
**50** [5] - 8:14, 14:17,

**14:19, 17:1, 46:25**
**50,000** [2] - 19:16,
19:19
**5th** [2] - 39:4, 39:5,
39:18

**6**

**6** [3] - 10:19, 12:6,
12:7
**60** [1] - 17:14
**62** [1] - 14:19
**6th** [11] - 37:17, 38:1,
38:8, 38:10, 38:12,
38:13, 38:17, 39:9,
43:18, 44:15

**7**

**753** [1] - 1:23
**78** [5] - 22:17, 23:1,
23:15, 24:6, 24:24
**7th** [6] - 38:12, 38:14,
38:17, 39:9, 44:16,
44:20

**8**

**80** [1] - 14:19
**856** [1] - 1:25
**889-4761** [1] - 1:25
**8th** [8] - 11:18, 11:20,
14:11, 38:12, 38:14,
38:17, 39:9, 43:19

**9**

**9** [2] - 14:16, 14:18
**90** [1] - 22:15
**9th** [3] - 11:18, 11:20,
14:11

**A**

**ability** [2] - 21:11,
28:24
**able** [6] - 22:18, 25:22,
26:25, 36:1, 36:6,
37:17
**abreast** [1] - 4:19
**absolutely** [4] - 15:3,
18:7, 41:23, 44:7
**Absolutely** [2] - 27:3,
27:8
**accept** [1] - 15:22
**access** [1] - 10:9
**accommodate** [1] -

**14:19, 17:1, 46:25**
**37:24**
**according** [1] - 6:19
**Act** [1] - 7:2
**actual** [2] - 9:9, 33:9
**addition** [1] - 30:23
**address** [2] - 20:21,
32:16
**adequate** [1] - 8:3
**adjourn** [1] - 38:23
**adjourned** [1] - 37:16
**admin** [2] - 17:15,
18:12, 37:11
**admissibility** [1] -
28:10
**admissible** [4] -
30:19, 31:3, 31:9,
31:14
**admission** [4] - 6:7,
6:8, 33:2, 33:9
**admit** [3] - 15:13,
25:10, 46:7
**advance** [5] - 6:14,
26:13, 41:5, 41:7,
41:10
**advantages** [1] -
41:24
**adversary** [1] - 8:18
**advised** [1] - 45:25
**advisers** [1] - 23:8
**advisor** [4] - 6:23,
18:11, 22:15, 43:6
**advisor/**
  **administrator** [1] -
  37:6
**Advisors** [2] - 10:12,
14:10
**advisors** [1] - 28:16
**advocacy** [1] - 21:18
**affects** [1] - 23:1
**afternoon** [9] - 3:4,
3:6, 3:8, 3:9, 3:12,
3:15, 3:18, 3:21,
39:2
**Agenda** [2] - 10:10,
10:12
**agenda** [2] - 10:17,
11:17
**agendas** [1] - 10:21
**aggregated** [1] - 42:2
**ago** [4] - 21:16, 27:21,
28:11, 32:12
**agree** [3] - 15:25,
23:18, 42:18
**agreed** [1] - 25:7
**agreement** [1] - 23:21
**ahead** [1] - 25:24
**al** [3] - 1:3, 1:6, 1:8
**alert** [1] - 5:14
**allegation** [2] - 18:10,
37:3

**allegations** [1] - 18:23
**allow** [2] - 3:11, 46:4
**allows** [1] - 7:3
**altered** [1] - 24:20
**amount** [6] - 4:4, 13:6,
16:17, 37:7, 42:14,
42:17
**amply** [1] - 45:25
**analogy** [1] - 30:6
**analysis** [1] - 8:2
**analyze** [1] - 30:4
**ANN** [1] - 1:3
**annual** [1] - 9:8
**answer** [1] - 29:1
**apart** [1] - 13:10
**apologize** [5] - 4:15,
4:24, 5:9, 5:22,
20:15
**appearances** [1] - 3:2
**application** [1] - 4:3
**apply** [1] - 24:24
**applying** [1] - 29:22
**appointment** [1] -
36:6
**appreciate** [2] - 5:24,
44:2
**approach** [2] - 8:16,
11:4
**appropriate** [2] - 5:8,
15:22
**approval** [1] - 6:25
**approve** [1] - 7:4
**approved** [2] - 6:21,
8:1
**approving** [2] - 12:19,
13:16
**area** [1] - 27:11
**argue** [2] - 35:9, 36:8
**argued** [3] - 28:11,
34:23, 35:5
**arguing** [4] - 34:11,
35:11, 35:15, 41:25
**argument** [7] - 28:9,
30:13, 30:20, 30:21,
31:12, 32:11, 35:18
**arguments** [3] - 33:15,
35:2, 40:9
**arises** [2] - 20:22,
20:25
**ARNOLD** [1] - 2:4
**Arnold** [1] - 3:5
**arose** [2] - 21:15,
21:16
**Arpert** [2] - 20:5, 25:8
**asserted** [1] - 18:19
**asserting** [1] - 24:7
**assessment** [1] - 29:6
**assets** [1] - 42:3
**assist** [1] - 3:22

assuming [1] - 16:20
attempt [1] - 8:6
attending [1] - 9:19
attorneys [1] - 39:22
available [7] - 17:4,
  38:1, 43:17, 43:20,
  44:12, 44:13, 45:4
aware [1] - 43:13
AXA [3] - 1:6, 1:10, 3:1
AXA's [1] - 9:11

**B**

backed [1] - 37:9
backs [1] - 37:3
bad [1] - 36:2
ball [1] - 40:18
barred [1] - 35:11
based [1] - 12:14
basis [2] - 5:3, 46:5
bearing [1] - 24:6
becomes [1] - 29:6
beginning [2] - 33:12,
  38:1
behalf [3] - 3:10,
  22:15, 23:2
behind [3] - 11:17,
  12:8, 14:13
bench [1] - 46:18
BENEDICT [2] - 2:11,
  3:19
Benedict [1] - 3:19
best [3] - 8:10, 31:20,
  45:9
better [2] - 5:8, 5:10
between [2] - 7:19,
  13:22
beyond [1] - 22:19
big [2] - 10:2, 15:15
bit [4] - 6:14, 23:9,
  36:25, 37:2
BLADER [1] - 2:3
BLANK [1] - 2:7
Blank [3] - 3:10,
  32:23, 34:3
BLUMSTEIN [1] - 2:3
blush [2] - 6:11, 15:1
Board [83] - 4:5, 4:11,
  6:6, 6:21, 6:24, 7:2,
  8:2, 8:6, 8:7, 8:12,
  8:14, 9:13, 10:1,
  11:19, 12:2, 12:5,
  12:13, 13:6, 13:22,
  14:10, 14:13, 14:15,
  14:21, 15:4, 15:5,
  15:8, 15:9, 15:12,
  17:17, 17:20, 17:23,
  18:1, 18:4, 18:6,
  18:7, 18:14, 21:9,

21:18, 21:19, 21:21,
  22:6, 22:8, 22:13,
  22:16, 22:23, 22:25,
  23:9, 24:9, 24:15,
  24:18, 24:19, 25:7,
  26:7, 26:19, 27:1,
  27:5, 27:10, 28:24,
  29:2, 29:4, 29:7,
  29:8, 29:12, 30:2,
  30:9, 30:10, 30:14,
  30:15, 30:25, 31:15,
  31:21, 33:3, 40:18,
  41:1, 41:20, 42:5,
  42:24, 45:7, 45:21,
  46:3, 46:7
board [15] - 9:6, 9:19,
  9:21, 11:18, 24:22,
  29:9, 29:20, 30:25,
  31:10, 31:15, 31:16,
  40:10, 42:20, 47:1,
  47:7
boards [1] - 23:7
Book [28] - 9:3, 9:5,
  9:6, 9:7, 9:8, 10:3,
  10:19, 10:20, 10:25,
  11:9, 12:6, 12:8,
  12:9, 12:10, 12:11,
  13:7, 14:11, 14:12,
  14:14, 16:10, 19:16,
  42:10
book [12] - 9:16, 9:18,
  9:21, 10:13, 10:15,
  10:23, 11:8, 12:14,
  13:14, 14:6, 15:20,
  20:7
books [16] - 7:10,
  9:23, 9:24, 10:1,
  11:1, 11:2, 13:21,
  15:15, 16:10, 17:1,
  17:7, 19:23, 31:8,
  31:10, 32:20, 47:1
break [3] - 13:11,
  13:24, 36:18
breaking [1] - 34:14
breakpoints [1] - 42:2
brief [4] - 21:21,
  25:13, 25:21, 46:16
briefed [1] - 32:10
briefing [2] - 46:5,
  46:18
briefings [1] - 18:5
bring [12] - 4:8, 7:15,
  27:25, 30:11, 30:25,
  31:4, 31:14, 31:16,
  37:4, 37:9, 40:12,
  43:23
broad [1] - 18:2
brought [2] - 22:14,
  33:12
buckets [1] - 37:11

bulk [1] - 14:3
bundled [1] - 8:9
burden [4] - 6:10,
  25:1, 25:10, 25:19
burdening [1] - 17:10
buried [1] - 18:7
business [28] - 7:7,
  7:9, 7:14, 9:10, 9:16,
  12:21, 14:1, 14:4,
  15:13, 18:20, 19:19,
  20:2, 21:18, 21:23,
  21:25, 25:12, 25:14,
  25:16, 25:19, 32:4,
  32:10, 32:12, 32:15,
  43:5, 45:17, 45:19,
  45:20, 46:4
BY [3] - 2:4, 2:7, 2:10

**C**

C.S.R [1] - 1:24
calculation [1] - 16:23
California [2] - 36:8,
  38:25
cannot [3] - 16:24,
  17:2, 27:18
care [1] - 40:5
careful [1] - 29:2
carelessness [1] -
  45:24
case [27] - 6:16, 7:21,
  10:24, 19:2, 21:5,
  22:14, 22:18, 23:15,
  23:20, 24:6, 26:2,
  26:5, 26:23, 26:24,
  29:1, 30:5, 32:14,
  34:23, 35:21, 36:8,
  37:13, 37:16, 39:22,
  41:3, 45:18
cases [3] - 7:20, 21:7,
  36:19
catch [1] - 36:13
categories [1] - 22:23
category [4] - 4:21,
  22:24, 22:25, 23:2
CEO [1] - 43:15
certain [3] - 13:22,
  24:4, 24:7, 26:1,
  29:14
certainly [10] - 5:21,
  6:19, 11:1, 17:21,
  35:6, 35:14, 42:6,
  42:9, 43:25, 44:12
Certified [1] - 1:23
challenged [1] - 6:17
chance [2] - 33:23,
  36:9
chapters [1] - 20:7
charged [1] - 6:17

chart [2] - 16:23,
  28:10
charts [4] - 17:19,
  40:24, 40:25, 45:3
chunk [1] - 41:4
circled [1] - 8:25
cited [1] - 17:19
CIVIL [2] - 1:5, 1:9
claim [2] - 27:11,
  42:19
claiming [2] - 41:21,
  42:3
claims [1] - 22:15
clarify [1] - 27:9
CLARKSON [1] - 1:14
clean [1] - 4:17
clear [1] - 13:1
clearer [1] - 19:8
clearly [4] - 14:1,
  22:24, 35:17, 42:24
clerks [1] - 4:20
clients' [1] - 21:20
close [1] - 4:7
closer [1] - 36:9
CO [1] - 1:6
co [1] - 3:11
co-counsel [1] - 3:11
cognizant [1] - 17:10
collective [1] - 7:19
coming [3] - 36:5,
  38:1, 47:19
commit [1] - 44:11
communications [1] -
  8:24
Company [2] - 7:2, 7:9
comparative [1] -
  31:23
compilation [1] -
  11:16
complaint [1] - 18:10
complete [2] - 15:9,
  47:15
completely [1] - 23:15
compliance [1] -
  37:11
complicated [1] -
  20:18
comply [1] - 4:9
component [1] - 31:12
components [2] -
  13:12, 16:12
computer [1] - 5:17
computers [1] - 45:14
conceding [1] - 15:12
concerns [1] - 47:4
conclude [1] - 7:3
concluded [1] - 47:22
conclusions [1] -
  25:15

confer [3] - 15:24,
  19:11, 19:17
confusing [1] - 14:7
connect [1] - 31:17
connection [1] - 26:14
conscientious [1] -
  29:2
conscientiousness
  [1] - 7:24
consecutively [3] -
  10:14, 10:16, 12:25
consent [1] - 32:4
consider [1] - 30:15
considerably [1] -
  20:18
considered [1] - 30:14
consisting [1] - 33:3
constitute [1] - 26:7
contains [1] - 21:4
content [1] - 16:23
context [3] - 6:15,
  20:21, 20:24
contract [3] - 17:15,
  18:13, 23:7
contracts [2] - 9:9,
  18:13
contrary [1] - 30:17
contrast [1] - 21:8
conveniently [2] -
  16:25, 17:2
conversation [1] -
  21:17
copy [1] - 8:22
core [1] - 7:21
corner [2] - 37:4, 37:9
correct [3] - 1:23,
  35:8, 42:20
Correct [1] - 11:12
correctly [1] - 24:17
Counsel [1] - 47:21
counsel [10] - 3:11,
  7:19, 20:18, 21:17,
  21:23, 23:11, 28:14,
  34:17, 42:22, 42:25
couple [4] - 17:22,
  34:16, 41:8, 41:18
course [14] - 7:6, 7:8,
  9:10, 9:15, 12:21,
  16:7, 19:19, 24:3,
  25:8, 31:19, 34:22,
  35:12, 45:20, 46:3
court [4] - 16:25, 17:3,
  25:8, 39:17
Court [6] - 7:25, 9:1,
  11:6, 22:18, 23:11,
  28:2
COURT [93] - 1:1,
  1:17, 3:1, 3:8, 3:12,
  3:15, 3:18, 3:21,
  4:18, 4:25, 5:10,

5:25, 6:4, 7:6, 8:4, 8:17, 9:2, 9:18, 9:23, 10:5, 11:5, 11:7, 11:10, 11:13, 11:24, 13:19, 16:20, 19:4, 19:22, 20:12, 20:16, 22:20, 24:3, 25:4, 25:24, 26:22, 27:5, 27:13, 27:22, 28:2, 29:17, 30:12, 30:22, 31:6, 31:18, 32:8, 32:18, 32:25, 33:11, 33:14, 33:21, 33:24, 34:5, 34:7, 34:9, 34:12, 34:14, 34:18, 34:24, 35:1, 35:10, 35:20, 36:3, 36:11, 36:16, 37:14, 37:23, 38:7, 38:12, 38:22, 39:1, 39:9, 39:25, 40:3, 40:9, 40:12, 40:15, 41:7, 41:12, 41:16, 43:9, 43:22, 44:1, 44:5, 44:8, 44:14, 44:18, 44:24, 46:20, 46:23, 47:6, 47:16, 47:19

**Court's** [1] - 19:7
**COURTHOUSE** [1] - 1:14
**courts** [1] - 7:24
**cover** [1] - 18:13
**create** [3] - 12:15, 12:25, 42:16
**credit** [1] - 27:11
**criminal** [1] - 36:19
**critical** [3] - 7:17, 12:12, 43:15
**cross** [2] - 14:14, 41:15
**cross-examination** [1] - 41:15
**cull** [1] - 41:3
**cumbersome** [1] - 17:10
**custodian** [6] - 13:19, 13:20, 24:15, 31:6, 31:7, 31:9

## D

**Dan** [1] - 36:4
**data** [2] - 17:14, 17:16
**date** [3] - 4:9, 36:10, 36:13
**DAVID** [1] - 2:7
**David** [1] - 3:9
**dawn** [1] - 5:13
**days** [8] - 13:14,

29:13, 36:20, 36:23, 37:13, 39:8, 39:13, 39:18
**Diligent** [3] - 10:2, 10:3, 29:4
**direct** [1] - 41:9
**directors** [1] - 12:19
**Directors** [4] - 6:21, 21:21, 45:21, 46:3
**discern** [1] - 26:8
**discovery** [1] - 5:1
**discussions** [1] - 25:9
**disk** [3] - 19:22, 42:15, 45:13
**disposition** [2] - 21:12, 26:5
**dispositive** [1] - 5:4
**dispute** [5] - 27:12, 27:24, 31:4, 33:24, 47:11
**disrupt** [1] - 6:13
**disruption** [1] - 45:11
**DISTRICT** [4] - 1:1, 1:1, 1:17, 1:18
**District** [1] - 32:13
**docket** [1] - 4:19
**document** [11] - 13:11, 14:2, 14:8, 20:6, 21:19, 22:1, 27:16, 28:21, 28:25
**documents** [32] - 6:23, 6:24, 10:6, 11:17, 12:17, 19:6, 19:10, 20:3, 20:8, 21:1, 21:5, 21:11, 21:23, 21:24, 22:9, 23:6, 23:23, 24:6, 24:9, 25:11, 25:12, 25:17, 25:20, 26:2, 26:7, 26:11, 32:15, 33:10, 40:20, 41:10, 47:15
**Dolores** [1] - 35:25
**done** [12] - 13:2, 15:18, 18:22, 20:7, 21:13, 22:7, 22:12, 23:2, 27:11, 27:24, 33:8
**double** [6] - 3:25, 5:10, 5:16, 5:22, 17:16, 34:2
**double-spaced** [2] - 5:22, 34:2
**down** [3] - 13:24, 37:15, 41:4
**drawn** [2] - 17:16, 21:9
**Drew** [1] - 3:19
**due** [1] - 29:25
**duplicates** [1] - 17:4
**during** [4] - 24:3, 35:12, 36:17, 45:10

42:9, 45:23
**Diligent** [3] - 10:2,

## E

**early** [4] - 5:11, 5:15, 34:14, 34:20
**ease** [1] - 16:2
**easier** [3] - 5:15, 5:19, 17:22
**EAST** [1] - 1:14
**Ebenhoech/Koppers** [1] - 32:14
**economies** [1] - 42:1
**efficient** [5] - 9:4, 14:22, 16:5, 19:7, 20:10
**eight** [2] - 37:12, 39:8
**either** [1] - 33:11
**electronic** [1] - 10:2
**eliminate** [2] - 19:16, 26:12
**employees** [2] - 12:5, 42:3
**end** [3] - 13:15, 14:20, 42:14
**endeavor** [1] - 43:25
**ending** [1] - 9:20
**enormous** [1] - 42:14
**enormously** [1] - 43:13
**enter** [1] - 3:2
**entire** [3] - 10:13, 10:15, 31:8
**entitled** [1] - 28:20
**EQ** [2] - 10:11, 14:10
**EQAT** [1] - 11:19
**EQUITABLE** [2] - 1:6, 1:10
**Equitable** [1] - 34:21
**ESQUIRE** [6] - 2:4, 2:4, 2:7, 2:10, 2:11, 2:11
**essentially** [1] - 32:14
**et** [3] - 1:3, 1:6, 1:8
**ethics** [1] - 23:7
**evidence** [24] - 16:6, 17:24, 18:6, 18:17, 26:22, 27:12, 27:14, 27:22, 27:23, 27:25, 28:3, 28:6, 28:8, 30:14, 30:15, 30:16, 30:17, 30:18, 31:4, 35:18, 37:4, 46:7, 46:10, 46:21
**evident** [1] - 47:10
**evidential** [1] - 22:1, 29:11
**ex** [1] - 8:24
**exact** [2] - 11:22, 20:5
**Exactly** [1] - 46:20
**exactly** [4] - 16:21,

24:13, 33:21, 47:9
**exam** [1] - 41:9
**examination** [1] - 41:15
**examine** [1] - 23:11
**examined** [2] - 16:25, 17:3
**example** [8] - 8:13, 10:10, 17:12, 19:16, 27:17, 28:8, 28:18, 28:21
**exception** [3] - 21:25, 25:11, 25:20
**excessive** [1] - 6:18
**excuse** [4] - 5:21, 21:19, 26:6, 31:22
**exhibit** [16] - 11:21, 11:22, 13:2, 14:9, 15:7, 16:16, 19:9, 21:1, 21:3, 21:6, 21:8, 23:4, 23:5, 23:6, 26:3, 26:6
**Exhibit** [10] - 8:20, 11:7, 11:11, 11:14, 11:16, 12:1, 13:3, 13:17, 14:5, 42:11
**exhibits** [12] - 11:21, 15:7, 15:8, 16:4, 16:13, 17:11, 17:18, 21:9, 22:13, 26:8, 31:24, 33:2
**expectations** [1] - 34:21
**expedited** [2] - 4:9, 5:2
**expenses** [3] - 22:10, 31:23, 47:11
**expert** [3] - 34:21, 35:11, 37:24
**experts** [6] - 15:6, 35:2, 35:8, 37:19, 38:16, 43:22
**experts'** [1] - 37:21
**explain** [2] - 4:16, 42:9
**explains** [1] - 32:6
**explanation** [1] - 46:16
**extensively** [1] - 15:6
**extent** [4] - 22:7, 22:12, 37:24, 46:18
**eyes** [1] - 5:14

## F

**face** [1] - 30:8
**fact** [6] - 23:22, 28:3, 28:18, 29:7, 30:7, 37:23
**factor** [1] - 7:25

**deal** [7] - 6:13, 14:24, 22:4, 23:12, 28:9, 46:17, 46:19
**dealing** [3] - 4:4, 4:12, 8:8
**December** [3] - 9:20, 41:12, 45:8
**DECEMBER** [1] - 1:13
**decide** [2] - 15:2, 18:1
**decision** [4] - 31:1, 32:13, 34:15, 46:1
**decision-making** [1] - 31:1
**defeats** [1] - 21:6
**DEFENDANT** [1] - 1:11
**defendant** [1] - 44:11
**Defendant's** [8] - 11:7, 11:11, 11:13, 11:15, 12:1, 13:17, 14:5, 42:11
**defendant's** [3] - 12:5, 22:5, 43:15
**Defendants** [2] - 20:25, 28:12
**defendants** [14] - 3:10, 3:14, 3:17, 3:20, 4:14, 21:10, 25:9, 26:10, 26:13, 28:16, 30:18, 33:9, 46:8, 47:17
**DEFENDANTS** [3] - 1:7, 2:8, 2:12
**defending** [1] - 26:24
**defense** [1] - 30:13
**definitively** [1] - 32:12
**delay** [2] - 6:10, 6:13
**delegated** [1] - 18:10
**delete** [1] - 24:10
**deliberative** [1] - 31:17
**demonstrate** [6] - 21:22, 23:13, 25:14, 25:19, 27:15, 30:10
**demonstrative** [1] - 17:18
**depositions** [1] - 10:24
**describe** [1] - 11:13
**designating** [1] - 43:2
**detail** [2] - 13:24, 32:6
**developed** [1] - 29:15
**different** [4] - 4:21, 11:16, 16:13, 18:13, 20:8, 26:6
**differently** [1] - 6:2
**diligence** [3] - 42:7,

# H

factors [4] - 7:22, 7:23, 17:12, 17:13
factual [1] - 31:4
fair [3] - 20:23, 32:7, 32:8
Fair [1] - 4:23
fall [1] - 25:20
familiar [1] - 24:17
fashioned [1] - 5:18
fast [2] - 40:1, 40:3
fear [1] - 16:8
February [2] - 39:5, 39:6
fee [3] - 21:20, 42:5, 42:8
fees [8] - 6:17, 6:21, 6:25, 7:4, 8:8, 12:19, 13:16, 31:23
few [2] - 32:11, 39:13
file [1] - 33:4
filed [1] - 33:4
files [1] - 9:11
financial [1] - 25:16
finder [1] - 28:18
first [19] - 4:11, 6:11, 6:15, 8:25, 11:17, 14:25, 20:21, 20:24, 22:11, 22:24, 23:4, 25:5, 32:23, 43:14, 43:16, 43:17, 43:19, 44:16
First [2] - 4:14, 17:25
FISHER [1] - 1:14
fit [1] - 4:17
fits [2] - 4:21, 17:2
five [7] - 6:20, 8:11, 8:12, 17:14, 34:1, 36:20, 39:10
flying [1] - 38:25
FMG [12] - 18:10, 18:16, 18:21, 21:20, 22:7, 22:12, 22:15, 23:18, 26:17, 28:13, 37:5, 43:5
FMG's [1] - 12:8
follow [2] - 3:24, 4:1
following [1] - 4:6
font [4] - 4:1, 5:16, 5:23, 34:2
FOR [3] - 2:5, 2:8, 2:12
formal [1] - 5:7
format [2] - 45:13
formed [2] - 27:2, 31:1
forth [1] - 45:2
forward [1] - 25:1
foundation [10] - 7:15, 13:5, 15:21, 20:9, 26:19, 27:15, 27:18, 28:17, 28:19, 28:20

foundational [2] - 13:14, 27:19
four [1] - 7:20
frame [1] - 6:9
Francis [1] - 1:24
FRANCIS [1] - 1:24
frankly [1] - 21:2
Friday [3] - 34:5, 34:7, 34:8
front [1] - 18:1
fruitful [1] - 33:19
full [4] - 25:14, 25:15, 33:4, 36:5
full-time [1] - 36:5
fully [2] - 18:1, 22:8
fund [4] - 16:14, 37:6, 42:1, 42:7
funds [28] - 6:18, 17:13, 22:10, 22:15, 22:16, 22:17, 22:20, 22:25, 23:1, 23:2, 23:3, 23:6, 23:7, 23:8, 23:10, 23:15, 24:6, 24:24, 41:17, 41:19, 41:22, 41:24, 42:2, 42:4, 42:6, 42:12, 42:13
FUNDS [1] - 1:10

# G

Gable [1] - 1:24
GABLE [1] - 1:24
gaps [1] - 14:20
Gartenberg [3] - 7:22, 8:1, 17:12
generally [3] - 5:3, 24:15, 45:3
generous [1] - 14:7
given [6] - 6:24, 12:5, 18:23, 25:13, 45:8, 46:15
GLENN [1] - 1:8
goal [1] - 21:6
govern [1] - 7:1
governed [1] - 7:4
greatly [1] - 19:20
grounds [1] - 27:20
GROUP [1] - 1:11
guess [3] - 5:8, 36:22, 46:24
guidance [5] - 6:5, 15:19, 16:19, 33:14, 44:25
guys [1] - 36:4

# H

Hadley [1] - 3:13
HADLEY [1] - 2:10
half [1] - 15:8
hand [2] - 10:18, 11:3
handed [2] - 27:17, 28:22
Handing [2] - 9:1, 11:6
handle [4] - 5:1, 5:2, 6:6, 9:5
handled [1] - 34:22
handwriting [1] - 8:23
happy [2] - 38:9, 38:10
hard [2] - 18:15, 37:7
harm [1] - 42:16
heading [1] - 14:10
hear [2] - 15:2, 35:18
heard [4] - 4:11, 32:11, 33:16, 35:11
hearing [1] - 29:19
HEARING [1] - 1:12
hearsay [6] - 14:2, 14:3, 25:7, 25:11, 25:20, 45:17
heart [1] - 8:10
heed [1] - 40:19
held [1] - 11:20
help [3] - 3:22, 35:22, 43:12
helps [1] - 44:2
hide [1] - 40:18
higher [1] - 21:20
highlight [1] - 10:21
himself [1] - 43:20
hold [1] - 6:12
holiday [1] - 39:11
Honor [105] - 3:4, 3:6, 3:9, 3:14, 3:20, 4:13, 4:14, 4:23, 5:9, 5:22, 6:5, 6:16, 7:9, 7:17, 8:16, 8:21, 8:25, 9:10, 9:17, 10:8, 10:11, 10:17, 10:25, 11:4, 11:12, 12:1, 13:3, 13:18, 14:6, 14:25, 15:5, 15:19, 16:9, 16:19, 17:24, 18:6, 18:9, 18:19, 18:24, 19:3, 19:25, 20:13, 20:14, 22:3, 23:16, 25:3, 25:6, 25:23, 25:25, 26:10, 27:9, 27:17, 27:21, 28:7, 28:10, 28:11, 28:22, 28:23, 30:21, 31:19, 32:7, 32:9, 32:17, 32:24, 33:7, 33:17, 34:1, 34:6,

34:8, 34:10, 34:16, 35:14, 35:24, 36:7, 36:22, 36:25, 37:18, 38:3, 38:6, 38:11, 38:20, 38:24, 39:8, 39:20, 39:23, 40:7, 40:8, 40:11, 40:13, 40:16, 41:14, 41:18, 41:22, 42:11, 42:16, 42:18, 43:6, 43:7, 44:4, 44:17, 44:22, 46:15, 47:13, 47:17, 47:18
Honor's [4] - 33:18, 33:20, 46:16, 47:3
HONORABLE [1] - 1:17
hooked [1] - 10:9
hopefully [1] - 26:2, 40:3
hoping [2] - 4:15, 6:3
HORA [2] - 2:11, 3:16
Hora [2] - 3:16, 3:18
hour [1] - 39:15
huge [1] - 18:24
hundred [2] - 40:22, 41:2
hundreds [1] - 19:14

# I

idea [1] - 14:12
ideas [1] - 33:22
identify [5] - 19:11, 31:21, 40:20, 40:23, 40:25
imagine [1] - 41:8
important [5] - 5:5, 5:16, 7:25, 17:25, 24:2
impossible [3] - 23:11, 23:25, 26:8
IN [1] - 1:20
inclinations [1] - 33:18
include [1] - 15:22
included [1] - 21:12
including [1] - 42:23
incomplete [1] - 14:22
independence [1] - 7:23
independent [3] - 6:22, 6:23, 7:24
indicate [1] - 32:3
indicated [2] - 20:18, 21:17
indicates [3] - 23:22, 25:23, 25:25
indication [1] - 35:25

indicia [1] - 29:7
individual [1] - 42:13
industry [1] - 10:3
Industry [1] - 14:11
inextricably [1] - 22:2
inferences [1] - 29:14
informally [1] - 33:8
information [20] - 7:2, 7:4, 8:3, 12:19, 13:15, 18:3, 22:16, 22:23, 23:8, 23:14, 24:1, 26:25, 29:3, 29:5, 29:10, 29:16, 30:24, 31:1, 32:3
informed [5] - 18:1, 22:8, 29:6, 29:12, 30:10
initial [1] - 24:9
INS [1] - 1:6
insofar [1] - 23:13
inspection [3] - 7:11, 9:13, 17:4
instance [2] - 23:4, 29:19
instances [2] - 42:22, 42:25
instead [1] - 12:24
intent [1] - 19:24
intention [1] - 19:25
interest [1] - 26:16
interested [1] - 35:15
Internet [7] - 10:6, 29:3, 30:2, 30:8, 30:24, 31:2, 31:13
interrupted [1] - 39:14
intertwined [1] - 22:2
introduce [1] - 3:11
Investment [2] - 7:1, 7:9
IPad [1] - 10:8
Ironically [1] - 47:13
irrelevant [9] - 16:1, 21:5, 22:14, 23:15, 25:2, 26:15, 26:16, 41:22, 42:14
isolate [1] - 21:11
isolated [1] - 18:22
issue [36] - 4:16, 5:4, 6:1, 6:11, 7:16, 8:14, 16:14, 19:17, 21:22, 22:11, 23:13, 24:1, 25:13, 26:17, 26:21, 29:12, 29:15, 29:23, 29:25, 31:19, 32:5, 32:10, 32:25, 33:2, 35:5, 37:1, 40:4, 41:18, 41:19, 42:1, 42:4, 42:6, 42:7, 45:1, 46:17
issues [13] - 6:9, 22:2,

22:4, 22:6, 22:21,
23:20, 29:1, 31:22,
32:16, 34:17, 41:23,
43:8, 43:12
**items** [1] - 46:13

## J

**JAMES** [1] - 2:11
**January** [4] - 34:20,
36:7, 36:14, 38:5
**JERSEY** [3] - 1:1,
1:15, 1:18
**Jersey** [1] - 32:14
**job** [2] - 24:13, 25:4
**Joenk** [3] - 12:7,
43:14, 44:6
**judge** [1] - 40:21
**Judge** [2] - 20:5, 25:8
**JUDGE** [1] - 1:17
**judges** [1] - 5:1
**JUDGMENT** [1] - 1:20
**judgment** [4] - 6:16,
7:22, 21:10, 26:14
**judgments** [1] - 25:15
**July** [4] - 11:18, 11:20,
12:2, 14:11
**jump** [1] - 14:17
**jurors** [1] - 46:21
**jury** [1] - 35:10

## K

**keep** [2] - 4:19, 24:13
**kept** [15] - 7:6, 7:8,
7:11, 9:10, 9:15,
12:20, 12:23, 13:8,
14:21, 16:6, 19:6,
19:18, 24:18, 24:21,
45:19
**kind** [6] - 4:17, 4:21,
6:11, 37:3, 45:13
**King** [1] - 39:11
**KISTLER** [2] - 2:7, 3:9
**Kistler** [2] - 3:10, 3:12
**knowledge** [1] - 24:23

## L

**LAKIND** [58] - 2:3, 2:4,
2:4, 3:4, 3:6, 8:21,
20:14, 20:17, 22:22,
25:3, 25:6, 25:25,
27:3, 27:8, 27:14,
28:1, 28:7, 30:6,
30:20, 30:23, 31:12,
31:19, 32:9, 32:24,
33:6, 33:13, 33:17,

33:23, 34:1, 34:6,
34:8, 34:16, 34:19,
34:25, 35:5, 35:24,
36:7, 36:14, 36:22,
37:18, 38:3, 38:20,
38:24, 39:7, 39:20,
40:1, 40:7, 40:11,
43:7, 43:10, 44:4,
44:17, 44:22, 46:15,
46:22, 47:3, 47:9,
47:18
**Lakind** [7] - 3:5, 3:7,
38:15, 43:22, 44:1,
45:16
**Lakinds** [1] - 3:8
**large** [2] - 23:19, 41:4
**larger** [1] - 5:23
**last** [3] - 10:15, 40:17,
42:18
**late** [1] - 43:7
**law** [1] - 4:20
**lay** [10] - 7:15, 9:14,
13:5, 15:21, 20:9,
26:18, 27:15, 27:18,
28:17, 28:20
**learn** [1] - 35:21
**least** [5] - 6:18, 6:20,
8:12, 23:9
**leave** [1] - 34:15
**left** [2] - 32:3
**legal** [2] - 29:12, 29:15
**legend** [2] - 10:11,
10:12
**legitimate** [1] - 25:16
**length** [1] - 32:11
**lengthy** [1] - 13:5
**less** [1] - 24:24
**letter** [9] - 29:14,
29:18, 29:21, 30:4,
32:22, 32:23, 33:6,
34:2, 34:3
**Letters** [1] - 3:23
**letters** [2] - 4:18, 8:5
**life** [1] - 17:21
**LIFE** [1] - 1:6
**Likewise** [1] - 29:15
**limine** [5] - 35:3, 35:9,
35:17, 35:20, 37:25
**LIMINE/SUMMARY** [1]
- 1:20
**limines** [5] - 34:20,
38:4, 38:5, 38:7,
38:10
**lined** [1] - 37:19
**list** [22] - 13:3, 14:8,
14:9, 15:7, 16:4,
16:16, 17:7, 18:2,
18:8, 21:1, 21:2,
21:3, 21:6, 21:8,
23:5, 26:3, 26:6,

41:4, 43:10, 43:11,
45:6, 47:9
**listed** [1] - 46:13
**listen** [1] - 35:2
**listening** [2] - 33:17,
44:25
**lists** [1] - 11:21
**litigation** [1] - 7:13
**LLP** [2] - 2:7, 2:10
**local** [2] - 3:25, 4:9
**located** [1] - 12:8
**lodge** [1] - 16:18
**look** [19] - 5:5, 8:15,
9:16, 10:4, 10:10,
10:17, 11:25, 14:9,
16:21, 23:18, 26:1,
26:11, 29:10, 31:5,
41:9, 42:10, 45:5,
45:21, 46:2
**looked** [3] - 15:6,
28:25, 45:1
**looking** [6] - 27:6,
27:23, 33:14, 36:19,
45:11, 45:20
**looks** [3] - 4:5, 39:2,
39:18
**Luther** [1] - 39:11

## M

**magistrate** [1] - 5:1
**magnitude** [4] - 21:4,
21:6, 23:13, 32:5
**mailed** [1] - 29:13
**mailing** [1] - 29:18
**main** [1] - 17:24
**maintained** [1] - 31:10
**majority** [4] - 6:22,
21:4, 22:12, 25:18
**MANAGEMENT** [1] -
1:11
**management** [3] -
17:15, 18:12, 37:11
**manner** [1] - 20:15
**margins** [1] - 17:14
**mark** [2] - 11:7, 11:10
**Martin** [1] - 39:11
**MARY** [1] - 1:3
**massive** [2] - 14:20,
37:7
**material** [13] - 17:20,
18:21, 21:9, 21:18,
22:13, 22:16, 22:23,
22:24, 22:25, 27:10,
30:8, 31:21, 36:2
**materials** [35] - 4:4,
4:11, 6:6, 7:18, 8:6,
8:8, 8:12, 9:13,
11:22, 13:6, 14:13,

14:15, 14:21, 15:4,
15:6, 15:8, 15:9,
15:12, 17:11, 17:17,
17:20, 17:23, 18:7,
18:14, 22:6, 25:7,
26:7, 26:20, 33:3,
40:19, 41:1, 42:25,
43:4, 45:6, 45:22
**Matter** [1] - 47:22
**matter** [9] - 4:15, 5:1,
8:11, 18:10, 18:19,
20:25, 21:12, 43:4,
44:7
**matters** [2] - 8:6,
47:16
**McCloy** [2] - 2:10,
3:14
**mean** [8] - 8:11, 10:5,
13:15, 19:3, 24:13,
25:4, 25:7, 29:18
**meet** [4] - 13:8, 15:24,
19:11, 19:17
**meeting** [11] - 9:6, 9:8,
9:19, 9:25, 11:18,
11:19, 11:20, 12:2,
24:19, 29:4, 45:23
**Meeting** [1] - 14:11
**meetings** [5] - 8:12,
8:13, 8:14, 13:22,
47:7
**member** [8] - 9:21,
29:9, 30:25, 31:10,
31:15, 31:17, 42:20,
47:1
**members** [10] - 6:24,
27:1, 27:6, 29:5,
30:2, 30:9, 30:25,
31:16, 45:7, 46:7
**mention** [1] - 39:21
**mentioned** [2] - 28:23,
31:25
**mere** [1] - 30:7
**merely** [2] - 29:11,
31:13
**Merely** [2] - 29:16,
31:2
**merit** [1] - 30:12
**might** [16] - 6:11, 8:24,
12:24, 24:23, 28:10,
29:24, 36:1, 36:9,
36:17, 36:18, 37:17,
38:22, 38:24, 39:14,
39:21, 44:18
**MILBANK** [1] - 2:10
**Milbank** [4] - 3:13,
3:16, 3:19, 4:14
**million** [1] - 21:2
**mind** [2] - 5:13, 35:20
**minute** [2] - 43:9, 47:7
**minutes** [7] - 11:19,

12:1, 12:4, 12:12,
32:11, 40:10, 40:14
**misled** [2] - 46:23,
46:24
**missing** [2] - 36:12,
45:10
**moment** [3] - 27:4,
27:9, 27:21
**Monday** [2] - 34:12,
38:21
**month** [1] - 24:21
**months** [1] - 28:11
**morning** [1] - 5:12
**most** [4] - 7:25, 17:25,
21:9, 41:14
**motion** [19] - 4:5, 4:6,
4:17, 4:20, 5:3, 5:7,
5:23, 6:2, 20:20,
21:10, 21:13, 25:10,
26:14, 32:2, 32:6,
33:8, 39:11, 39:17
**motions** [9] - 35:3,
35:9, 35:16, 35:21,
37:25, 38:13, 43:19,
44:14, 44:19
**MOTIONS** [1] - 1:20
**move** [6] - 6:8, 12:17,
13:6, 13:8, 32:19,
44:2
**moved** [1] - 17:23
**moving** [2] - 32:18,
33:9
**MR** [106] - 3:4, 3:6,
3:9, 3:13, 3:16, 3:19,
4:13, 4:23, 5:9, 5:21,
6:1, 6:5, 7:8, 8:9,
8:19, 8:21, 8:22, 9:3,
9:22, 9:24, 10:7,
11:9, 11:12, 11:15,
11:25, 13:23, 17:9,
19:5, 19:24, 20:13,
20:14, 20:17, 22:22,
25:3, 25:6, 25:25,
27:3, 27:8, 27:14,
28:1, 28:7, 30:6,
30:20, 30:23, 31:12,
31:19, 32:9, 32:24,
33:6, 33:13, 33:17,
33:23, 34:1, 34:6,
34:8, 34:10, 34:13,
34:16, 34:19, 34:25,
35:5, 35:8, 35:14,
35:23, 35:24, 36:7,
36:12, 36:14, 36:15,
36:22, 36:25, 37:18,
38:3, 38:5, 38:9,
38:20, 38:24, 39:7,
39:20, 40:1, 40:7,
40:8, 40:11, 40:13,
40:16, 41:8, 41:13,

41:17, 43:7, 43:10, 43:18, 43:24, 44:4, 44:7, 44:10, 44:17, 44:21, 44:22, 44:23, 46:15, 46:22, 47:3, 47:9, 47:13, 47:17, 47:18

**MURPHY** [49] - 2:10, 3:13, 4:13, 4:23, 5:9, 5:21, 6:1, 6:5, 7:8, 8:9, 8:19, 8:22, 9:3, 9:22, 9:24, 10:7, 11:9, 11:12, 11:15, 11:25, 13:23, 17:9, 19:5, 19:24, 20:13, 34:10, 34:13, 35:8, 35:14, 35:23, 36:12, 36:15, 36:25, 38:5, 38:9, 40:8, 40:13, 40:16, 41:8, 41:13, 41:17, 43:18, 43:24, 44:7, 44:10, 44:21, 44:23, 47:13, 47:17

**Murphy** [5] - 3:13, 3:15, 4:13, 35:7, 36:23

**must** [2] - 7:2, 17:3

**mutual** [7] - 6:17, 22:15, 22:16, 22:17, 24:6, 24:24, 37:6

## N

**narrow** [1] - 33:24
**nature** [4] - 5:4, 29:21, 32:15, 45:4
**nearly** [1] - 21:1
**necessarily** [1] - 18:3
**need** [20] - 3:24, 12:17, 13:6, 16:9, 16:11, 17:23, 18:15, 19:2, 26:18, 27:15, 28:17, 30:10, 30:24, 31:9, 32:16, 35:17, 36:3, 37:5, 37:9, 47:15
**needed** [1] - 9:4
**needs** [2] - 4:8, 43:23
**negligence** [1] - 45:24
**negotiate** [1] - 21:20
**negotiated** [2] - 42:5, 42:8
**neighbors** [1] - 29:21
**new** [2] - 16:16, 16:18
**NEW** [3] - 1:1, 1:15, 1:18
**New** [1] - 32:13
**next** [7] - 34:14, 34:15, 38:18, 39:10, 41:8,

46:9
**NO** [2] - 1:5, 1:9
**notes** [2] - 5:19, 47:1
**nothing** [1] - 22:17
**notice** [4] - 4:20, 29:19, 29:23, 29:25
**notion** [1] - 29:11
**November** [1] - 21:16
**number** [7] - 11:23, 22:7, 22:8, 23:19, 32:9, 34:20, 38:23
**Number** [3] - 22:7, 25:6, 34:19
**numbered** [4] - 10:14, 10:16, 12:25
**numbers** [3] - 10:22, 12:14, 14:19
**numerous** [2] - 10:24, 42:5

## O

**o'clock** [2] - 39:3, 39:16
**object** [8] - 16:13, 19:9, 19:10, 20:11, 25:17, 31:24, 36:11, 46:19
**objected** [2] - 15:11, 47:12
**objecting** [1] - 27:19
**objection** [6] - 15:10, 15:15, 15:16, 16:3, 32:21, 36:15
**objections** [7] - 15:24, 16:18, 26:12, 29:24, 34:21, 40:6, 46:13
**obligation** [1] - 46:8
**obviate** [1] - 43:12
**obviates** [1] - 47:3
**obviously** [3] - 6:8, 13:24, 43:21
**Obviously** [1] - 14:17
**odd** [1] - 21:8
**OF** [2] - 1:1, 1:18
**offer** [2] - 40:17, 40:20
**office** [2] - 24:20, 35:25
**OFFICIAL** [1] - 1:25
**often** [1] - 9:25
**old** [2] - 5:18, 29:13
**ON** [1] - 1:20
**once** [1] - 35:5
**one** [44] - 4:3, 7:23, 8:19, 9:21, 11:3, 11:10, 11:17, 11:21, 12:2, 12:6, 12:9, 13:13, 13:20, 14:2, 14:7, 15:12, 15:15,

15:20, 16:3, 17:13, 17:25, 18:11, 21:2, 21:16, 22:7, 23:19, 25:6, 27:1, 27:9, 28:8, 29:1, 30:6, 31:12, 32:9, 34:19, 36:12, 37:19, 41:20, 42:1, 42:7, 42:23
**one's** [1] - 12:6
**ones** [1] - 24:19
**opinions** [3] - 21:24, 25:18, 27:2
**opportunity** [5] - 21:21, 25:13, 28:6, 32:16, 33:16
**order** [3] - 4:8, 6:2, 26:3
**ordinary** [8] - 7:6, 7:8, 9:10, 9:15, 12:21, 16:6, 19:18, 45:20
**originals** [2] - 17:4, 45:4
**otherwise** [1] - 27:16
**overall** [2] - 12:14, 41:25
**overlap** [1] - 23:1
**overlapping** [2] - 22:21, 41:23
**overview** [1] - 12:8
**overwhelmed** [1] - 21:2
**overwhelming** [2] - 22:12, 25:18

## P

**page** [24] - 5:14, 8:25, 10:13, 10:15, 12:3, 12:7, 12:10, 14:16, 14:18, 14:19, 15:11, 15:12, 15:15, 20:1, 26:15, 26:16, 34:2, 42:12, 42:20, 42:21
**Page** [1] - 12:9
**pages** [31] - 5:19, 10:14, 10:23, 12:16, 12:23, 12:24, 12:25, 14:17, 15:24, 15:25, 16:15, 16:16, 17:7, 19:15, 19:16, 19:19, 21:2, 21:22, 22:13, 23:25, 24:4, 24:8, 24:13, 24:22, 26:6, 33:3, 40:22, 40:25, 45:10, 45:12
**paper** [1] - 23:25
**papers** [3] - 20:15, 22:5, 33:19
**part** [3] - 6:25, 31:1,

41:20
**parte** [1] - 8:24
**particularly** [1] - 9:8
**parties** [8] - 3:22, 5:6, 15:3, 16:21, 20:23, 26:4, 26:15, 29:23
**partners** [2] - 37:20
**parts** [1] - 47:7
**party** [2] - 26:4, 45:5
**patience** [1] - 44:23
**PC** [1] - 2:3
**pending** [1] - 36:19
**people** [3] - 16:2, 29:19, 36:1
**perceive** [1] - 22:3
**percent** [1] - 41:2
**performance** [2] - 22:9, 47:11
**perhaps** [2] - 6:16, 28:7
**period** [1] - 6:18
**periods** [1] - 13:22
**permitted** [2] - 19:8, 25:21
**person** [2] - 24:16, 24:17
**perspective** [1] - 37:19
**pertain** [1] - 23:6
**PETER** [1] - 1:17
**PGS** [2] - 1:5, 1:10
**photographs** [1] - 16:24
**phrase** [1] - 17:2
**piece** [3] - 12:18, 18:25, 28:8
**pieces** [2] - 18:13, 18:22
**place** [1] - 14:18
**plaintiff** [1] - 3:3
**plaintiff's** [3] - 11:21, 14:8, 14:9
**PLAINTIFFS** [3] - 1:4, 1:8, 2:5
**Plaintiffs** [2] - 15:11, 26:13
**plaintiffs** [14] - 3:5, 3:7, 6:17, 6:19, 13:2, 13:9, 14:1, 19:9, 20:19, 23:16, 28:13, 32:7, 45:8, 47:18
**planning** [1] - 29:20
**plus** [1] - 31:10
**point** [8] - 4:23, 8:2, 14:1, 19:4, 28:4, 33:12, 35:15, 41:13
**pointing** [2] - 41:24, 41:25
**points** [3] - 17:14, 17:16, 41:18

**poor** [1] - 30:6
**portfolio** [1] - 37:11
**portion** [1] - 26:23
**portions** [3] - 18:14, 19:11, 19:15
**position** [3] - 12:21, 34:3, 37:2
**possible** [1] - 38:20
**post** [2] - 18:5, 46:17
**posted** [5] - 10:3, 10:5, 29:3, 29:7, 30:8
**posting** [7] - 29:11, 29:16, 30:1, 30:23, 31:2, 31:13, 31:17
**potential** [1] - 6:12
**practical** [2] - 20:10, 38:13
**practice** [2] - 4:10, 35:16
**precision** [1] - 41:2
**preference** [1] - 35:6
**premise** [1] - 32:11
**prepare** [5] - 5:11, 18:16, 19:1, 26:9, 47:4
**prepared** [12] - 7:13, 17:18, 21:23, 23:18, 23:19, 23:22, 28:13, 28:14, 28:16, 28:17, 43:11
**present** [6] - 5:6, 28:6, 29:24, 30:15, 32:20, 38:16
**presentations** [1] - 12:4
**presented** [9] - 4:15, 5:6, 6:2, 10:1, 11:22, 12:13, 15:20, 24:18, 32:25
**presenter** [1] - 10:19
**presenting** [1] - 24:4
**presents** [1] - 30:14
**president** [1] - 44:11
**presumptions** [1] - 29:15
**pretrial** [2] - 21:7, 26:3
**problem** [9] - 15:2, 16:1, 18:20, 20:17, 20:22, 20:25, 21:15, 36:16, 42:8
**problems** [1] - 38:13
**procedural** [1] - 6:11
**procedure** [1] - 47:3
**proceed** [3] - 36:10, 39:24, 45:15
**process** [4] - 21:7, 29:25, 31:2, 31:17
**profit** [1] - 17:14
**profitability** [4] - 12:8,

17:13, 31:23, 41:25
**progress** [2] - 15:3, 19:21
**projected** [1] - 37:12
**properly** [1] - 26:9
**proponent** [2] - 16:22, 17:3
**propose** [1] - 20:22
**prove** [1] - 16:23
**provide** [2] - 26:3, 37:10
**provider** [1] - 10:2
**pull** [7] - 12:16, 12:24, 15:25, 16:15, 20:7, 23:14, 41:10
**pulled** [2] - 12:23, 14:12
**purpose** [1] - 26:3
**purposes** [1] - 16:2
**put** [14] - 5:17, 8:6, 8:7, 13:5, 13:7, 16:5, 16:10, 18:16, 18:20, 18:24, 19:22, 26:25, 37:8, 37:23
**puts** [1] - 12:21
**putting** [1] - 26:19

### Q

**qualifies** [1] - 32:4
**qualify** [3] - 13:25, 17:19, 32:15
**quarter** [1] - 9:20
**questioned** [1] - 12:14
**questioning** [1] - 45:23
**quick** [2] - 43:8, 43:9
**quite** [1] - 13:25

### R

**R.M.R** [1] - 1:24
**raise** [3] - 34:16, 36:9, 43:8
**random** [3] - 10:23, 12:16, 12:23
**rate** [1] - 44:24
**read** [10] - 5:15, 8:5, 30:2, 30:9, 35:17, 42:20, 42:21, 45:18, 46:25, 47:2
**reading** [1] - 4:22
**realized** [1] - 43:11
**really** [6] - 6:12, 8:1, 9:4, 16:12, 20:1, 32:6
**reason** [3] - 14:24, 37:17, 42:17

**reasonable** [3] - 17:5, 20:23, 45:5
**reasonably** [1] - 7:3
**reasons** [3] - 17:22, 17:24, 18:21
**rebuttal** [1] - 41:3
**receive** [1] - 26:5
**received** [2] - 29:14, 30:4
**recently** [1] - 21:15
**recognize** [1] - 6:10
**record** [14] - 1:15, 12:12, 12:15, 12:24, 13:1, 15:9, 18:4, 19:8, 21:18, 21:25, 32:4, 32:10, 43:5, 47:15
**recordings** [1] - 16:24
**records** [27] - 7:10, 7:14, 13:20, 13:21, 14:1, 14:4, 15:13, 16:6, 18:20, 20:2, 21:23, 24:14, 24:15, 25:12, 25:14, 25:16, 25:19, 31:7, 31:9, 32:13, 32:16, 43:5, 45:17, 45:19, 46:2
**redact** [3] - 16:14, 42:10, 42:13
**redactions** [2] - 16:15, 45:10
**reduce** [1] - 19:13
**reduction** [1] - 42:8
**reductions** [1] - 42:5
**refer** [2] - 11:1, 17:7
**reference** [2] - 12:5, 14:15
**referenced** [1] - 14:13
**references** [10] - 10:18, 10:19, 10:21, 12:4, 12:6, 12:9, 12:10, 14:21
**referred** [2] - 10:25, 12:7, 45:7
**referring** [1] - 45:19
**regard** [8] - 17:9, 22:17, 23:10, 23:17, 23:21, 27:19, 29:23, 40:10
**regardless** [2] - 5:23, 18:18
**related** [1] - 29:18
**relates** [4] - 16:14, 22:24, 31:22, 37:1
**relevance** [1] - 31:20
**relevant** [12] - 6:18, 21:12, 22:6, 23:9, 24:11, 24:12, 26:5, 26:9, 27:1, 30:24, 42:10, 42:22

**relied** [4] - 12:19, 31:11, 31:25, 46:3
**rely** [3] - 13:15, 42:21, 46:10
**relying** [6] - 15:5, 15:14, 46:9, 47:6, 47:10, 47:14
**remainder** [1] - 23:17
**remaining** [1] - 23:23
**remove** [1] - 19:19
**reply** [1] - 34:9
**Report** [1] - 14:11
**REPORTER** [1] - 1:25
**reports** [1] - 28:15
**represent** [1] - 23:10
**represents** [1] - 31:21
**request** [1] - 44:9
**require** [1] - 26:14
**required** [2] - 1:23, 18:12
**requirement** [1] - 13:8
**requirements** [1] - 3:25
**requires** [1] - 7:10
**reserve** [1] - 35:3
**resolve** [3] - 9:12, 23:24, 32:5
**resolved** [1] - 15:10
**resolving** [1] - 15:3
**respect** [2] - 13:4, 33:2
**respectfully** [2] - 21:13, 23:12
**respects** [1] - 19:2
**responded** [1] - 33:1
**responding** [2] - 33:7, 34:3
**response** [2] - 33:4
**result** [1] - 24:19
**review** [9] - 10:6, 21:3, 24:5, 29:5, 31:16, 42:24, 43:3, 45:9
**reviewed** [4] - 8:7, 12:13, 28:25, 30:25
**reviewing** [1] - 22:5
**reviews** [1] - 44:25
**revolved** [1] - 20:20
**right-hand** [1] - 10:18
**Rob** [1] - 3:6
**Robert** [1] - 3:16
**ROBERT** [2] - 2:4, 2:11
**ROME** [1] - 2:7
**Rome** [3] - 3:10, 32:23, 34:4
**rule** [5] - 25:11, 25:21, 30:18, 45:2, 45:3
**Rule** [1] - 16:22
**rules** [6] - 3:24, 3:25,

**relied** — 4:2, 4:6, 7:10, 46:20
**ruling** [2] - 22:1, 44:25

### S

**SANFORD** [1] - 1:8
**satisfy** [1] - 21:24
**saw** [2] - 18:4, 42:8
**scale** [1] - 42:1
**SCC** [2] - 7:11, 7:12
**schedule** [2] - 37:22, 44:11
**SEAN** [1] - 2:10
**Sean** [2] - 3:13, 4:13
**SEC** [2] - 9:12, 9:14
**second** [9] - 10:10, 11:18, 22:25, 24:1, 26:21, 31:3, 31:14, 35:24, 41:13
**secondly** [3] - 4:3, 18:9, 20:22
**Secondly** [2] - 25:23, 43:14
**secretary** [1] - 24:14
**Section** [2] - 1:23, 7:10
**section** [1] - 7:1
**see** [17] - 4:16, 4:20, 9:13, 10:11, 14:16, 18:15, 19:12, 30:3, 30:12, 30:17, 40:1, 41:6, 45:12, 45:14, 45:15, 46:24
**seem** [5] - 4:9, 6:11, 14:22, 15:1, 16:7
**self** [1] - 47:10
**self-evident** [1] - 47:10
**send** [1] - 29:21
**sense** [5] - 10:22, 30:19, 33:19, 35:13, 37:2
**sensibly** [1] - 21:3
**sent** [1] - 30:4
**separate** [3] - 11:17, 13:11, 21:1
**served** [1] - 20:25
**services** [1] - 37:10
**serving** [1] - 21:5
**set** [4] - 11:19, 16:18, 36:6, 45:2
**sets** [1] - 43:15
**seven** [3] - 7:20, 36:20, 39:7
**SHERIDAN** [1] - 1:17
**shorten** [1] - 19:20
**show** [17] - 4:8, 6:3, 8:14, 8:17, 13:20, 18:21, 19:2, 20:4,

**showed** [1] - 20:5
**showing** [3] - 19:25, 27:23, 47:14
**side** [4] - 5:19, 10:18, 28:10
**side-by-side** [1] - 28:10
**significant** [8] - 5:4, 7:16, 19:15, 27:12, 31:22, 40:19, 41:19, 42:16
**simple** [1] - 22:4
**Simply** [1] - 26:19
**simply** [6] - 23:10, 26:12, 26:16, 27:16, 28:22, 32:6
**single** [5] - 12:18, 15:10, 15:11, 19:9, 23:6
**sit** [1] - 26:15
**site** [1] - 29:4
**sits** [1] - 41:20
**SIVOLELLA** [1] - 1:3
**Sivolella** [1] - 3:1
**six** [3] - 7:22, 13:13, 46:21
**size** [2] - 4:1, 5:16
**skinny** [1] - 14:6
**smart** [2] - 27:7, 46:6
**smoother** [1] - 44:9
**smoothly** [1] - 44:2
**solution** [1] - 20:23
**sometimes** [1] - 9:6
**soon** [1] - 40:1
**Sorry** [1] - 43:18
**sorry** [4] - 25:23, 34:6, 44:1, 44:4
**sort** [2] - 12:15, 37:7
**source** [1] - 17:20
**space** [1] - 3:25
**spaced** [2] - 5:22, 34:2
**spacing** [2] - 5:10, 5:16
**spans** [1] - 6:19
**speaking** [1] - 34:17
**specific** [2] - 40:25, 46:13
**specifically** [1] - 10:9
**spending** [1] - 42:3
**spent** [1] - 35:11
**spoken** [1] - 43:21
**squarely** [1] - 4:17
**squinting** [1] - 5:14
**stack** [1] - 16:10
**stage** [1] - 43:15
**stand** [2] - 20:4, 41:15

**standard** [1] - 8:1
**start** [13] - 3:2, 10:14, 10:23, 19:21, 20:24, 35:22, 37:15, 37:17, 38:6, 38:10, 38:14, 44:16, 45:8
**started** [2] - 14:25, 44:19
**starting** [2] - 8:2, 38:16
**starts** [1] - 14:16
**STATE** [1] - 1:14
**state** [1] - 16:21
**STATES** [1] - 1:1
**statute** [1] - 7:5
**statutes** [1] - 7:1
**step** [2] - 31:3, 31:14
**still** [4] - 3:23, 3:24, 5:14, 43:5
**stipulate** [1] - 19:17
**straightforward** [1] - 22:4
**STREET** [1] - 1:14
**stuff** [6] - 8:25, 18:14, 40:23, 41:14, 41:21
**sub** [2] - 18:11, 28:16
**sub-advisor** [1] - 18:11
**sub-advisors** [1] - 28:16
**subject** [3] - 7:11, 9:13, 46:5
**subjectivity** [1] - 13:10
**submit** [3] - 23:12, 33:19, 34:1
**submitted** [2] - 20:15, 34:4
**subset** [1] - 26:1
**substance** [1] - 42:19
**substantially** [1] - 6:13
**substantive** [5] - 18:25, 22:2, 22:9, 31:20, 34:3
**suggest** [1] - 39:24
**summaries** [1] - 46:10
**summarize** [2] - 18:22, 42:22
**summarizes** [1] - 43:1
**summary** [18] - 6:16, 7:22, 16:22, 17:5, 17:6, 17:19, 18:8, 21:10, 26:14, 37:5, 40:24, 45:2, 45:3, 46:8, 46:14, 47:2, 47:8
**Supreme** [1] - 7:25
**suspect** [1] - 20:3
**system** [1] - 10:2

**SZAFERMAN** [1] - 2:3
**Szaferman** [1] - 3:5

**T**

**tab** [18] - 10:10, 10:19, 10:22, 11:18, 11:25, 12:6, 12:8, 12:9, 12:10, 12:11, 12:14, 14:5, 14:12, 14:14, 16:3
**table** [1] - 9:14
**tabs** [3] - 11:2, 11:17, 20:6
**tall** [1] - 16:7
**technical** [2] - 36:1, 36:4
**tee** [1] - 6:1
**tempted** [1] - 40:13
**tend** [1] - 8:9
**terms** [2] - 40:16, 41:17
**testified** [2] - 29:5, 42:24
**testify** [1] - 31:16
**testimony** [9] - 13:14, 15:2, 17:8, 29:9, 30:8, 34:21, 38:14, 42:21, 43:2
**themselves** [1] - 3:11
**There'd** [1] - 9:24
**there'd** [1] - 13:10
**They've** [2] - 8:20, 47:12
**they've** [1] - 20:7
**thinking** [4] - 27:2, 33:20, 33:21, 44:14
**thinks** [1] - 26:4
**third** [3] - 11:20, 23:2, 31:19
**Third** [2] - 26:10, 36:7
**thousand** [4] - 20:3, 20:8, 20:9, 40:22
**thousands** [1] - 19:15
**three** [13] - 9:24, 9:25, 10:1, 11:16, 22:6, 22:8, 22:23, 29:4, 39:9, 39:13, 39:18, 39:21
**timeframe** [2] - 17:5, 40:5
**Title** [1] - 1:23
**today** [7] - 4:4, 6:4, 6:8, 11:8, 36:1, 39:12, 47:20
**together** [2] - 8:9, 18:16
**top** [2] - 10:11, 14:10
**total** [1] - 21:1

**Totally** [1] - 7:8
**totally** [1] - 20:9
**transparency** [2] - 26:4, 40:17
**transparent** [1] - 21:8
**treat** [1] - 19:8
**tremendous** [1] - 16:17
**TRENTON** [1] - 1:15
**trial** [40] - 4:7, 5:4, 6:10, 6:13, 7:18, 7:20, 9:5, 10:8, 11:1, 13:5, 15:21, 16:2, 16:8, 18:5, 24:4, 26:11, 32:18, 32:20, 34:22, 35:12, 35:18, 35:19, 35:22, 36:12, 36:17, 36:23, 38:6, 41:11, 43:17, 43:19, 44:2, 44:8, 44:15, 44:19, 45:11, 46:17, 46:18
**trials** [4] - 27:13, 30:16, 37:13, 38:23
**tried** [1] - 7:20
**trier** [1] - 28:3
**trouble** [1] - 8:25
**true** [1] - 1:23
**trust** [2] - 41:20
**Trust** [2] - 10:12, 14:10
**trustee** [1] - 42:23
**Trustees** [5] - 11:19, 12:2, 12:7, 13:15, 13:22
**trustees** [4] - 6:22, 7:24, 42:23, 43:3
**truth** [4] - 18:18, 22:9, 33:25, 35:13
**try** [7] - 4:19, 6:8, 13:25, 23:23, 28:4, 34:15, 40:20
**trying** [11] - 6:9, 7:15, 8:5, 13:4, 14:24, 16:5, 37:4, 37:20, 37:21, 39:22, 40:18
**turn** [5] - 12:3, 14:5, 22:3, 22:11, 22:22
**TWEED** [1] - 2:10
**Tweed** [4] - 3:13, 3:16, 3:19, 4:14
**two** [8] - 12:9, 17:24, 22:7, 29:17, 37:20, 40:14, 43:3, 43:8
**Two** [2] - 12:10, 42:23
**type** [2] - 4:1, 18:3
**typical** [1] - 28:8

**U**

**U.S** [2] - 1:17, 1:25
**U.S.C** [1] - 1:23
**unbundle** [4] - 12:22, 13:9, 16:11, 20:2
**unbundling** [2] - 10:23, 13:14
**uncertain** [1] - 8:4
**unclear** [1] - 12:23
**uncomfortable** [1] - 37:2
**under** [3] - 7:20, 17:19, 46:8
**undertake** [1] - 25:9
**undertaken** [1] - 17:12
**Unfortunately** [1] - 20:17
**UNITED** [1] - 1:1
**universe** [1] - 31:25
**unless** [1] - 31:14
**up** [5] - 5:11, 5:13, 6:1, 10:9, 18:1, 19:25, 20:4, 28:2, 28:22, 32:19, 32:21, 33:12, 35:19, 36:4, 36:6, 37:19, 41:15, 43:25
**uses** [2] - 21:19, 21:20
**utterly** [2] - 21:5, 22:14

**V**

**variance** [1] - 29:20
**variety** [2] - 22:9, 28:15
**various** [3] - 11:1, 23:19, 37:11
**versus** [1] - 3:1
**view** [6] - 4:10, 20:19, 22:6, 28:12, 28:13, 28:16
**virtually** [1] - 18:11
**volume** [2] - 19:13, 40:19
**volumes** [2] - 45:22, 47:1
**voluminous** [3] - 13:6, 16:23, 17:11
**vote** [1] - 9:9
**Vs** [2] - 1:5, 1:9

**W**

**wait** [2] - 15:1, 16:8
**wake** [2] - 5:11, 5:13
**ways** [3] - 4:7, 19:20,

37:5
**Wednesday** [1] - 46:9
**week** [10] - 24:21, 34:14, 34:15, 37:16, 38:17, 38:18, 38:23, 39:10, 40:18
**weeks** [2] - 29:4, 41:8
**weigh** [2] - 28:3, 30:16
**weighing** [1] - 46:11
**weird** [1] - 12:21
**well's** [1] - 12:22
**whatnot** [1] - 46:24
**whole** [3] - 21:7, 26:2, 39:14
**willing** [1] - 15:25
**wish** [2] - 4:1, 40:12
**wishes** [2] - 4:11, 38:11
**witness** [13] - 7:15, 13:5, 13:7, 13:12, 15:21, 15:23, 22:18, 35:7, 37:8, 39:23, 41:9, 43:14, 43:16
**witnesses** [11] - 10:25, 13:20, 26:9, 37:10, 37:23, 37:24, 40:21, 41:5, 41:6, 43:23, 43:24
**write** [1] - 5:18
**writings** [1] - 16:24

**Y**

**year** [4] - 6:22, 6:25, 8:12, 21:16
**years** [5] - 6:19, 6:20, 8:11, 17:14, 29:13
**yellow** [1] - 20:6

**Z**

**zealously** [1] - 26:24